1  **GARCIA, ARTIGLIERE & MEDBY**
   Stephen M. Garcia, State Bar No. 123338
2    sgarcia@lawgarcia.com
   David M. Medby, State Bar No. 227401
3    dmedby@lawgarcia.com
   One World Trade Center, Suite 1950
4  Long Beach, California 90831
   Telephone: (562) 216-5270
5  Facsimile: (562) 216-5271

6  Attorneys for Relator

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10



CV15-09064 PA(AGRx)

11  UNITED STATES OF AMERICA, EX      CASE NO.
    REL., [UNDER SEAL],
12                                     **COMPLAINT FOR VIOLATION OF**
              Plaintiffs,              **THE FEDERAL FALSE CLAIMS**
13                                     **ACT [31 U.S.C. §3729 ET SEQ.] AND**
         vs.                           **CALIFORNIA'S FALSE CLAIMS**
14                                     **ACT [CAL. GOV. CODE §12650 ET**
    [UNDER SEAL],                      **SEQ.]**
15
              Defendants.
16                                     **[DEMAND FOR JURY TRIAL]**

17

18                                     **[FILED UNDER SEAL PURSUANT**
                                       **TO 31 U.S.C. § 3730(B)(2)]**
19

20

21

22

23

24

25

26

27  □ **ORIGINAL**

28



THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  **GARCIA, ARTIGLIERE & MEDBY**
   **Stephen M. Garcia, State Bar No. 123338**
2    sgarcia@lawgarcia.com
   **David M. Medby, State Bar No. 227401**
3    dmedby@lawgarcia.com
   **One World Trade Center, Suite 1950**
4  **Long Beach, California  90831**
   **Telephone:  (562) 216-5270**
5  **Facsimile:  (562) 216-5271**

6  Attorneys for Relator

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  UNITED STATES OF AMERICA, EX          CASE NO.
    REL. TRILOCHAN SINGH,
12                                        **COMPLAINT FOR VIOLATION OF**
              Plaintiffs,                 **THE   FEDERAL   FALSE   CLAIMS**
13                                        **ACT [31 U.S.C. §3729 ET SEQ.] AND**
              vs.                         **CALIFORNIA'S   FALSE   CLAIMS**
14                                        **ACT [CAL. GOV. CODE §12650 ET**
    PAKSN, INC.; CCRC, LLC; HCRC,         **SEQ.]**
15  INC.; PREMA THEKKEK; ANTONY
    THEKKEK;       KAYAL,      INC.;
16  MARINOAK, INC.; NADHAN, INC.;         **[DEMAND FOR JURY TRIAL]**
    DIYAVILLA,    INC.;   NADHI,   INC.;
17  OAKRHEEM, INC.; BAYVIEW CARE,         **[UNDER SEAL]**
    INC.; SAGAR, INC.; GRACEVILLA,
18  INC.;   KARMA,    INC.;   THEKKEK
    HEALTH SERVICES, INC.; AAKASH,
19  INC.; WESTVILLA, INC.; NASAKY,
    INC.; PREMIER REHAB SERVICES,
20  INC.; KAZAK ENTERPRISES, INC.;
    and Does 1-10, inclusive,
21
              Defendants.
22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 · FACSIMILE (562) 216-5271

1    Trilochan Singh, through his attorneys, Garcia, Artigliere & Medby, on behalf of

2  the United States of America and the State of California, for his Complaint against

3  defendants, alleges based upon personal knowledge, relevant documents, and upon

4  information and belief, as follows:

5  **I.    INTRODUCTION**

6    1.    This is an action by qui tam Relator Trilochan Singh, ("Relator") on behalf

7  of the United States and the State of California, to recover treble damages, civil

8  penalties, attorneys' fees and costs on behalf of the United States of America, arising

9  from the false and/or fraudulent records, statements, and claims made, used and caused

10  to be made, used or presented by each of the Defendants named herein below and/or

11  their agents, employees and co-conspirators in violation of the Federal Civil False

12  Claims Act, 31 U.S.C. §3729 *et seq.*, as amended ("the FCA" or "the Act") and the

13  California False Claims Act, California *Government Code* §12650 *et seq.* Relator has

14  direct and independent knowledge of the information on which the allegations

15  contained in this Complaint are based. Pursuant to the federal and state statutes listed

16  above, Relator has provided the statutorily required disclosure materials to the

17  appropriate federal and state governmental authorities.

18    2.    The United States Government's Medicare program is a crucial safety net

19  for aged and disabled Americans. Intended as a social insurance program to provide

20  health insurance coverage to people who are aged 65 and over, or who meet other

21  special criteria, Medicare funds are stretched to their limits. California's Medi-Cal

22  program seeks to support those Californians unable to afford health care and is intended

23  to provide essential care for California's growing indigent population. Medi-Cal is also

24  stretched to its limits.

25    3.    Too many times, Medicare and Medi-Cal have been subject to fraud and

26  abuse by unscrupulous healthcare providers who put their own profits above the public

27  good. Funds that have been designated for essential healthcare services to a population

28  in need have been diverted away because of false and fraudulent billing schemes. Those

1  fraudulent schemes have threatened to diminish the quality of care, unnecessarily

2  burdened taxpayers as well as Medicare and Medi-Cal beneficiaries, and degraded the

3  medical, nursing and allied health professions.

4       4.      This case is being brought to stop some of the rampant Medicare and

5  Medi-Cal fraud in the skilled nursing industry, carried out over a period of years by

6  skilled nursing management companies, its related licensees and their owners and

7  operators. As the Defendants are well aware, federal and state laws state that a recipient

8  of government funds shall not "knowingly and willfully offer, pay, solicit or receive

9  remuneration in order to induce or reward referrals of items or services reimbursed

10  under the Medicare or State health care programs." 42 U.S.C. §1320a-7b. California's

11  Anti-Kickback statute prohibits the solicitation, receipt, offer, or payment of "any

12  remuneration, including but not restricted to, any kickback, bribe or rebate, directly or

13  indirectly, overtly over covertly, in cash or in valuable consideration of any kind" in

14  connection with the referral of any person for the furnishing or arrangement of any

15  service or merchandise, or the purchase, lease, order, arrangement, or recommendation

16  of any goods, facility, service, or merchandise for which payment may be made by

17  Medi-Cal. California *Welfare & Institutions Code* §14107.2.

18      5.      Despite their knowledge of this requirement, Defendants intentionally and

19  fraudulently engaged in a pattern and practice of providing cash, gift cards or other

20  remuneration to physicians and case managers for the referral and subsequent residency

21  of patients (who were either Medicare and/or Medi-Cal beneficiaries) at Defendants'

22  Skilled Nursing Facilities ("SNF"). Through these actions to induce referrals of

23  Medicare and Medi-Cal patients by offering physicians and case managers of

24  healthcare facilities payments and other gifts, funds often disguised as medical director

25  or consultation fees and other monies, Defendants were submitting false and fraudulent

26  charges to Medicare and Medi-Cal for reimbursement in that Defendants' submission

27  of the claims for payment, Defendants were making false certifications of compliance

28  with healthcare laws and regulations and the government would not have paid the

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1   claims had it known of the kick-back violations.

2        6.      This case is also being brought to stop some of the rampant Medicare and

3   Medi-Cal fraud in the skilled nursing industry through over-billing and the fraudulent

4   inflating of costs so as to fraudulently obtain increased Medi-Cal reimbursement rates.

5   The Defendants engaged in an intentional and fraudulent scheme of knowingly and

6   fraudulently inflating the costs of their skilled nursing facilities and reporting said

7   inflated costs to the State of California and the federal government in order to increase

8   their skilled nursing facilities' Medi-Cal reimbursement rates, which are determined

9   using a prospective, cost-based methodology. The Defendants' fraudulent scheme to

10  wrongfully inflate their reimbursement rates consisted of the following practices: (1)

11  the defendant skilled nursing facilities entered into contracts with a vendor also owned

12  by the Defendants for the provision of physical therapy and related services to facility

13  residents at rates which greatly exceeded the industry average; (2) the defendant skilled

14  nursing facilities entered into contracts with a vendor also owned by the Defendants for

15  the provision of medical supplies, nursing supplies, minor equipment, non-covered

16  equipment, rentals, and non-covered equipment to the facility residents at rates which

17  greatly exceeded the industry average; and (3) the defendant skilled nursing facilities

18  made exorbitant payments to related parties owned by the Defendants under the guise

19  of "management fees" or "management fees" for inadequate consideration in that these

20  related parties provided no such services for, or did not provide services commensurate

21  with, the fees paid. These practices artificially inflated the operating costs of the

22  defendant facilities, thereby allowing the Defendants to obtain illegally inflated Medi-

23  Cal reimbursement rates, essentially simultaneously lining the coffers of the Defendants

24  on both ends. Through these practices, the Defendants knowingly overcharge the

25  Medicaid program for services at inflated rates. By virtue of these fraudulent practices,

26  Defendants have unjustly enriched themselves at the expense of taxpayers in the

27  estimated amount of millions of dollars.

28        7.      Last, this case is being brought to stop Defendants' fraud in illegally

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

1    obtaining Department of Housing and Urban Development ("HUD")/Federal Housing
2    Administration ("FHA") mortgage insurance on loans that covered one of their
3    facilities under what is known as the Section 232 program. Because the defendants
4    could not and did not qualify as borrowers under the Section 232 program, the
5    defendants concealed from HUD and the FHA their true ownership interests in one of
6    the facilities and entered into a side agreement relating to the transfer of ownership
7    interests in the facility which Defendants concealed from HUD in violation of federal
8    law. In so doing, Defendants fraudulently obtained a HUD Section 232 loan in violation
9    of the False Claims Act.

10        8.      This suit calls Defendants to answer for defrauding taxpayers not only in
11   the United States and California but also compromising the health and welfare of
12   Medicare and Medi-Cal beneficiaries.

13   **II.    JURISDICTION AND VENUE**

14        9.      Jurisdiction over this action is conferred on this Court by 31 U.S.C. §3732
15   and 28 U.S.C. §1331 because the civil action rises under the laws of the United States.
16   Under 31 U.S.C. §3730(e), and under comparable provision of the state statute in
17   California, there has been no statutorily relevant public disclosure of the "allegations or
18   transactions" in this Complaint.

19        10.     Venue is proper in the Central District of California pursuant to 31 U.S.C.
20   § 3732(a) because one or more Defendants can be found, reside in, or have transacted
21   the business that is the subject matter of this lawsuit in the Central District of
22   California.

23   **III.   PARTIES**

24        11.     Defendant PAKSN, INC. is a corporation organized and existing pursuant
25   to the laws of the State of California, with its corporate headquarters and principal place
26   of business located at 540 W. Monte Vista Avenue, Vacaville, California 95688.
27   PAKSN, INC. regularly and systematically injects itself into the commerce stream and
28   does substantial, continuous and systematic business throughout the State of California.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

1  PAKSN, INC. is the owner, operator and/or manager of at least sixteen (16) skilled
2  nursing facilities in the State of California. The practices described herein were
3  performed by PAKSN, INC. in this district and throughout the State of California.

4         12.    Defendant CCRC, LLC is a limited liability company organized and
5  existing pursuant to the laws of the State of California, with its company headquarters
6  and principal place of business located at 18757 Burbank Boulevard, Suite 102,
7  Tarzana, California 91356. CCRC, LLC regularly and systematically injects itself into
8  the commerce stream and does substantial, continuous and systematic business
9  throughout the State of California, including in Los Angeles County. CCRC, LLC is the
10  owner, operator and/or manager of at least sixteen (16) skilled nursing facilities in the
11  State of California. The practices described herein were performed by CCRC, LLC in
12  this district and throughout the State of California.

13         13.    Defendant HCRC, INC. is a corporation organized and existing pursuant to
14  the laws of the State of California, with its corporate headquarters and principal place
15  of business located at 540 W. Monte Vista Avenue, Vacaville, California 95688.
16  HCRC, INC. regularly and systematically injects itself into the commerce stream and
17  does substantial, continuous and systematic business throughout the State of California.
18  HCRC, INC. is the owner, operator and/or manager of at least sixteen (16) skilled
19  nursing facilities in the State of California. The practices described herein were
20  performed by HCRC, INC. in this district and throughout the State of California.

21         14.    Defendant PREMA THEKKEK is an individual who is a citizen of and
22  domiciled in the State of California PREMA THEKKEK is the owner, operator and/or
23  manager of at least sixteen (16) skilled nursing facilities in the State of California. The
24  practices described herein were performed by PREMA THEKKEK in this district and
25  throughout the State of California.

26         15.    Defendant ANTONY THEKKEK is an individual who is a citizen of and
27  domiciled in the State of California ANTONY THEKKEK is the owner, operator
28  and/or manager of at least sixteen (16) skilled nursing facilities in the State of

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

California. The practices described herein were performed by ANTONY THEKKEK in this district and throughout the State of California (hereinafter Defendants PAKSN, INC.; CCRC, LLC; HCRC, INC.; PREMA THEKKEK; and ANTONY THEKKEK sometimes shall be referred to collectively as the "MANAGEMENT DEFENDANTS").

16.    Defendant KAYAL, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Bay Point Healthcare Center located at 442 Sunset Boulevard, Hayward, California 94541, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

17.    Defendant MARINOAK, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Corinthian Gardens Healthcare & Subacute Center located at 1611 Height Street, Bakersfield, California 93305, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

18.    Defendant NADHAN, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Creekside Rehabilitation & Behavioral Health located at 850 Sonoma Avenue, Santa Rosa, California 95404, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

19.    Defendant DIYAVILLA, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Diyamonte Acute Care Center located at 33 Mateo Avenue, Millbrae, California 94030, and was subject to the requirements of federal and state law governing the operation of skilled nursing

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1 | facilities operating in the State of California.

2 |     20.   Defendant NADHI, INC. was at all relevant times a corporation organized
3 | and existing pursuant to the laws of the State of California and the licensee of a skilled
4 | nursing facility operating under the fictitious business name Gateway Care &
5 | Rehabilitation Center located at 266660 Patrick Avenue, Hayward, California 94541,
6 | and was subject to the requirements of federal and state law governing the operation of
7 | skilled nursing facilities operating in the State of California.

8 |     21.   Defendant OAKRHEEM, INC. was at all relevant times a corporation
9 | organized and existing pursuant to the laws of the State of California and the licensee of
10 | a skilled nursing facility operating under the fictitious business name Hayward
11 | Convalescent Hospital located at 1832 B Street, Hayward, California 94541, and was
12 | subject to the requirements of federal and state law governing the operation of skilled
13 | nursing facilities operating in the State of California.

14 |     22.   Defendant BAYVIEW CARE, INC. was at all relevant times a corporation
15 | organized and existing pursuant to the laws of the State of California and the licensee of
16 | a skilled nursing facility operating under the fictitious business name Hilltop Care and
17 | Rehabilitation Center located at 3269 D Street, Hayward, California 94541, and was
18 | subject to the requirements of federal and state law governing the operation of skilled
19 | nursing facilities operating in the State of California.

20 |     23.   Defendant SAGAR, INC. was at all relevant times a corporation organized
21 | and existing pursuant to the laws of the State of California and the licensee of a skilled
22 | nursing facility operating under the fictitious business name La Mariposa Care &
23 | Rehabilitation Center located at 1244 Travis Boulevard, Fairfield, California 94533,
24 | and was subject to the requirements of federal and state law governing the operation of
25 | skilled nursing facilities operating in the State of California.

26 |     24.   Defendant GRACEVILLA, INC. was at all relevant times a corporation
27 | organized and existing pursuant to the laws of the State of California and the licensee of
28 | a skilled nursing facility operating under the fictitious business name Genesis

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

8

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1 Healthcare Center located at 1201 Walnut Avenue, Long Beach, California 90813, and

2 was subject to the requirements of federal and state law governing the operation of

3 skilled nursing facilities operating in the State of California.

4        25.      Defendant KARMA, INC. was at all relevant times a corporation

5 organized and existing pursuant to the laws of the State of California and the licensee of

6 a skilled nursing facility operating under the fictitious business name Manteca Care and

7 Rehabilitation Center located at 410 Eastwood Avenue, Manteca, California 95336, and

8 was subject to the requirements of federal and state law governing the operation of

9 skilled nursing facilities operating in the State of California.

10       26.      Defendant THEKKEK HEALTH SERVICES, INC. was at all relevant

11 times a corporation organized and existing pursuant to the laws of the State of

12 California and the licensee of a skilled nursing facility operating under the fictitious

13 business name Martinez Convalescent Hospital located at 4110 Alhambra Way,

14 Martinez, California 94553, and was subject to the requirements of federal and state

15 law governing the operation of skilled nursing facilities operating in the State of

16 California.

17       27.      Defendant NADHAN, INC. was at all relevant times a corporation

18 organized and existing pursuant to the laws of the State of California and the licensee of

19 a skilled nursing facility operating under the fictitious business name Orchard Post

20 Acute Care Hospital located at 101 South Orchard Avenue, Vacaville, California

21 95688, and was subject to the requirements of federal and state law governing the

22 operation of skilled nursing facilities operating in the State of California.

23       28.      Defendant AAKASH, INC. was at all relevant times a corporation

24 organized and existing pursuant to the laws of the State of California and the licensee of

25 a skilled nursing facility operating under the fictitious business name Park Central Care

26 & Rehabilitation Center located at 2100 Parkside Drive, Fremont, California 94536,

27 and was subject to the requirements of federal and state law governing the operation of

28 skilled nursing facilities operating in the State of California.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

29. Defendant WESTVILLA, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name West Valley Healthcare Center located at 7057 Shoup Avenue, West Hills, California 91307, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

30. Defendant NASAKY, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Yuba Skilled Nursing Center located at 521 Lorel Way, Yuba City, California 95991, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California (hereinafter the defendants set forth in paragraphs 16 through 30 sometimes hereinafter shall be referred to collectively as the "FACILITIES" or "LICENSEES, " and the MANAGEMENT DEFENDANTS and LICENSEES sometimes hereinafter shall be referred to collectively as the "DEFENDANTS").

31. Defendant PREMIER REHAB SERVICES, INC. was at all relevant times a corporation existing pursuant to the laws of the State of California and was in the business of providing physical therapy, occupational therapy, and speech language pathology services to the FACILITIES pursuant to contracts mandated by the MANAGEMENT DEFENDANTS (the "Contracts").

32. Defendant KAZAK ENTERPRISES, INC. was at all relevant times a corporation existing pursuant to the laws of the State of California and doing business under the fictitious business name Diablo Medical Supplies and was in the business of providing medical supplies, nursing supplies, minor equipment, non-covered equipment, rentals, and non-covered equipment to the FACILITIES pursuant to contracts mandated by the MANAGEMENT DEFENDANTS (the "Contracts").

33. Relator is ignorant of the names and capacities of the Defendants sued

10

1 herein as DOES 1 through 10, inclusive, and therefore sue such Defendants by fictitious
2 names. Relator will amend this complaint to allege the true names and capacities of the
3 fictitiously named Defendants once ascertained. Relator is informed and believes that
4 Defendant Does 1 through 100, inclusive, are in some manner responsible for the
5 actions alleged herein.

6     34.    Relator was employed by DEFENDANTS from approximately 2007 to
7 November 2014. Relator left his employment with DEFENDANTS at least in part
8 because of the unlawful practices undertaken by DEFENDANTS described herein.

9 **IV.   THE MEDICARE/MEDI-CAL REIMBURSEMENT SYSTEM**

10     35.    The FCA provides that any person who: (a) knowingly presents or causes
11 to be presented to the Government or officers/employees of the Government a false or
12 fraudulent claim for payment or approval; (b) knowingly makes, uses, or causes to be
13 made or used, a false record or statement to get a false or fraudulent claim paid or
14 approved by the Government; (3) conspires to defraud the Government by getting a
15 false or fraudulent claim allowed or paid; or (4) knowingly makes, uses or causes to be
16 made or used, a false record or statement to conceal, avoid, or decrease an obligation to
17 pay or transmit money or property to the Government, is liable for a civil penalty of not
18 less than $5,000 and not more than $11,000 for each such claim presented or paid and
19 three times the amount of damages sustained by the Government. California's False
20 Claims Act has a comparable provision.

21     36.    A skilled nursing facility ("SNF") is eligible to receive Medicare and
22 Medi-Cal funds provided the institution is primarily engaged in providing nursing care
23 and health-related services (above the level of room and board) to residents who,
24 because of their mental or physical condition, require a level of care which can be
25 furnished only in an institutional facility. Institutions primarily for the treatment of
26 mental disease are specifically excluded. 42 U.S.C.A. §1396r(a).

27     37.    Medicare is a federally-administered health insurance program primarily
28 benefiting the elderly – i.e., individuals aged 65 and older who have worked in the

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

11

1 Social Security or Railroad Systems. Approximately 16% of Medicare beneficiaries,
2 however, are less than 65 years old but either are afflicted with end-stage renal disease
3 ("ESRD") or are permanently disabled workers and their dependents eligible for old
4 age, survivors, and disability insurance ("OASDI") benefits. Medicare was created in
5 1965 by Title XVIII ("Health Insurance for the Aged") of the Social Security Act
6 (Public Law 89-97). *See* 42 U.S.C. §1395 *et seq*. Medicare has two parts that are
7 relevant to the instant lawsuit. Medicare Part A ("Part A"), the Hospital Insurance
8 ("HI") program, helps pay for medically necessary inpatient hospital, home health,
9 skilled nursing facility ("SNF"), and hospice care for eligible Medicare beneficiaries.
10 *See* 42 U.S.C. §§1395c-1395i-4. The HI program is financed primarily by payroll taxes
11 paid by workers and employers. Medicare Part B ("Part B"), the Supplementary
12 Medical Insurance ("SMI") program, helps pay for the cost of most physician services,
13 diagnostic tests, durable medical equipment ("DME"), and ambulance services as well
14 as outpatient hospital care, physical therapy, speech therapy, and speech pathology
15 services, that is medically necessary for eligible Medicare beneficiaries who have
16 voluntarily enrolled. *See* 42 U.S.C. §§1395j-1395w-4. The SMI program is financed
17 primarily by transfers from the general fund of the U.S. Treasury and by monthly
18 premiums paid by beneficiaries. The Centers for Medicare and Medicaid Services
19 ("CMS"), an agency of the U.S. Department of Health and Human Services ("DHHS"),
20 is directly responsible for the administration and supervision of the Medicare program.

21     38.     In addition to other benefits, Medicare Part A covers and pays for
22 medically necessary short-term skilled nursing care, rehabilitation services and other
23 goods and services provided by a skilled nursing facility ("SNF") for Medicare
24 beneficiaries who have been discharged from an inpatient hospital stay of at least three
25 consecutive calendar days. SNFs are healthcare institutions that are primarily engaged
26 in either (a) providing skilled nursing care and related services for residents who
27 require medical or nursing care or (b) the rehabilitation of injured, disabled, or sick
28 persons. For a Medicare beneficiary to be eligible for SNF care, the beneficiary's

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1   physician must certify that daily skilled care (such as intravenous injections or physical
2   therapy) is needed. *See* 42 U.S.C. 1395f (a)(2)(B).  Medicare Part A skilled nursing
3   services are used much more frequently by beneficiaries at ages 80 and above than by
4   younger beneficiaries who are primarily ages 65 through 79. These older patients tend
5   to be frail and often suffer from multiple systemic diseases and disorders. Medicare Part
6   A covers and pays a pre-determined rate for inpatient hospital care services for eligible
7   Medicare beneficiaries up to a maximum of 90 days, subject to certain conditions and
8   co-payment obligations. After a Medicare beneficiary is transferred to a SNF, Medicare
9   Part A will pay the SNF a pre-determined daily rate for each day of care up to 100 days,
10  subject to co-payment obligations after the first 20 days which are billed separately to
11  and paid by the resident, private insurance, or Medicaid.  Consequently, under Part A, a
12  Medicare beneficiary conceivably could receive up to 190 days of covered services
13  during a single "spell of illness." A "spell of illness" begins when the beneficiary is
14  admitted to either an inpatient hospital or a SNF and ends when the beneficiary has
15  been in neither institution for 60 consecutive days.

16      39.    Many SNF residents, however, are admitted directly into the facility
17  without requiring prior acute-care hospitalization. These residents, who are directly
18  admitted to the intermediate (unskilled) care nursing areas, are frequently Medicaid
19  beneficiaries.  When  medical  complications  necessitating  inpatient  acute-care
20  hospitalization occur, Medicare Part A pays for the hospitalization. Once stabilized, the
21  patient is transferred back to the SNF and, based on the doctor's certification that
22  skilled nursing care is needed, is admitted to the Medicare-certified skilled nursing area.

23      40.    Medicare Part B, which generally commences following the 100 days of
24  Medicare Part A coverage, reimburses nursing facilities for other physician-ordered
25  services and devices on a fee schedule. These include, for example, physical therapy,
26  occupational therapy, speech therapy, devices such as urinary collection systems
27  (catheters), feeding tubes, wound kits, laboratory tests, drugs, and the like so long as
28  they are certified and ordered by a physician as medically necessary. See reference to

1  42 U.S.C. §1395y(a)(1)(A) in paragraph 4 of this complaint.

2  41.  At the end of each month, SNFs bill the Medicare program by submitting

3  an invoice known as Universal Bill 92 ("UB-92") to the appropriate fiscal intermediary,

4  which is a CMS contractor. A UB-92 is submitted for each resident and contains the

5  numbers of billing days, the per diem RUG rate, the total billed amount, and other

6  pertinent data.

7  42.  Medicaid is a federally aided, state-administered program that provides

8  medical assistance to certain low-income people who are either indigent or disabled,

9  including, *inter alia*, low-income residents of nursing facilities. Medicaid was created

10  in 1965 by Title XIX ("Grants to States for Medical Assistance Programs") of the

11  Social Security Act (Public Law 89-97). *See* Title 42 of the U.S. Code of Federal

12  Regulations ("CFR"), Parts 430-456. In the State of California, the Medicaid program

13  is known as Medi-Cal. Funding for Medicaid is shared between the federal government

14  and those states that participate in the program with the federal government paying

15  approximately one half of the Medicaid bill and the State paying the other half. Primary

16  regulatory control of Medicaid programs is, however, left to the states. Consequently,

17  the procedures for obtaining reimbursements and the amount of reimbursement vary

18  between the states.

19  **V.  ILLEGAL KICKBACK SCHEME**

20  43.  The federal Anti-kickback Statute, 42 U.S.C. §1320a-7b(b) prohibits

21  individuals or entities from knowingly and willfully offering, paying, soliciting or

22  receiving remuneration to induce referrals of items or services covered by Medicare,

23  Medicaid or any other federally funded program. The main purpose of the federal anti-

24  kickback law is to protect patients and the federal health care programs from increased

25  costs and abusive practices resulting from provider decisions that are based on self-

26  interest rather than cost, quality of care or necessity of services. The law seeks to

27  prevent overutilization, limit cost, preserve freedom of choice and preserve

28  competition.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

44.     The Medicare Anti-Kickback Statute provides penalties for individuals or entities that "knowingly and willfully offer, pay, solicit or receive remuneration in order to induce or reward referrals of items or services reimbursed under the Medicare or State health care programs." The Patient Protection and Affordable Care Act ("PPACA") amended the Anti-kickback Statute to provide that Medicare or Medicaid claims that include items or services that result in kickback violations are false claims under the False Claims Act.

45.     The types of remuneration covered by this prohibition include the transfer of anything of value, such as kickbacks, bribes, and rebates, made directly or indirectly, overtly or covertly, in cash or in kind. Prohibited conduct includes not only remuneration intended to induce or reward referrals of patients, but also remuneration intended to induce or reward the purchasing, leasing, ordering or arranging for any good, facility, service or item paid for by Medicare or State health care programs.

46.     California's Anti-Kickback Statute is codified at California *Welfare & Institutions Code* §14107.2. This statute prohibits the solicitation, receipt, offer, or payment of "any remuneration, including but not restricted to, any kickback, bribe or rebate, directly or indirectly, overtly over covertly, in cash or in valuable consideration of any kind . . . [in return for the referral, or promised referral, of any person for the furnishing . . . of any service" covered by the Medi-Cal program. California *Welfare & Institutions Code* §14107.2.

47.     California *Business & Professions Code* §650 prohibits the offer, delivery, receipt or acceptance by any licensed practitioner of any rebate, refund, commission, preference, patronage, patronage dividend, discount, or other consideration as compensation or inducement for referring patients, clients, or customers to any person.

48.     Section 3729(a)(3) is a civil conspiracy provision that provides, in pertinent part: "Any person who – conspires to defraud the government by getting a false or fraudulent claim allowed or paid . . . is liable to the United States Government . . . ." 31 U.S.C. §3729(a)(3). In the context of illegal kickbacks, the subject conspiracy

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

was by and through the SNF owners and administrators to pay remuneration to hospitals for the purpose of inducing those hospitals to discharge patients to the subject SNFs for residency and ancillary treatments that were in whole or in part reimbursable under the Medicare Program.

49.     DEFENDANTS, pursuant to their obligations under federal and state law, entered into one or more contracts or agreements with the United States Government and the State of California to provide health care to their residents covered by Medicare and/or Medi-Cal at each of DEFENDANTS' FACILITIES. Under the terms of the contracts, DEFENDANTS were responsible for keeping and submitting to the United States Government detailed, accurate records and resident assessments, including but not limited to, MDS, UB-92, physician certifications and re-certifications, physician orders, and any back-up medical records supporting the amount of services provided, when they were provided, and who provided them. California state health authorities also impose similar requirements.

50.     In order to receive payment from the United States Government for providing health care services and supplies, pursuant to the Federal Medicare and Medicaid statutes and regulations, DEFENDANTS prepared claims for payment or approval, including MDS; UB-92; Client Assessment, Review and Evaluation (CARE) Form 3652; cost reports, and billing records, invoices, and medical records based upon the claims described herein and presented or caused them to be presented to an officer or employee of the United Sates Government. In order to receive payment from the California State Government for providing health care services and supplies covered by Medi-Cal, DEFENDANTS prepared claims for payment or approval, billing records, invoices and medical records based upon the claims described herein and presented or caused them to be presented to an officer or employee of the State of California. In making claims for payment to the federal Medicare program and to the federal and State Medicaid programs, and as a condition for receiving payment, DEFENDANTS' nursing facilities represented, impliedly or directly, that they were

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

16

THE GARCIA LAW FIRM

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  in compliance with applicable laws and regulations. As described in more detail below,
2  DEFENDANTS knowingly and willfully defrauded the federal and California
3  Governments by obtaining substantial payments for false or fraudulent claims.

4      51.    DEFENDANTS offered and paid remunerations to another person in
5  violation of the Anti-Kickback Act as the purpose of the offer and payment was to
6  induce a Medicare or Medicaid patient referral. DEFENDANTS' actions were
7  fraudulent because by submission of the claims, DEFENDANTS implicitly stated that
8  they had complied with all statutes, rules and regulations governing the Medicare Act,
9  including state and federal anti-kickback statutes. Participation in the state and federal
10 programs involves an implied certification that the participant will abide by and adhere
11 to all statutes, rules and regulations governing that program. By submitting a claim for
12 payment without complying with such statutes, rules and regulations, DEFENDANTS
13 have submitted a fraudulent claim in violation of the False Claims Act.

14     52.    DEFENDANTS, by and through their officers, agents, or employees,
15 caused claims to be made, used, presented, or delivered to the United States
16 Government, either directly or indirectly by means of summaries of them. Such claims
17 were false or fraudulent because they indicated, either explicitly or implicitly, that the
18 Facility and its personnel had complied with requisites statutes, rules and regulations,
19 when in fact they were not.

20     53.    DEFENDANTS are presently engaged in operating skilled nursing
21 facilities providing long-term health care and rehabilitation to residents. A significant
22 number of these residents are Medicare, Medicaid and/or Medi-Cal beneficiaries, and a
23 significant portion of DEFENDANTS' revenues are derived from payments made by
24 Medicare, Medicaid and Medi-Cal programs for services rendered to these residents.
25 For the time period 2012 to 2014, Medicare accounted for anywhere from 33 to 98
26 percent of the FACILITIES' revenue for ancillary services and Medi-Cal accounted for
27 59 to 93 percent of the FACILITIES' revenue for routine services.

28     54.    During the timeframe in which Relator was employed by DEFENDANTS,

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

1   he held the position of Vice President of Operations/Chief Operating Officer. In this

2   position, Relator was involved in the processing of payments to third parties including

3   physicians and case managers by the FACILITIES and was involved in the admissions

4   and marketing of the FACILITIES.

5       55.    By reason of his position with DEFENDANTS and involvement with their

6   upper levels of management, Relator acquired direct and independent knowledge of the

7   systematic and pervasive process by which DEFENDANTS would provide

8   remuneration to physicians and case managers in exchange for the referral of patients to

9   the FACILITIES, resulting in claims to Medicare, Medicaid and Medi-Cal. Among the

10   false claims, DEFENDANTS knowingly and willfully submitted false and/or fraudulent

11   claims to Medicare, Medicaid and Medi-Cal related to patients that were procured by

12   means of a referral that was induced by an illegal kickback. Such fraudulent practices

13   were designed to achieve the highest capacity and therefore reimbursement for the

14   nursing home, without regard for the patient's actual need. These fraudulent practices

15   are described in more detail below.

16       56.    DEFENDANTS knowingly and willfully submitted claims to Medicare

17   and Medi-Cal for services rendered to patients that were the result of referrals for which

18   the DEFENDANTS received and paid kickbacks. Relator observed a pervasive pattern

19   of practice whereby DEFENDANTS: (a) provided monthly compensation to physicians

20   in exchange for the referral of Medicare patients to the FACILITIES; (b) provided

21   remuneration on a per-referral basis to physicians in exchange for the referral of

22   Medicare patients to the FACILITIES; (c) provided gifts to physicians in exchange for

23   the referral of Medicare patients to the FACILITIES; and (d) provided cash and gifts to

24   case managers in exchange for the referral of Medicare patients to the FACILITIES.

25       57.    Relator observed a persistent pattern whereby DEFENDANTS routinely

26   provided such remuneration to physicians which were disguised as "medical director

27   fees" and "physician consultant fees" but in reality were all in exchange for referral of

28   patients whose healthcare costs were reimbursed in whole or in part with government

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

18

1 | healthcare funding.

2 |     58. By reason of his position with DEFENDANTS and involvement with their

3 | upper levels of management, Relator acquired direct and independent knowledge of the

4 | following:

5 |     (a) DEFENDANTS paid Rajesh Suri, M.D. approximately $300.00 per referral

6 | during the time period from 2012 to the present to refer Medicare patients to NADHI,

7 | INC. dba Gateway Care & Rehabilitation Center and AAKASH, INC. dba Park Central

8 | Care & Rehabilitation Center;

9 |     (b) DEFENDANTS paid Harpreet Dhillon $250 per referral over a period of over

10 | four years for referring Medicare patients to AAKASH, INC. dba Park Central Care &

11 | Rehabilitation Center;

12 |     (c) DEFENDANTS paid Norman Cheung, M.D. approximately $1,500.00 per

13 | month to refer Medicare patients to Defendant KAYAL, INC. dba Bay Point Health

14 | Care Center and NADHI, INC. dba Gateway Care & Rehabilitation Center;

15 |     (d) DEFENDANTS paid Romesh Japra, M.D. approximately $2,000.00 per

16 | month from approximately 2010 to 2013 to refer Medicare patients to Defendant

17 | AAKASH, INC. dba Park Central Care & Rehabilitation Center;

18 |     (e) DEFENDANTS paid Nirmala Kannan, M.D. approximately $3,000.00 per

19 | month from approximately 2011 to 2013 to refer Medicare patients to NADHI, INC.

20 | dba Gateway Care & Rehabilitation Center;

21 |     (f) DEFENDANTS paid Rajesh Rampal, M.D. with various gifts over the time

22 | period of 2012 to the present to refer Medicare patients to NADHI, INC. dba Gateway

23 | Care & Rehabilitation Center and BAYVIEW CARE, INC. dba Hilltop Care and

24 | Rehabilitation Center;

25 |     (g) DEFENDANTS paid Rabin Khetrapal, M.D. approximately $2,500.00 per

26 | month over the time period of 2011 to 2014 to refer Medicare patients to Defendant

27 | AAKASH, INC. dba Park Central Care & Rehabilitation Center and NADHI, INC. dba

28 | Gateway Care & Rehabilitation Center;

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEO.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1    (h) DEFENDANTS paid Ramiro Garcia, M.D. approximately $2,500.00 per
2  month over an approximate four-year time period to refer Medicare patients to NADHI,
3  INC. dba Gateway Care & Rehabilitation Center and KAYAL, INC. dba Bay Point
4  Health Care Center;

5    (i) DEFENDANTS paid Steven Verbinsky, M.D. approximately $2,500.00 per
6  month over an approximate four-year time period which is still ongoing to refer
7  Medicare patients to NADHI, INC. dba Gateway Care & Rehabilitation Center;

8    (j) DEFENDANTS paid Bhupinder Bhandari, M.D. approximately $1,000.00 per
9  month to refer Medicare patients to multiple of the FACILITIES. In addition,
10  DEFENDANTS paid Bhupinder Bhandari, M.D. a lump sum of $10,000 to refer
11  patients and as a pretext the DEFENDANTS ostensibly employed him as a Medical
12  Director of THEKKEK HEALTH SERVICES, INC. dba Martinez Convalescent
13  Hospital even though he was not performing the functions of Medical Director of that
14  facility and in fact never even visited that facility;

15    (k) DEFENDANTS paid Gautam Pareekh, M.D. approximately $2,000.00 per
16  month during the time period of 2012 to the present to refer Medicare patients to
17  KAYAL, INC. dba Bay Point Health Care Center;

18    (l) DEFENDANTS paid Htay Win, M.D. approximately $2,000.00 per month
19  during 2012 to refer Medicare patients to AAKASH, INC. dba Park Central Care &
20  Rehabilitation Center;

21    (m) DEFENDANTS paid Ricardo Molina, M.D. approximately $2,000.00 per
22  month over a time period of two years to refer Medicare patients to NADHI, INC. dba
23  Gateway Care & Rehabilitation Center;

24    59.    Relator has personal and independent knowledge that none of the
25  physicians set forth in the immediately preceding paragraph ever visited the
26  FACILITIES and none provided services to the DEFENDANTS other than to refer
27  Medicare patients to the FACILITIES.

28    60.    In addition to the illegal kickbacks alleged hereinabove, for the month of

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  August 2010, Defendant NADHAN, INC. dba Creekside Rehabilitation & Behavioral
2  Health paid "medical director fees" and "medical consultant fees" to seven different
3  physicians – Susan Ahart, M.D., Nancy Burkey, M.D., Eran Matalon, M.D., Jeremy
4  Juriansz, M.D., Tim Gieseke, M.D., Scott Peterson, M.D., and Kevin Howe, M.D.
5  Relator has personal and independent knowledge that these physicians provided no
6  services to the defendant facility other than to refer Medicare patients to the defendant
7  facility.

8      61.    For the month of November 2013, Defendant NADHAN, INC. dba
9  Creekside Rehabilitation & Behavioral Health paid "medical director fees" to four
10  different physicians – Tim Gieseke, M.D., Scott Peterson, M.D., Kevin Howe, M.D.,
11  and John Hurwitz, M.D. – and in the same month also paid a "physician consultant fee"
12  to Phillip Grob, M.D. Relator has personal and independent knowledge that these
13  physicians provided no services to the defendant facility other than to refer Medicare
14  patients to the defendant facility.

15      62.    For the month of August 2010, Defendant NADHI, INC. dba Gateway
16  Care & Rehabilitation Center paid "medical director fees" and "medical consultant
17  fees" to three different physicians – Rabin Khetrapal, M.D., Nirmala Kannan, M.D.,
18  and an unnamed infectious disease consultant. Relator has personal and independent
19  knowledge that these physicians provided no services to the defendant facility other
20  than to refer Medicare patients to the defendant facility.

21      63.    For the time period of May 1, 2014, through May 31, 2014, Defendant
22  NADHI, INC. dba Gateway Care & Rehabilitation Center paid $9,900.00 in "medical
23  director fees" and $20,273.00 in "consultant fees," which were both in reality payments
24  to physicians for the referral of Medicare patients. Relator has personal and
25  independent knowledge that these payments were not for the provision of any services
26  to the defendant facility other than to refer Medicare patients to the defendant facility.

27      64.    For the time period of January 1, 2014, through July 31, 2014, Defendant
28  KAYAL, INC. dba Bay Point Health Care Center paid a total of over $40,000.00 in

1 "medical director fees" and over $81,000.00 in "consultant fees" which were both in

2 reality payments to physicians for the referral of Medicare patients. Relator has

3 personal and independent knowledge that these payments were not for the provision of

4 any services to the defendant facility other than to refer Medicare patients to the

5 defendant facility.

6      65.     Similarly, for the time period of January 1, 2014, through July 31, 2014,

7 Defendant AAKASH, INC. dba Park Central Care & Rehabilitation Center paid a total

8 of over $41,000.00 in "medical director fees" and over $109,000.00 in "consultant

9 fees," which were both in reality payments to physicians for the referral of Medicare

10 patients. Relator has personal and independent knowledge that these payments were not

11 for the provision of any services to the defendant facility other than to refer Medicare

12 patients to the defendant facility.

13      66.     For the month of August 2010, Defendant AAKASH, INC. dba Park

14 Central Care & Rehabilitation Center paid "medical director fees" and "medical

15 consultant fees" to three different physicians – Rabin Khetrapal, M.D., Raad Alshaikh,

16 M.D., and Khalid A. Baig, M.D. Relator has personal and independent knowledge that

17 these physicians provided no services to the defendant facility other than to refer

18 Medicare patients to the defendant facility.

19      67.     In addition, relator has personal and independent knowledge that the

20 DEFENDANTS routinely provided the aforementioned physicians and case managers

21 with expensive gifts, alcohol, and tickets to events for referring Medicare patients to the

22 FACILITIES. In addition, DEFENDANTS invited the aforementioned physicians and

23 case managers to DEFENDANTS' Christmas party where the aforementioned

24 physicians and case managers were provided with presents.

25      68.     Other companies that are not engaging in such fraudulent practices are

26 adversely affected.

27      69.     These ongoing and knowing acts were a direct product of DEFENDANTS'

28 motive to increase Medicare and Medi-Cal reimbursement revenues by submitting false

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. 83729 ET SEO.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

and/or fraudulent claims to Medicare, Medicaid and Medi-Cal in relation to patients that were procured by means of a referral that was induced by an illegal kickback. Through the submission of such claims for reimbursement, DEFENDANTS stated that they had complied with all statutes, rules and regulations governing the Medicare Act, including state and federal anti-kickback statutes. Participation in the state and federal programs involves an implied certification that the participant will abide by and adhere to all statutes, rules and regulations governing that program. By submitting a claim for payment without complying with such statutes, rules and regulations, DEFENDANTS have submitted a fraudulent claim in violation of the False Claims Act. These acts were ongoing and widespread and stemmed from the DEFENDANTS' constant and intense pursuit to maximize its revenues.

## VI.  SCHEME TO INCREASE MEDI-CAL REIMBURSEMENT RATES THROUGH EXCESSIVE CHARGES FOR PHYSICAL THERAPY AND RELATED SERVICES AND FOR MEDICAL SUPPLIES

70.  **Overview of Scheme.** The DEFENDANTS engaged in an intentional and fraudulent scheme of knowingly and fraudulently inflating the costs of the FACILITIES and reporting said inflated costs to the State of California in order to increase the FACILITIES' Medi-Cal reimbursement rates, which are determined using a prospective, cost-based methodology. The DEFENDANTS' fraudulent scheme consisted of the following practices: (1) as mandated by the MANAGEMENT DEFENDANTS, the FACILITIES entered into contracts with a vendor also owned by the MANAGEMENT DEFENDANTS for the provision of physical therapy and related services to facility residents at rates which greatly exceeded the industry average; (2) as mandated by the MANAGEMENT DEFENDANTS, the FACILITIES entered into contracts with a vendor also owned by the Defendants for the provision of medical supplies, nursing supplies, minor equipment, non-covered equipment, rentals, and non-covered equipment to the facility residents at rates which greatly exceeded the industry average; and (3) the FACILITIES made exorbitant payments to related parties owned

23

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  by the MANAGEMENT DEFENDANTS under the guise of "management fees" or

2  "management fees" for inadequate consideration in that these related parties provided

3  no such services for, or did not provide services commensurate with, the fees paid.

4  These practices artificially inflated the operating costs of the FACILITIES while

5  simultaneously and doubly lining the coffers of the DEFENDANTS.

6      71.   **Background on Medi-Cal Rate-Setting.** Assembly Bill (AB) 1629,

7  signed into law in September 2004, included Long-Term Care Reimbursement Act.

8  This legislation changed the state's Medi-Cal reimbursement from a prospective, flat

9  rate to a prospective, cost-based methodology and was designed in part to increase

10  nursing home nurse staffing. This ushered in the beginning of a new Medi-Cal

11  reimbursement methodology for long-term nursing home care that was prospective,

12  facility-specific, and cost-based. The previous methodology was prospective, peer-

13  grouped (median facility determined the rate for that group), and employed flat-rates.

14      72.   The purpose of the Long-Term Care Reimbursement Act was to

15  implement a facility-specific rate setting system that "reflects the costs and staffing

16  levels associated with quality of care for residents in nursing facilities" (California

17  Department of Health Care Services, 2004). More specifically, the legislative intent was

18  meant to effectively ensure individual access to appropriate long-term care services,

19  promote quality care, advance wages and benefits for nursing home workers, support

20  provider compliance with all applicable state and federal requirements, and encourage

21  administrative efficiency (A.B. 1629, 2004). California's new reimbursement

22  methodology is a unique prospective, facility-specific, and cost-based approach to

23  Medi-Cal reimbursement for nursing homes. However, it is not case-mix adjusted

24  meaning that patient acuity is not taken into account (California Health Policy and Data

25  Advisory Committee, 2005).

26      73.   The reimbursement rate itself was based upon five cost categories. The

27  five cost categories were: (a) labor costs; (b) indirect care, nonlabor costs; (c)

28  administrative costs; (d) capital costs; and (e) direct pass-through costs. A facility's

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

24

1 applicable costs for each of the first three categories were divided by the total number
2 of skilled nursing days to create that portion of the per diem (Department of Health
3 Care Services, 2009). The Medi-Cal facility-specific, cost-based per diem
4 reimbursement rate equaled the sum of these five categories.

5     74. Each year, the Department of Health Care Services (DHCS) conducts what
6 is known as a rate study for the purpose of setting the fee-for-service (FFS) long-term
7 care per-diem rates for the upcoming rate-year. Historic cost data reported by each
8 facility serves as the basis for setting the rates for all provider types. Rates are
9 established by the provider types identified above. The reported cost data is audited by
10 DHCS's Audits and Investigations. Because cost data is two or three years old, costs
11 are trended forward using inflation factors in order to project the costs to the rate year.
12 An important factor to consider in evaluating the potential impact on access of the
13 proposed rate reductions is how reimbursement to freestanding facilities (both skilled
14 nursing and adult subacute) will function over the two year period of the 2011-12 and
15 2012-13 rate years. Although these facilities are subject to the proposed 10% reduction
16 in 2011-12, the reduction will be reversed in 2012-13 and facilities will also be
17 reimbursed through a lump sum supplemental payment an amount equal to their 2011-
18 12 reduction. Furthermore, for the 2012-13 rate year the facilities will receive a 2.4%
19 increase over their 2010-11 rates. Given the two-year reimbursement structure, the
20 freestanding facilities (both skilled nursing and adult subacute) have indicated support
21 for the total two-year structure.

22     75. As early as March 2014, Relator became aware that each of the
23 FACILITIES entered into contracts with PREMIER REHAB SERVICES, INC. to
24 provide physical therapy, occupational therapy, and speech language pathology services
25 to the FACILITIES (the "Contracts"). That the DEFENDANTS failed to disclose to the
26 State of California or the federal government that PREMIER REHAB SERVICES,
27 INC. is a "related party" to the DEFENDANTS in that it is owned and operated by
28 defendant PREMA THEKKEK and maintains the same corporate headquarters as

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  DEFENDANTS. The FACILITIES were required to contract with PREMIER REHAB

2  SERVICES, INC. and no other providers and were not given the option of negotiating

3  the rates with PREMIER REHAB SERVICES, INC.

4      76.    The rates that the FACILITIES agreed to pay PREMIER REHAB

5  SERVICES, INC. far exceeded the industry average. Based on Relator's extensive

6  experience in the industry, Relator has personal knowledge that the average rate

7  charged to skilled nursing facility for physical therapy in geographic areas in which the

8  FACILITIES operate is $1.10-$1.20 per minute. The rates charged by DEFENDANTS

9  greatly exceeded these averages. For example, under the Contracts, for the time period

10  beginning May 1, 2014, DEFENDANTS agreed to pay PREMIER REHAB

11  SERVICES, INC. $200 per day for categories RUX and RUL (rehabilitation plus

12  extensive services) of Medicare's Health Insurance Prospective Payment System

13  (HIPPS), which amounts to $1.94 per minute, far greater than the industry standard.

14      77.    Pursuant to the terms of the Contracts, for the time period beginning May

15  1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $175 per

16  day for categories RVX and RVL (rehabilitation plus extensive services) of HIPPS,

17  which amounts to $1.70 per minute, far above the industry average.

18      78.    Pursuant to the terms of the Contracts, for the time period beginning May

19  1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $150 per

20  day for categories RHX and RHL (rehabilitation plus extensive services) of HIPPS,

21  which amounts to $1.46 per minute, far above the industry average.

22      79.    Pursuant to the terms of the Contracts, for the time period beginning May

23  1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $200 per

24  day for categories RUA, RUB, and RUC (rehabilitation) of HIPPS, which amounts to

25  $1.94 per minute, far above the industry average.

26      80.    Pursuant to the terms of the Contracts, for the time period beginning May

27  1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $175 per

28  day for categories RVA, RVB, and RVC (rehabilitation) of HIPPS, which amounts to

1  $1.70 per minute, far above the industry average.

2      81.    Pursuant to the terms of the Contracts, for the time period beginning May

3  1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $150 per

4  day for categories RHA, RHB, and RHC (rehabilitation) of HIPPS, which amounts to

5  $1.46 per minute, far above the industry average.

6      82.    For the time period of January 1, 2012, through December 31, 2012, Bay

7  Point Healthcare Center reported $370,322.00 in physical therapy expenses, or 4.1% of

8  the total health care expense, or $10.95 per patient day. For the time period of January

9  1, 2013, through December 31, 2013, Bay Point Healthcare Center reported

10  $337,430.00 in physical therapy expenses, or 3.7% of its total healthcare expense, or

11  $10.64 per patient day.

12      83.    In paying rates to PREMIER REHAB SERVICES, INC. which exceed the

13  industry average, the DEFENDANTS have intentionally driven up their costs to receive

14  increased Medi-Cal rates.

15      84.    Indeed, Defendant KAYAL, INC. dba Bay Point Healthcare Center had a

16  Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014

17  through July 31, 2015 of $210.49 at a time when the average reimbursement rate for

18  nursing homes with substantially the same staffing ratios was $175.72.

19      85.    Defendant MARINOAK, INC. dba Corinthian Gardens Healthcare &

20  Subacute Center had a Medi-Cal reimbursement rate for regular services for the time

21  period of August 1, 2014 through July 31, 2015 of $173.61 at a time when the average

22  reimbursement rate for nursing homes with substantially the same or higher staffing

23  ratios was $166.25.

24      86.    Defendant NADHAN, INC. dba Creekside Rehabilitation & Behavioral

25  Health had a Medi-Cal reimbursement rate for regular services for the time period of

26  August 1, 2014 through July 31, 2015 of $247.85 at a time when the average

27  reimbursement rate for nursing homes with substantially the same staffing ratios was

28  $205.11.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. 83729 ET SEO.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

87.     Defendant NADHI, INC. dba Gateway Care & Rehabilitation Center had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014 through July 31, 2015 of $210.39 at a time when the average reimbursement rate for nursing homes with substantially the same staffing ratios was $175.72.

88.     Defendant OAKRHEEM, INC. dba Hayward Convalescent Hospital had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014 through July 31, 2015 of $180.86 at a time when the average reimbursement rate for nursing homes with substantially the same staffing ratios was $175.72.

89.     Defendant BAYVIEW CARE, INC. dba Hilltop Care and Rehabilitation Center had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014 through July 31, 2015 of $187.01 at a time when the average reimbursement rate for nursing homes with substantially the same staffing ratios was $175.72.

90.     Defendant SAGAR, INC. dba La Mariposa Care & Rehabilitation Center had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014 through July 31, 2015 of $215.03 at a time when the average reimbursement rate for nursing homes with substantially the same staffing ratios was $178.53.

91.     Defendant KARMA, INC. dba Manteca Care and Rehabilitation Center had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014 through July 31, 2015 of $186.51 at a time when the average reimbursement rate for nursing homes with substantially the same staffing ratios was $160.97.

92.     Defendant THEKKEK HEALTH SERVICES, INC. dba Martinez Convalescent Hospital had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014 through July 31, 2015 of $191.09 at a time when the average reimbursement rate for nursing homes with substantially the same staffing ratios was $178.85.

93.     Defendant NADHAN, INC. dba Orchard Post Acute Care Hospital had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  through July 31, 2015 of $217.84 at a time when the average reimbursement rate for

2  nursing homes with substantially the same staffing ratios was $178.53.

3        94.    Defendant AAKASH, INC. dba Park Central Care & Rehabilitation Center

4  had a Medi-Cal reimbursement rate for regular services for the time period of August 1,

5  2014 through July 31, 2015 of $212.33 at a time when the average reimbursement rate

6  for nursing homes with substantially the same staffing ratios was $144.96.

7        95.    Defendant NASAKY, INC. dba Yuba Skilled Nursing Center had a Medi-

8  Cal reimbursement rate for regular services for the time period of August 1, 2014

9  through July 31, 2015 of $181.92 at a time when the average reimbursement rate for

10  nursing homes with substantially the same staffing ratios was $177.39.

11        96.    Relator also became aware that the MANAGEMENT DEFENDANTS

12  mandated that each of the FACILITIES entered into contracts with Defendant KAZAK

13  ENTERPRISES, INC. doing business under the fictitious business name Diablo

14  Medical Supplies to provide the FACILITIES with medical supplies, nursing supplies,

15  minor equipment, non-covered equipment, rentals, and non-covered equipment. That

16  the DEFENDANTS failed to disclose to the State of California or the federal

17  government that KAZAK ENTERPRISES, INC. is a "related party" to the

18  DEFENDANTS in that it is owned and operated by defendant PREMA THEKKEK and

19  maintains the same corporate headquarters as DEFENDANTS. The FACILITIES were

20  required to contract with KAZAK ENTERPRISES, INC. and no other providers and

21  the FACILITIES were not given the option of negotiating the rates with KAZAK

22  ENTERPRISES, INC. The rates that the FACILITIES were mandated to pay KAZAK

23  ENTERPRISES, INC. far exceeded the industry average.

24  **VII.   SCHEME TO INCREASE MEDI-CAL REIMBURSEMENT RATES**

25  **THROUGH PAYMENT OF EXORBITANT "MANAGEMENT FEES"**

26        97.    DEFENDANTS also illegally and fraudulently increased costs (thereby

27  illegally and fraudulently increasing Medi-Cal reimbursement rates) by funneling

28  payments from the LICENSEES to the MANAGEMENT DEFENDANTS under the

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1 guise of "management fees" and other related fees. The LICENSEES fraudulently

2 transferred assets to the MANAGEMENT DEFENDANTS for no and/or inadequate

3 consideration in that the MANAGEMENT DEFENDANTS performed virtually no

4 services for the LICENSEES in return for the payments. The Relator has personal and

5 independent knowledge that these fees were siphoned off to the MANAGEMENT

6 DEFENDANTS for inadequate consideration.

7      98.   For example, for the time period of January 1, 2012, through December

8 31, 2012, KAYAL, INC. doing business as Bay Point Healthcare Center paid the

9 MANAGEMENT DEFENDANTS $178,082.00 for "management services,"

10 $659,436.00 for "property management services," and $44,452.00 for "interest

11 expense," for a mind-boggling total of $881,970.00 in administration and management-

12 related expenses. For the time period of January 1, 2013 through December 31, 2013,

13 the MANAGEMENT DEFENDANTS were paid $663,690.00 for "property

14 management services," $191,177.00 for "management services," and $41,593 for

15 "interest expense," for a total of $896,460.00 in administration and management related

16 services. For the time period of January 1, 2014 through December 31, 2014, the

17 MANAGEMENT DEFENDANTS were paid $663,690.00 for "property management

18 services" and $77,708.00 for "management services" for a total of $741,398.00.

19 However, Relator has personal and independent knowledge these funds were

20 transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as

21 the MANAGEMENT DEFENDANTS provided KAYAL, INC. doing business as Bay

22 Point Healthcare Center with little or no services in return for these fees.

23      99.   For the time period of January 1, 2013, through December 31, 2013,

24 MARINOAK, INC. doing business as Corinthian Garden Healthcare & Subacute

25 Center paid the MANAGEMENT DEFENDANTS a mind-boggling $1,099,092.00 for

26 "support services." For the time period of January 1, 2014 through December 31, 2014,

27 the MANAGEMENT DEFENDANTS were paid $398,297.00 for "management

28 services." However, Relator has personal and independent knowledge these funds were

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

30

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as

2  the MANAGEMENT DEFENDANTS provided MARINOAK, INC. doing business as

3  Corinthian Garden Healthcare & Subacute Center with little or no services in return for

4  these fees.

5      100.  For the time period of January 1, 2012, through December 31, 2012,

6  NADHAN, INC. doing business as Creekside Rehabilitation & Behavioral Health paid

7  the MANAGEMENT DEFENDANTS a mind-boggling $4,233,181.00 for

8  "management services," $1,708,875.00 for "property management services," and

9  $148,431.00 for "related interest expense," for a mind-boggling total of $6,090,487.00

10  in administration and management-related expenses. For the time period of January 1,

11  2013 through December 31, 2013, the MANAGEMENT DEFENDANTS were paid

12  $2,486,731.00 for " management services," $1,719,900.00 for "property management

13  services," and $245,212.00 for "related interest expense," for a total of $4,451,843.00

14  in administration and management related services. For the time period of January 1,

15  2014 through December 31, 2014, the MANAGEMENT DEFENDANTS were paid

16  $2,550,547.00 for "management services" and $1,719,900.00 for "property

17  management services" for a total of $4,270,447.00. However, Relator has personal and

18  independent knowledge these funds were transferred to the MANAGEMENT

19  DEFENDANTS for inadequate consideration, as the MANAGEMENT

20  DEFENDANTS provided NADHAN, INC. doing business as Creekside Rehabilitation

21  & Behavioral Health with little or no services in return for these fees.

22      101.  For the time period of January 1, 2014, through December 31, 2014,

23  DIYAVILLA, INC. doing business as Diyamonte Acute Care Center paid the

24  MANAGEMENT DEFENDANTS $107,860.00 for "management services" and

25  $420,000.00 for "property management services," for a total of $527,860.00 in

26  administration and management-related expenses. However, Relator has personal and

27  independent knowledge these funds were transferred to the MANAGEMENT

28  DEFENDANTS for inadequate consideration, as the MANAGEMENT

31

1  DEFENDANTS provided DIYAVILLA, INC. doing business as Diyamonte Acute
2  Care Center with little or no services in return for these fees.

3       102.  For the time period of January 1, 2012, through December 31, 2012,
4  NADHI, INC. doing business as Gateway Care & Rehabilitation Center paid the
5  MANAGEMENT DEFENDANTS $468,570.00 for "management services," and
6  $75,812.00 for "related interest expense," for a total of $544,382.00 in administration
7  and management-related expenses. For the time period of January 1, 2013 through
8  December 31, 2013, the MANAGEMENT DEFENDANTS were paid $212,366.00 for
9  "management services" and $92,794.00 for "related interest expense" for a total of
10 $305,160.00 in administration and management related services. For the time period of
11 January 1, 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS
12 were paid $55,858.00 for "management services." However, Relator has personal and
13 independent knowledge these funds were transferred to the MANAGEMENT
14 DEFENDANTS for inadequate consideration, as the MANAGEMENT
15 DEFENDANTS provided NADHI, INC. doing business as Gateway Care &
16 Rehabilitation Center with little or no services in return for these fees.

17      103.  For the time period of January 1, 2012, through December 31, 2012,
18 OAKRHEEM, INC. doing business as Hayward Convalescent Hospital paid the
19 MANAGEMENT DEFENDANTS $877,188.00 for "lease-building" and $268,881.00
20 for "management services," for a total of $1,146,069.00 in administration and
21 management-related expenses. For the time period of January 1, 2013 through
22 December 31, 2013, the MANAGEMENT DEFENDANTS were paid $907,690.00 for
23 "lease-building" and $151,464.00 for "management services" for a total of
24 $1,059,154.00 in administration and management related services. For the time period
25 of January 1, 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS
26 were paid $1,117,118.00 for "lease-building" and $287,526.00 for "management
27 services" for a total of $1,404,644.00. However, Relator has personal and independent
28 knowledge these funds were transferred to the MANAGEMENT DEFENDANTS for

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

32

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 · FACSIMILE (562) 216-5271

1 inadequate consideration, as the MANAGEMENT DEFENDANTS provided

2 OAKRHEEM, INC. doing business as Hayward Convalescent Hospital with little or no

3 services in return for these fees.

4     104. For the time period of January 1, 2012, through December 31, 2012,

5 BAYVIEW CARE, INC. doing business as Hilltop Care and Rehabilitation Center paid

6 the MANAGEMENT DEFENDANTS $10,000.00 for "management services" and

7 $512,663.00 for "property management services" for a total of $522,663.00 in

8 administration and management-related expenses. For the time period of January 1,

9 2013 through December 31, 2013, the MANAGEMENT DEFENDANTS were paid

10 $519,970.00 for "property management services" and $94,517.00 for "management

11 services" for a total of $614,487.00 in administration and management related services.

12 For the time period of January 1, 2014 through December 31, 2014, the

13 MANAGEMENT DEFENDANTS were paid $565,920.00 for "property management

14 services" and $31,773.00 for "management services" for a total of $597,693.00.

15 However, Relator has personal and independent knowledge these funds were

16 transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as

17 the MANAGEMENT DEFENDANTS provided BAYVIEW CARE, INC. doing

18 business as Hilltop Care and Rehabilitation Center with little or no services in return for

19 these fees.

20     105. For the time period of January 1, 2012, through December 31, 2012,

21 SAGAR, INC. doing business as La Mariposa Care & Rehabilitation Center paid the

22 MANAGEMENT DEFENDANTS $406,341.00 for "management services" and

23 $71,476.00 for "related interest expense," for a total of $477,817.00 in administration

24 and management-related expenses. For the time period of January 1, 2013 through

25 December 31, 2013, the MANAGEMENT DEFENDANTS were paid $213,793.00 for

26 "management services" and $58,396.00 for "related interest expense," for a total of

27 $272,189.00 in administration and management related services. For the time period of

28 January 1, 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  were paid $231,021.00 for "management services". However, Relator has personal and

2  independent knowledge these funds were transferred to the MANAGEMENT

3  DEFENDANTS for inadequate consideration, as the MANAGEMENT

4  DEFENDANTS provided SAGAR, INC. doing business as La Mariposa Care &

5  Rehabilitation Center with little or no services in return for these fees.

6      106.   For the time period of March 11, 2014 through September 30, 2014,

7  GRACEVILLA, INC. doing business as Genesis Healthcare Center paid the

8  MANAGEMENT DEFENDANTS $240,000.00 for "management services." However,

9  Relator has personal and independent knowledge these funds were transferred to the

10  MANAGEMENT DEFENDANTS for inadequate consideration, as the

11  MANAGEMENT DEFENDANTS provided GRACEVILLA, INC. doing business as

12  Genesis Healthcare Center with little or no services in return for these fees.

13      107.   For the time period of January 1, 2012, through December 31, 2012,

14  KARMA, INC. doing business as Manteca Care and Rehabilitation Center paid the

15  MANAGEMENT DEFENDANTS $578,078.00 for "management services,"

16  $1,263,200.00 for "property management services," and $119,767.00 for "interest

17  expense," for a mind-boggling total of $1,961,045.00 in administration and

18  management-related expenses. For the time period of January 1, 2013 through

19  December 31, 2013, the MANAGEMENT DEFENDANTS were paid $1,271,350.00

20  for "property management services," $172,303.00 for "management services," and

21  $94,390.00 for "interest expense," for a total of $1,538,043.00 in administration and

22  management related services. For the time period of January 1, 2014 through December

23  31, 2014, the MANAGEMENT DEFENDANTS were paid $1,271,350.00 for "property

24  management services" and $874,374.00 for "management services" for a total of

25  $2,145,724.00. However, Relator has personal and independent knowledge these funds

26  were transferred to the MANAGEMENT DEFENDANTS for inadequate consideration,

27  as the MANAGEMENT DEFENDANTS provided KARMA, INC. doing business as

28  Manteca Care and Rehabilitation Center with little or no services in return for these

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  fees.

2      108. For the time period of January 1, 2012, through December 31, 2012,

3  NADHAN, INC. doing business as Orchard Post Acute Care Hospital paid the

4  MANAGEMENT DEFENDANTS $746,961.00 for "management services" and

5  $8,570.00 for "interest expense," for a total of $755,531.00 in administration and

6  management-related expenses. For the time period of January 1, 2013 through

7  December 31, 2013, the MANAGEMENT DEFENDANTS were paid $493,274.00 for

8  "management services" and $5,798.00 for "interest expense," for a total of $499,072.00

9  in administration and management related services. For the time period of January 1,

10 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS were paid

11 $543,017.00 for "management services." However, Relator has personal and

12 independent knowledge these funds were transferred to the MANAGEMENT

13 DEFENDANTS for inadequate consideration, as the MANAGEMENT

14 DEFENDANTS provided NADHAN, INC. doing business as Orchard Post Acute Care

15 Hospital with little or no services in return for these fees.

16     109. For the time period of January 1, 2012, through December 31, 2012,

17 AAKASH, INC. doing business as Park Central Care & Rehabilitation Center paid the

18 MANAGEMENT DEFENDANTS $1,299,177.00 for "management services" and

19 $10,563.00 for "interest expense," for a mind-boggling total of $1,309,740.00 in

20 administration and management-related expenses. For the time period of January 1,

21 2013 through December 31, 2013, the MANAGEMENT DEFENDANTS were paid

22 $836,686.00 for "management services." For the time period of January 1, 2014

23 through December 31, 2014, the MANAGEMENT DEFENDANTS were paid

24 $663,690.00 for "property management services" and $77,708.00 for "management

25 services" for a total of $741,398.00. However, Relator has personal and independent

26 knowledge these funds were transferred to the MANAGEMENT DEFENDANTS for

27 inadequate consideration, as the MANAGEMENT DEFENDANTS provided KAYAL,

28 INC. doing business as Bay Point Healthcare Center with little or no services in return

1 | for these fees.

2 | **VIII. <u>SCHEME TO DEFRAUD HUD/FHA</u>**

3 | 110.   HUD/FHA provides mortgage insurance on loans that cover housing for
4 | the frail elderly. Known as a Section 232 loan, these loans help finance nursing homes,
5 | assisted living facilities, and board and care facilities. FHA mortgage insurance
6 | provides lenders with protection against losses as the result of borrowers defaulting on
7 | their mortgage loans. The lenders bear less risk because FHA will pay a claim to the
8 | lender in the event of a borrower's default. Loans must meet certain requirements
9 | established by FHA to qualify for insurance. Proposed projects are evaluated on the
10 | basis of whether the proposal is an acceptable insurance risk for the FHA Insurance
11 | Fund. It is not a competitive process. The Section 232 program is codified at 12 U.S.C.
12 | § 1715w and HUD's regulations for the Section 232 program are codified at 24 C.F.R.
13 | part 232.

14 | 111.   Section 232 may be used to finance the purchase, refinance, new
15 | construction, or substantial rehabilitation of a project. A combination of these uses is
16 | acceptable - e.g. refinance of a nursing home coupled with new construction of an
17 | assisted living facility.

18 | 112.   Section 232 sets certain requirements relating to the qualification of
19 | Borrowers and Operators for the Section 232 program. As stated in the HUD
20 | Handbook:

21 |
22 | > A key component of the underwriting process is to assess the Borrower and/or Operator's ability to manage the development, construction, completion and successful lease-up of the FHA insured property. The underwriting of Section 232 projects involves evaluating the experience and financial condition of the Borrower and its principals, the Operator, parent of the Operator and the general contractor.
23 |
24 |
25 |

26 | (Section 232 Handbook, Section 11, Production, Chapter 6, §6.1.B.)

27 | 113.   Identifying principal ownership interest. There are numerous ways for
28 |

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  investors to own an interest in real property. Each form of ownership offers different

2  benefits and risks. If the Borrower (and/or the Operator and parent of the Operator) has

3  a complex or layered organizational structure, the Lender must review the structure and

4  identify the individuals or entities that have control under the organizational structure.

5  The Lender must confirm that the Borrower (and/or the Operator and parent of the

6  Operator) is legally organized in a manner that meets U.S. Department of Housing and

7  Urban Development's ("HUD") requirements for owning and operating an FHA-

8  insured facility, and consider any difficulties or increased risk that the organizational

9  structure might pose in the event of default or foreclosure on the FHA-insured

10 mortgage loan. All principals that meet the ownership and control standards set forth in

11 HUD's previous participation regulations must file a Previous Participation

12 Certification Form HUD-2530) or APPS submission (see Production, Chapter 2) and

13 are subject to the disclosure and certification requirements regarding bankruptcy,

14 judgments, pending litigation and delinquent federal debt. Those principals with

15 decision-making authority, active management roles, or a significant percentage of

16 financial investment in the project are subject to a more complete credit investigation.

17 The Lender is responsible for identifying the principals and the extent of the credit

18 review required and appropriate for each such principal. (Section 232 Handbook,

19 Section II, Production, Chapter 6, §6.1.C.)

20      114.   Operators and Management Agents that operate FHA-insured residential

21 healthcare facilities play a key role in providing quality housing and health services,

22 critical to the success of the project over the life of the mortgage. To this end, ORCF

23 requires that detailed Operator and/or Management Agent documents be submitted for

24 approval with the application or when there is a proposed change in the Operator and/or

25 Management Agent. [¶] It is the Lender's responsibility to review whether the proposed

26 Operator and/or Management Agent demonstrate the capability and track record to

27 assure that the project will be operated in a prudent, efficient, and cost-effective

28 manner, while providing excellent care to the residents. [¶] ORCF holds the Borrower

1   ultimately accountable for all functions and actions necessary to sustain an insured

2   healthcare project. That ultimate project responsibility holds regardless of the

3   Regulatory and/or Management Agreements the Operators and/or agents sign. [¶] Once

4   the Lender recommends approval, ORCF must also approve a proposed Operator

5   and/or Management Agent prior to their involvement in a Section 232 project.

6   (Section 232 Handbook Section II, Production, Chapter 8, ¶8.1.)

7        115. An "Operator," for purposes of projects insured under Section 232 of the

8   National Housing Act, is the legal entity licensed by the applicable state licensing

9   authority to "operate" a particular healthcare project. Thus, the state awards a particular

10   entity the right to provide resident care services and to conduct the usual and necessary

11   business matters of a healthcare provider at the designated project. Thereafter, the state

12   holds the licensee accountable for its healthcare services provided and its business

13   conduct in accordance with existing standards and regulations. In certain jurisdictions,

14   the state licensing authority may name more than one entity on the project operating

15   license. For purposes of ORCF requirements, all such entities shall be considered an

16   Operator and shall be held to the same submission standards and regulatory

17   requirements. [¶] ORCF requires that an operator of an FHA-insured healthcare project

18   be licensed as the project Operator by the state. ORCF also requires that the Operator

19   be a single-asset entity acceptable to the Commissioner, and that it possess all powers

20   necessary and incidental to operating the healthcare project. Occasional exceptions may

21   be granted under such circumstances, terms and conditions determined and specified by

22   the Commissioner. Circumstances under which exemption from this single asset

23   operator entity requirement may be considered are set forth in Production, Chapter 2, at

24   2.5C. (Section 232 Handbook, Section II, Production, Chapter 8, §8.2.)

25        116. In yet another circumstance, a licensed Operator, rather than leasing the

26   project, contracts with the Borrower to operate the project for a negotiated fee (through,

27   for example, an "Operating Agreement" or a "Management Agreement"). In such

28   circumstances, including those in which a Management Agent is the co-licensee for a

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1    healthcare project, such entity shall be subject to the same requirements as an Operator.

2    In these instances, the contract made between the Borrower and approved Operator

3    requires ORCF approval. In any case HUD ORCF enforces the Operator's

4    responsibilities via the Healthcare Regulatory Agreement-Operator.

5    (Section 232 Handbook, Section II, Production, Chapter 8, §8.2.)

6        117.   The Lender must ensure that the proposed Operator and/or Management

7    Agent have the business and healthcare expertise to market and operate the proposed

8    project. Inherent in this expertise is knowledge of the intended clientele, their specific

9    health-related and hospitality needs, and the best approach to meeting these needs. At

10   least one principal or entity of the proposed Operator or Management Agent must have

11   a proven track record of successful operations in the type of project proposed (e.g.

12   Nursing Home, Assisted Living, Memory Care or Board & Care). Principals must have

13   at least 3 years of experience participating in multiple properties. Longer operating

14   histories may be required for participants with only one project. Experience must

15   include developing, marketing, operating, and, as applicable, lease-up of the type of

16   project proposed. Evidence of appropriate experience must be provided that includes

17   specific project examples including project name, type of care provided, location, and

18   unit/bed count. For projects adding units to a market, evidence must also include year

19   opened and key operating metrics (fill pace, occupancy, net operating income margins),

20   and specific responsibilities for the management and operation of the example

21   healthcare project. ORCF is seeking assurance that the Operators and Management

22   Agents are committed to the long-term success of the project and have the requisite

23   experience to operate and manage the project. (Section 232 Handbook, Section II,

24   Production, Chapter 8, §8.4.)

25       118.   A Transfer of Physical Assets ("TPA") is the sale and conveyance by deed

26   of title to a property which has a mortgage insured or held by U. S. Department of

27   Housing and Urban Development ("HUD") and necessitates a substitution of

28   Borrowers. HUD approval of the substitution is required in every case where HUD

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1 exercises control over the Borrower either as preferred stockholder, by regulatory

2 agreement, or by certificate of beneficial interest. This chapter applies to all

3 transactions involving the transfer of all or part of an interest in the ownership of such

4 properties. (Section 232 Handbook, Section III, Asset Management, Chapter 7, §7.1.)

5     119. Transactions requiring HUD's full review of a project, its current

6 Borrower, and the qualifications of the new controlling entity include, but are not

7 limited to, projects demonstrating the following characteristics: 1. Transfer of title from

8 the Borrower entity to a buyer, including conveyance by installment sales contract, land

9 contract or wrap-around mortgage; 2. Transfer of any interest in a partnership Borrower

10 which causes a dissolution of the partnership under applicable state law; 3. Transfer of

11 the beneficial interest in a passive trust which results in a change in control and

12 management of the asset, although legal title remains in the trustee.

13 (Section 232 Handbook, Section III, Asset Management, Chapter 7, §7.2.A.)

14     120. The ORCF will review the Application for Transfer of Physical Assets

15 (TPA) (Form HUD-92266-ORCF) and all accompanying documentation. At the end of

16 the review process, if the attached instruments are found to be in order, and the transfer

17 proposal is acceptable, HUD will issue a letter granting initial approval of the

18 application. This approval may be conditioned upon any ORCF requirement plus

19 necessary changes in the submitted documents, if any, and will authorize the execution

20 of all remaining required instruments. It is at this point that the parties to the transaction

21 are authorized to transfer possession of and beneficial interest in the project. The

22 purchaser is not authorized to transfer any interest in, take possession of, or assume the

23 burdens and benefits of ownership without the written approval of ORCF.

24 (Section 232 Handbook, Section III, Asset Management, Chapter 7, §7.5.)

25     121. All Borrowers and Operators must execute an ORCF Regulatory

26 Agreement governing the operation of the project in order to comply with Program

27 Obligations, the requirements of the National Housing Act, as amended, and the

28 regulations adopted by HUD. The regulatory agreement will be recorded at Initial

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1 | Closing and will continue during such period of time as HUD is the owner, holder or
2 | insurer of the Note. Borrowers and Operators are responsible for any violations of the
3 | Regulatory Agreements and may be subject to adverse actions if violations occur. The
4 | Borrower Regulatory Agreement is Form HUD-92466-ORCF and the Operator
5 | Regulatory Agreement is Form HUD-92466A-ORCF.

6     122.  Because DEFENDANTS did not qualify as borrowers under the Section
7 | 232 program requirements alleged hereinabove, DEFENDANTS concealed from HUD
8 | and the FHA their true ownership interests in Apple Valley Care Center and entered
9 | into a side agreement relating to Apple Care Center by which they fraudulently
10 | obtained loans under the Section 232 program for their own benefit but in the name of
11 | unrelated entities. These side agreements also constituted unlawful TPAs which were
12 | concealed from HUD in violation of the law.

13     123.  Specifically, the side agreements provided as follows:

14     (i) _____, LLC, a California limited
15 | liability company ("Real Estate Purchaser"), will be
entering into that certain Real Estate Purchase Agreement
16 | Joint Escrow Instructions (the "REPA"), with Apple Valley
Christian Senior Care Community, LLC, and Apple Valley
17 | Christian Care Center Real Estate Holding Company, LLC
18 | (collectively, "Real Estate Sellers"), pursuant to which Real
Estate Purchaser will be acquiring the real property and
19 | improvements housing that certain 99- bed skilled nursing
20 | facility located at 11959 Apple Valle Road, Apple Valley,
California 92308-7507 (the "Facility");
21 | (ii) Apple Care Center, LLC, a California limited
22 | liability company ("New Operator"), will be entering into
that certain Asset Purchase Agreement and Joint Escrow
23 | Instructions (the "APA"), with Real Estate Sellers and
24 | Apple Valley Christian Centers, pursuant to which New
Operator will be acquiring the operations of the Facility and
25 | the operational assets as more particularly described in the
26 | APA; and
(iii) The matters described in (ii) and (iii) above shall
27 | collectively be described as (the "Transaction").
28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

(iv)   New Operator is governed by that certain Operating Agreement, and the members of New Operator are _____ and AV Holding Company, LLC, a California limited liability company ("AVHC"). _____ is owned by James Preimesberger.

Mr. Preimesberger agreed to enter into the Transaction on the following conditions:

1)   That Mr. Preimesberger shall be paid key money in the amount of One Hundred Fifty Thousand Dollars ($150,000.00) (the "Key Money") as follows:

a)   Fifty Thousand Dollars ($50,000.00) was paid to Mr. Preimesberger on or about August 30, 2013;

b)   One Hundred Thousand Dollars ($100,000.00) shall be paid to Mr. Preimesberger on the date on which the Transaction documents are executed; and;

2)   Mr. Preimesberger shall receive monthly compensation in the amount of Fifteen Thousand Dollars ($15,000.00) per month for his services to the New Operator as the Managing Member (the "Manager Fee"), commencing on the Closing Date and continuing for as long as Mr. Preimesberger is the Managing Member of New Operator.

124.   In 2013, Apple Valley Christian Centers, a California nonprofit public benefit corporation, Apple Valley Christian Senior Care Community, LLC, and Apple Valley Christian Care Center Real Estate Holding Company, LLC sold Apple Valley Care Center to Apple Care Center, LLC. Apple Valley Care Center, LLC was a shell corporation set up by DEFENDANTS. The DEFENDANTS concealed this side agreement from HUD and the FHA, thereby illegally and fraudulently obtaining loans relating to Apple Valley Care Center under the Section 232 program.

125.   Based upon all of the foregoing allegations, Relator is informed and believes that the fraudulent practices described in this Complaint are representative of a pattern and practice of fraud to be found throughout all of DEFENDANTS' FACILITIES. These acts were ongoing and widespread and stemmed from the DEFENDANTS' constant and intense pursuit to maximize its revenues.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

126. DEFENDANTS' false claims occurred from at least 2012 forward. Medicare, Medicaid and Medi-Cal beneficiaries represented a substantial portion of DEFENDANTS' total patient days and gross revenues during the relevant time period and as such, significant sums of money are derived solely from Medicare, Medicaid and Medi-Cal reimbursements. As a consequence of DEFENDANTS' pattern and practice described herein, it is estimated that DEFENDANTS have defrauded the Medicare, Medicaid and Medi-Cal programs and the U.S. taxpayers out of millions of dollars. Based upon the federal statutory civil penalty of Eleven Thousand Dollars ($11,000.00) for each false claim submitted and treble damages applied to the amount of the overpayments, Relator estimates the total amount to be recovered from the DEFENDANTS to be millions of dollars.

## First Claim for Relief

### (Against All Defendants)

### False Claims Act, 31 U.S.C. §§3729 *et seq.*

127. Relator realleges and incorporates by reference the allegations set forth in the paragraphs above as if set forth fully herein.

128. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§3729 *et seq.,* as amended.

129. Through the acts described above, DEFENDANTS knowingly and willfully presented, or caused to be presented, to the United States Government and to the federally-funded Medi-Cal and Medicare programs false and fraudulent claims for payment or approval relating to nursing facility care of Medicare and Medi-Cal patients in violation of the False Claims Act.

130. Through the acts described above, DEFENDANTS knowingly and willfully made, used, or caused to be made and used, false records and false statements to get false or fraudulent claims paid or approved by the United States Government and recipients of federal funds in violation of federal laws.

131. Through the acts described above, DEFENDANTS conspired among

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1   themselves and others to defraud the United States Government by getting false or
2   fraudulent Medicare and Medicaid claims allowed and paid. Moreover,
3   DEFENDANTS took substantial steps toward the completion of the goals of that
4   conspiracy, *inter alia,* by submitting false claims, by providing and receiving
5   remuneration in exchange for the referral of patients, and by making misrepresentation
6   that defendants had complied with all statutes, rules and regulations governing the
7   Medicare Act, including state and federal anti-kickback statutes. Thus, in violation of
8   federal laws, DEFENDANTS conspired to cause the United States to pay claims for
9   health care services based on false claims and false statements that the services were
10  provided in compliance with all laws regarding the provision of health care services
11  when they were not so provided.

12      132.   The United States, unaware of the falsity of the claims made by the
13  DEFENDANTS, directly or indirectly approved, paid, or participated in payments to
14  DEFENDANTS that would otherwise not have been allowed or paid but for
15  DEFENDANTS' conduct.

16      133.   The United States, unaware of the defendants' conspiracy or the steps
17  taken in furtherance thereof, allowed, paid, or participated in payments to
18  DEFENDANTS that would otherwise not have been allowed or paid but for
19  DEFENDANTS' conduct.

20      134.   By virtue of the acts described above, DEFENDANTS also knowingly and
21  willfully made, used, or caused to be made or used, false records or statements to
22  conceal, avoid, or decrease an obligation to pay or transmit money or property to the
23  United States Government, within the meaning of 31 U.S.C. §3729(a)(1)(G).
24  DEFENDANTS acted with actual knowledge, deliberate ignorance, and/or reckless
25  disregard of the law when submitting their claims to the Medicare and Medi-Cal
26  programs for reimbursement of services rendered to beneficiaries of these programs. As
27  a result, monies were lost to the United States through the non-payment or non-
28  transmittal of money or property owed to the United States by DEFENDANTS, and

1  other costs were sustained by the United States.

2      135.  The acts described above also amount to healthcare fraud in violation of

3  18 U.S.C. §1347 as DEFENDANTS knowingly and willfully executed a scheme to

4  defraud a healthcare benefit program and to obtain money or property from a healthcare

5  benefit program through false representations.

6      136.  The acts described above also amount to false statements relating to

7  healthcare matters in violation of 18 U.S.C. §1035 as DEFENDANTS knowingly and

8  willfully falsified or concealed a material fact, made any materially false statement, or

9  used any materially false writing or document in connection with the delivery of or

10  payment for healthcare benefits, items or services.

11      137.  By reason of DEFENDANTS' conduct described above, the United States

12  was damaged, and continues to be damaged, in an amount yet to be determined.

13          **<u>Second Claim for Relief</u>**

14          **(Against All Defendants)**

15     **Federal Anti-Kickback Statute, 42 U.S.C. §1320A-7(B)(b)**

16      138.  Relator re-alleges and incorporates by reference the allegations set forth

17  the paragraphs above as if set forth fully herein.

18      139.  The Federal Anti-Kickback Statute prohibits the solicitation or receipt of

19  remuneration in return for referrals of Medicare patients and the offer or payment of

20  remuneration to induce such referrals.

21      140.  DEFENDANTS, and each of them, induced and continue to induce

22  referrals of Medicare patients by offering physicians and hospital case managers

23  money, gift cards, funds disguised as medical director fees and consultation fees, and

24  other remuneration in exchange for such referrals.

25      141.  DEFENDANTS accepted referrals of Medicare patients from hospitals that

26  were induced by the provision of illegal remuneration and then have submitted claims

27  for such residents in violation of the statute.

28      142.  DEFENDANTS' failure to disclose such conduct constitutes fraud and any

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 · FACSIMILE (562) 216-5271

45

1  subsequent submission of a HCFA form 2552 (certifying that the services were

2  provided in compliance with healthcare laws and regulations) included services to

3  patients whose healthcare providers received kickbacks or illegal inducements

4  prohibited by §1320a-7(b)b, thus causing the HCFA form 2552 reports to be "false

5  records or statements."

6      143.   At least one of the purposes of DEFENDANTS' payment and receipt of

7  remuneration was to induce future referrals.

8      144.   By reason of DEFENDANTS' conduct described above, the United States

9  was damaged, and continues to be damaged, in an amount yet to be determined.

10                          **Third Claim for Relief**

11                          **(Against All Defendants)**

12          **California False Claims Act, Cal Gov. Code §12651 *et seq.***

13      145.   Relator realleges and incorporates by reference the allegations set forth the

14  paragraphs above as if set forth fully herein.

15      146.   This is a claim for treble damages and penalties under the California False

16  Claims Act.

17      147.   By virtue of the acts described above, DEFENDANTS knowingly and

18  willfully made, used, or caused to be made or used false records and statements, and

19  omitted material facts, to induce the California State Government to approve and pay

20  such false and fraudulent claims.

21      148.   Through the acts described above, defendants conspired among themselves

22  and others to defraud the California State Government by getting false or fraudulent

23  claims allowed and paid. Moreover, DEFENDANTS took substantial steps toward the

24  completion of the goals of that conspiracy, *inter alia*, by submitting false claims, by

25  creating false documentation in support of such claims, and by making

26  misrepresentations about how patients were being provided nursing facility care.

27      149.   Through the acts described above, DEFENDANTS conspired among

28  themselves and others to defraud the California State Government by getting false or

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

46

1  fraudulent claims allowed and paid. Moreover, DEFENDANTS took substantial steps

2  toward the completion of the goals of that conspiracy, *inter alia,* by submitting false

3  claims, by providing and receiving remuneration in exchange for the referral of

4  patients, and by making misrepresentation that defendants had complied with all

5  applicable statutes, rules and regulations, including state anti-kickback statute.

6      150.   The California State Government, unaware of the falsity of the claims

7  made by the DEFENDANTS, approved, paid, or participated in payments to

8  DEFENDANTS that would otherwise not have been allowed or paid but for

9  DEFENDANTS' conduct.

10     151.   The California State Government, unaware of the DEFENDANTS'

11  conspiracy or the steps taken in furtherance thereof, allowed, paid, or participated in

12  payments to DEFENDANTS that would otherwise not have been paid or allowed but

13  for DEFENDANTS' conduct.

14     152.   By virtue of the acts described above, DEFENDANTS also knowingly and

15  willfully made, used, or caused to be made or used, false records or statements to

16  conceal, avoid, or decrease an obligation to pay or transmit money or property to the

17  California State Government. As a result, monies were lost to the California State

18  Government through the non-payment or non-transmittal of money or property owed to

19  the California State Government by DEFENDANTS, and the California State

20  Government sustained additional costs.

21     153.   By reason of DEFENDANTS' conduct described above, the California

22  State Government was damaged, and continues to be damaged, in an amount yet to

23  be determined.

### Fourth Claim for Relief

### (Against All Defendants)

### California Anti-Kickback Statute, Wel. & Inst. §14107.2 and Bus & Prof §650

27     154.   Relator realleges and incorporates by reference the allegations set forth the

28  paragraphs above as if set forth fully herein.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1    155.    California's Anti-Kickback statute prohibits the solicitation, receipt, offer, or payment of "any remuneration, including but not restricted to, any kickback, bribe or rebate, directly or indirectly, overtly over covertly, in cash or in valuable consideration of any kind" in connection with the referral of any person for the furnishing or arrangement of any service or merchandise, or the purchase, lease, order, arrangement, or recommendation of any goods, facility, service, or merchandise for which payment may be made by Medi-Cal. California *Welfare & Institutions Code* §14107.2.

156.    Further, California *Business & Professions Code* §650 prohibits the offer, delivery, receipt or acceptance by any licensed practitioner of any rebate, refund, commission, preference, patronage, patronage dividend, discount, or other consideration as compensation or inducement for referring patients, clients, or customers to any person.

157.    DEFENDANTS, and each of them, induced and continue to induce referrals of Medi-Cal patients by offering physicians and hospital case managers money, giftcards, funds disguised as medical director fees and consultation fees, and other remuneration in exchange for such referrals.

158.    DEFENDANTS accepted referrals of Medi-Cal patients from hospitals that were induced by the provision of illegal remuneration and then have submitted claims for such residents in violation of the statute.

159.    At least one of the purposes of DEFENDANTS' payment and receipt of remuneration was to induce future referrals

160.    By reason of DEFENDANTS' conduct described above, the California State Government was damaged, and continues to be damaged, in an amount yet to be determined.

### PRAYER

**WHEREFORE**, Relator requests that Judgment be entered against Defendants, ordering that:

a.    Defendants cease and desist from violating 31 U.S.C. §3729 *et seq.*, 42

48

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1 || U.S.C. §1320A-7b(b), 31 U.S.C. §3729(a)(3), 18 U.S.C. §1347, 18 U.S.C. §1035,

2 || California *Government Code* §12651 *et seq.,* California *Welfare & Institutions Code*

3 || §14107.2, California *Business & Professions Code* §650;

4    b.    Defendants pay an amount equal to three times the amount of damages

5 || the United States has sustained because of Defendants' actions, plus a civil penalty

6 || against each defendant of not less than $5,000, and not more than $11,000 for each

7 || violation of 31 U.S.C. § 3729 *et seq.*;

8    c.    Defendants pay an amount equal to three times the amount of damages

9 || the United States has sustained because of Defendants' actions, plus a civil penalty

10 || against each defendant of $50,000 for each violation of 42 U.S.C. §1320A-7b;

11    d.    Defendants pay an amount equal to three times the amount of damages

12 || California has sustained because of Defendants' actions, plus a civil penalty of

13 || $10,000 for each violation of Cal. Gov. Code §12650 *et seq.*;

14    e.    Defendants pay an amount of up to $50,000 for violation of Cal. Welf.

15 || & Inst. Code §14107.21;

16    f.    Defendants pay an amount equal to three times the amount of damages

17 || California has sustained because of Defendants' actions, plus a civil penalty of

18 || $50,000 for each violation of Cal. Bus. & Prof. Code §650;

19    g.    Relator be awarded the maximum amount allowed pursuant to the *qui tam*

20 || provisions of the federal and California statutes, of the proceeds of this action or

21 || settlement of this action. Relator requests that his percentage be based upon the total

22 || value recovered, including any amounts received from individuals or entities not parties

23 || to this action;

24    h.    Relator be awarded all costs of this action, including attorneys' fees and

25 || costs; and

26    i.    The United States, California and Relator be granted all such other relief

27 || as the Court deems just and proper.

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.
M:\Paksn, Inc (15-154)\Pleadings\Complaint.doc

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 · FACSIMILE (562) 216-5271

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

DATED: November 20, 2015  **GARCIA, ARTIGLIERE & MEDBY**

By: _____
Stephen M. Garcia
David M. Medby
Attorneys for Relator and Qui Tam Plaintiff
Trilochan Singh

50

**CIVIL COVER SHEET**

## I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ )

United States of America, ex rel., Trilochan Singh

## DEFENDANTS ( Check box if you are representing yourself ☐ )

Paksn, Inc.; CCRC, LLC; HCRC, Inc.; Prema Thekkek, Antony Thekkek; Kayal, Inc.; Marinoak, Inc.; Nadhan, Inc.; Diyavilla, Inc.; Nadhi, Inc.; Oakrheem, Inc.; et al.

**(b) County of Residence of First Listed Plaintiff**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant** Solano
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Garcia, Artigliere & Medby
One World Trade Center, Suite 1950, Long Beach, CA 90831
(562) 216-5270

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

## II. BASIS OF JURISDICTION (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

## V. REQUESTED IN COMPLAINT: JURY DEMAND: ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ Excess of 10 million

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Federal False Claims Act (31 U.S.C. sec. 3729, et seq.); California False Claims Act (Cal. Gov. Code sec. 12650)

## VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☒ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:

CV15-09064

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right and, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☒ Yes  ☐ No |  | ☒ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☒ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☐ No |  | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | **A.** Orange County | **B.** Riverside or San Bernardino County | **C.** Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. |
|  | Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Western ▼ |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes  ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO    ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐    A.  Arise from the same or a closely related transaction, happening, or event;

☐    B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐    C.  For other reasons would entail substantial duplication of labor if heard by different judges.

Note:  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐    A.  Arise from the same or a closely related transaction, happening, or event;

☐    B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐    C.  Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**    DATE: 11/20/15

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |