**GARCIA, ARTIGLIERE & MEDBY**
**Stephen M. Garcia, State Bar No. 123338**
  sgarcia@lawgarcia.com
**David M. Medby, State Bar No. 227401**
  dmedby@lawgarcia.com
**One World Trade Center, Suite 1950**
**Long Beach, California  90831**
**Telephone:  (562) 216-5270**
**Facsimile:   (562) 216-5271**

Attorneys for Relator



FILED
CLERK, U.S. DISTRICT COURT

December 11, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CR_____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA EX REL., [UNDER SEAL], <br><br> Plaintiffs, <br><br> vs. <br><br> [UNDER SEAL], <br><br> Defendants. | CASE NO.   CV 15-09064-PA (AGRx) <br><br> **FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] AND CALIFORNIA'S FALSE CLAIMS ACT [CAL. GOV. CODE §12650 ET SEQ.]** <br><br> **[DEMAND FOR JURY TRIAL]** <br><br><br> **[FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(B)(2)]** |

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA  90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

1  **GARCIA, ARTIGLIERE & MEDBY**
   **Stephen M. Garcia, State Bar No. 123338**
2    sgarcia@lawgarcia.com
   **David M. Medby, State Bar No. 227401**
3    dmedby@lawgarcia.com
   **One World Trade Center, Suite 1950**
4  **Long Beach, California  90831**
   **Telephone:  (562) 216-5270**
5  **Facsimile:   (562) 216-5271**

6  Attorneys for Relator

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  UNITED STATES OF AMERICA,          CASE NO.  CV 15-09065-PA (AGRx)
    STATE OF CALIFORNIA EX REL.
12  TRILOCHAN SINGH,                   **FIRST AMENDED COMPLAINT**
                                       **FOR  VIOLATION  OF  THE**
13            Plaintiffs,              **FEDERAL FALSE CLAIMS ACT [31**
                                       **U.S.C.    §3729    ET    SEQ.]    AND**
14        vs.                          **CALIFORNIA'S    FALSE    CLAIMS**
                                       **ACT [CAL. GOV. CODE §12650 ET**
15  PAKSN, INC.; CCRC, LLC; HCRC,      **SEQ.]**
    INC.; PREMA THEKKEK; ANTONY
16  THEKKEK;        KAYAL,      INC.;  **[DEMAND FOR JURY TRIAL]**
    MARINOAK, INC.; NADHAN, INC.;
17  DIYAVILLA,  INC.;  NADHI,  INC.;   **[UNDER SEAL]**
    OAKRHEEM, INC.; BAYVIEW CARE,
18  INC.; SAGAR, INC.; GRACEVILLA,
    INC.;    KARMA,    INC.;    THEKKEK
19  HEALTH SERVICES, INC.; AAKASH,
    INC.;  WESTVILLA,  INC.;  NASAKY,
20  INC.; PREMIER REHAB SERVICES,
    INC.; KAZAK ENTERPRISES, INC.;
21  and Does 1-10, inclusive,

22            Defendants.

23

24

25

26

27

28
                                    1

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271



FILED
CLERK, U.S. DISTRICT COURT

December 11, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CR_____ DEPUTY

Trilochan Singh, through his attorneys, Garcia, Artigliere & Medby, on behalf of the United States of America and the State of California, for his Complaint against defendants, alleges based upon personal knowledge, relevant documents, and upon information and belief, as follows:

## I. __INTRODUCTION__

1. This is an action by qui tam Relator Trilochan Singh, ("Relator") on behalf of the United States and the State of California, to recover treble damages, civil penalties, attorneys' fees and costs on behalf of the United States of America and the State of California, arising from the false and/or fraudulent records, statements, and claims made, used and caused to be made, used or presented by each of the Defendants named herein below and/or their agents, employees and co-conspirators in violation of the Federal Civil False Claims Act, 31 U.S.C. §3729 *et seq.*, as amended ("the FCA" or "the Act") and the California False Claims Act, California *Government Code* §12650 *et seq.* Relator has direct and independent knowledge of the information on which the allegations contained in this Complaint are based. Pursuant to the federal and state statutes listed above, Relator has provided the statutorily required disclosure materials to the appropriate federal and state governmental authorities.

2. The United States Government's Medicare program is a crucial safety net for aged and disabled Americans. Intended as a social insurance program to provide health insurance coverage to people who are aged 65 and over, or who meet other special criteria, Medicare funds are stretched to their limits. California's Medi-Cal program seeks to support those Californians unable to afford health care and is intended to provide essential care for California's growing indigent population. Medi-Cal is also stretched to its limits.

3. Too many times, Medicare and Medi-Cal have been subject to fraud and abuse by unscrupulous healthcare providers who put their own profits above the public good. Funds that have been designated for essential healthcare services to a population

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

in need have been diverted away because of false and fraudulent billing schemes. Those fraudulent schemes have threatened to diminish the quality of care, unnecessarily burdened taxpayers as well as Medicare and Medi-Cal beneficiaries, and degraded the medical, nursing and allied health professions.

4.     This case is being brought to stop some of the rampant Medicare and Medi-Cal fraud in the skilled nursing industry, carried out over a period of years by skilled nursing management companies, its related licensees and their owners and operators. As the Defendants are well aware, federal and state laws state that a recipient of government funds shall not "knowingly and willfully offer, pay, solicit or receive remuneration in order to induce or reward referrals of items or services reimbursed under the Medicare or State health care programs." 42 U.S.C. §1320a-7b. California's Anti-Kickback statute prohibits the solicitation, receipt, offer, or payment of "any remuneration, including but not restricted to, any kickback, bribe or rebate, directly or indirectly, overtly over covertly, in cash or in valuable consideration of any kind" in connection with the referral of any person for the furnishing or arrangement of any service or merchandise, or the purchase, lease, order, arrangement, or recommendation of any goods, facility, service, or merchandise for which payment may be made by Medi-Cal. California *Welfare & Institutions Code* §14107.2.

5.     Despite their knowledge of this requirement, Defendants intentionally and fraudulently engaged in a pattern and practice of providing cash, gift cards or other remuneration to physicians and case managers for the referral and subsequent residency of patients (who were either Medicare and/or Medi-Cal beneficiaries) at Defendants' Skilled Nursing Facilities ("SNF"). Through these actions to induce referrals of Medicare and Medi-Cal patients by offering physicians and case managers of healthcare facilities payments and other gifts, funds often disguised as medical director or consultation fees and other monies, Defendants were submitting false and fraudulent charges to Medicare and Medi-Cal for reimbursement in that Defendants' submission

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1   of the claims for payment, Defendants were making false certifications of compliance

2   with healthcare laws and regulations and the government would not have paid the

3   claims had it known of the kick-back violations.

4        6.     This case is also being brought to stop some of the rampant Medicare and

5   Medi-Cal fraud in the skilled nursing industry through over-billing and the fraudulent

6   inflating of costs so as to fraudulently obtain increased Medi-Cal reimbursement rates.

7   The Defendants engaged in an intentional and fraudulent scheme of knowingly and

8   fraudulently inflating the costs of their skilled nursing facilities and reporting said

9   inflated costs to the State of California and the federal government in order to increase

10   their skilled nursing facilities' Medi-Cal reimbursement rates, which are determined

11   using a prospective, cost-based methodology. The Defendants' fraudulent scheme to

12   wrongfully inflate their reimbursement rates consisted of the following practices: (1)

13   the defendant skilled nursing facilities entered into contracts with a vendor also owned

14   by the Defendants for the provision of physical therapy and related services to facility

15   residents at rates which greatly exceeded the industry average; (2) the defendant skilled

16   nursing facilities entered into contracts with a vendor also owned by the Defendants for

17   the provision of medical supplies, nursing supplies, minor equipment, non-covered

18   equipment, rentals, and non-covered equipment to the facility residents at rates which

19   greatly exceeded the industry average; and (3) the defendant skilled nursing facilities

20   made exorbitant payments to related parties owned by the Defendants under the guise

21   of "management fees" or "management fees" for inadequate consideration in that these

22   related parties provided no such services for, or did not provide services commensurate

23   with, the fees paid. These practices artificially inflated the operating costs of the

24   defendant facilities, thereby allowing the Defendants to obtain illegally inflated Medi-

25   Cal reimbursement rates, essentially simultaneously lining the coffers of the Defendants

26   on both ends. Through these practices, the Defendants knowingly overcharge the

27   Medicaid program for services at inflated rates. By virtue of these fraudulent practices,

28

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729
ET SEO.] ET AL.

Defendants have unjustly enriched themselves at the expense of taxpayers in the estimated amount of millions of dollars.

7.     Last, this case is being brought to stop Defendants' fraud in illegally obtaining Department of Housing and Urban Development ("HUD")/Federal Housing Administration ("FHA") mortgage insurance on loans that covered one of their facilities under what is known as the Section 232 program. Because the defendants could not and did not qualify as borrowers under the Section 232 program, the defendants concealed from HUD and the FHA their true ownership interests in one of the facilities and entered into a side agreement relating to the transfer of ownership interests in the facility which Defendants concealed from HUD in violation of federal law. In so doing, Defendants fraudulently obtained a HUD Section 232 loan in violation of the False Claims Act.

8.     This suit calls Defendants to answer for defrauding taxpayers not only in the United States and California but also compromising the health and welfare of Medicare and Medi-Cal beneficiaries.

## II.     <u>JURISDICTION AND VENUE</u>

9.     Jurisdiction over this action is conferred on this Court by 31 U.S.C. §3732 and 28 U.S.C. §1331 because the civil action rises under the laws of the United States. Under 31 U.S.C. §3730(e), and under comparable provision of the state statute in California, there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint.

10.     Venue is proper in the Central District of California pursuant to 31 U.S.C. § 3732(a) because one or more Defendants can be found, reside in, or have transacted the business that is the subject matter of this lawsuit in the Central District of California.

## III.     <u>PARTIES</u>

11.     Defendant PAKSN, INC. is a corporation organized and existing pursuant

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.

to the laws of the State of California, with its corporate headquarters and principal place of business located at 540 W. Monte Vista Avenue, Vacaville, California 95688. PAKSN, INC. regularly and systematically injects itself into the commerce stream and does substantial, continuous and systematic business throughout the State of California. PAKSN, INC. is the owner, operator and/or manager of at least sixteen (16) skilled nursing facilities in the State of California. The practices described herein were performed by PAKSN, INC. in this district and throughout the State of California.

12. Defendant CCRC, LLC is a limited liability company organized and existing pursuant to the laws of the State of California, with its company headquarters and principal place of business located at 18757 Burbank Boulevard, Suite 102, Tarzana, California 91356. CCRC, LLC regularly and systematically injects itself into the commerce stream and does substantial, continuous and systematic business throughout the State of California, including in Los Angeles County. CCRC, LLC is the owner, operator and/or manager of at least sixteen (16) skilled nursing facilities in the State of California. The practices described herein were performed by CCRC, LLC in this district and throughout the State of California.

13. Defendant HCRC, INC. is a corporation organized and existing pursuant to the laws of the State of California, with its corporate headquarters and principal place of business located at 540 W. Monte Vista Avenue, Vacaville, California 95688. HCRC, INC. regularly and systematically injects itself into the commerce stream and does substantial, continuous and systematic business throughout the State of California. HCRC, INC. is the owner, operator and/or manager of at least sixteen (16) skilled nursing facilities in the State of California. The practices described herein were performed by HCRC, INC. in this district and throughout the State of California.

14. Defendant PREMA THEKKEK is an individual who is a citizen of and domiciled in the State of California PREMA THEKKEK is the owner, operator and/or manager of at least sixteen (16) skilled nursing facilities in the State of California. The

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEO.] ET AL.

1  practices described herein were performed by PREMA THEKKEK in this district and
2  throughout the State of California.

3      15.    Defendant ANTONY THEKKEK is an individual who is a citizen of and
4  domiciled in the State of California ANTONY THEKKEK is the owner, operator
5  and/or manager of at least sixteen (16) skilled nursing facilities in the State of
6  California. The practices described herein were performed by ANTONY THEKKEK in
7  this district and throughout the State of California (hereinafter Defendants PAKSN,
8  INC.; CCRC, LLC; HCRC, INC.; PREMA THEKKEK; and ANTONY THEKKEK
9  sometimes shall be referred to collectively as the "MANAGEMENT
10 DEFENDANTS").

11     16.    Defendant KAYAL, INC. was at all relevant times a corporation organized
12 and existing pursuant to the laws of the State of California and the licensee of a skilled
13 nursing facility operating under the fictitious business name Bay Point Healthcare
14 Center located at 442 Sunset Boulevard, Hayward, California 94541, and was subject to
15 the requirements of federal and state law governing the operation of skilled nursing
16 facilities operating in the State of California.

17     17.    Defendant MARINOAK, INC. was at all relevant times a corporation
18 organized and existing pursuant to the laws of the State of California and the licensee of
19 a skilled nursing facility operating under the fictitious business name Corinthian
20 Gardens Healthcare & Subacute Center located at 1611 Height Street, Bakersfield,
21 California 93305, and was subject to the requirements of federal and state law
22 governing the operation of skilled nursing facilities operating in the State of California.

23     18.    Defendant NADHAN, INC. was at all relevant times a corporation
24 organized and existing pursuant to the laws of the State of California and the licensee of
25 a skilled nursing facility operating under the fictitious business name Creekside
26 Rehabilitation & Behavioral Health located at 850 Sonoma Avenue, Santa Rosa,
27 California 95404, and was subject to the requirements of federal and state law

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

7

THE GARCIA LAW FIRM

ONE WORLD TRADE CENTER, SUITE 1950

LONG BEACH, CALIFORNIA 90831

TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1    governing the operation of skilled nursing facilities operating in the State of California.

2        19.    Defendant DIYAVILLA, INC. was at all relevant times a corporation

3    organized and existing pursuant to the laws of the State of California and the licensee of

4    a skilled nursing facility operating under the fictitious business name Diyamonte Acute

5    Care Center located at 33 Mateo Avenue, Millbrae, California 94030, and was subject

6    to the requirements of federal and state law governing the operation of skilled nursing

7    facilities operating in the State of California.

8        20.    Defendant NADHI, INC. was at all relevant times a corporation organized

9    and existing pursuant to the laws of the State of California and the licensee of a skilled

10   nursing facility operating under the fictitious business name Gateway Care &

11   Rehabilitation Center located at 266660 Patrick Avenue, Hayward, California 94541,

12   and was subject to the requirements of federal and state law governing the operation of

13   skilled nursing facilities operating in the State of California.

14       21.    Defendant OAKRHEEM, INC. was at all relevant times a corporation

15   organized and existing pursuant to the laws of the State of California and the licensee of

16   a skilled nursing facility operating under the fictitious business name Hayward

17   Convalescent Hospital located at 1832 B Street, Hayward, California 94541, and was

18   subject to the requirements of federal and state law governing the operation of skilled

19   nursing facilities operating in the State of California.

20       22.    Defendant BAYVIEW CARE, INC. was at all relevant times a corporation

21   organized and existing pursuant to the laws of the State of California and the licensee of

22   a skilled nursing facility operating under the fictitious business name Hilltop Care and

23   Rehabilitation Center located at 3269 D Street, Hayward, California 94541, and was

24   subject to the requirements of federal and state law governing the operation of skilled

25   nursing facilities operating in the State of California.

26       23.    Defendant SAGAR, INC. was at all relevant times a corporation organized

27   and existing pursuant to the laws of the State of California and the licensee of a skilled

28

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEO.] ET AL.

nursing facility operating under the fictitious business name La Mariposa Care & Rehabilitation Center located at 1244 Travis Boulevard, Fairfield, California 94533, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

24.   Defendant GRACEVILLA, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Genesis Healthcare Center located at 1201 Walnut Avenue, Long Beach, California 90813, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

25.   Defendant KARMA, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Manteca Care and Rehabilitation Center located at 410 Eastwood Avenue, Manteca, California 95336, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

26.   Defendant THEKKEK HEALTH SERVICES, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Martinez Convalescent Hospital located at 4110 Alhambra Way, Martinez, California 94553, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

27.   Defendant NADHAN, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Orchard Post Acute Care Hospital located at 101 South Orchard Avenue, Vacaville, California

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

9

95688, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

28.     Defendant AAKASH, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Park Central Care & Rehabilitation Center located at 2100 Parkside Drive, Fremont, California 94536, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

29.     Defendant WESTVILLA, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name West Valley Healthcare Center located at 7057 Shoup Avenue, West Hills, California 91307, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California.

30.     Defendant NASAKY, INC. was at all relevant times a corporation organized and existing pursuant to the laws of the State of California and the licensee of a skilled nursing facility operating under the fictitious business name Yuba Skilled Nursing Center located at 521 Lorel Way, Yuba City, California 95991, and was subject to the requirements of federal and state law governing the operation of skilled nursing facilities operating in the State of California (hereinafter the defendants set forth in paragraphs 16 through 30 sometimes hereinafter shall be referred to collectively as the "FACILITIES" or "LICENSEES, " and the MANAGEMENT DEFENDANTS and LICENSEES sometimes hereinafter shall be referred to collectively as the "DEFENDANTS").

31.     Defendant PREMIER REHAB SERVICES, INC. was at all relevant times a corporation existing pursuant to the laws of the State of California and was in the business of providing physical therapy, occupational therapy, and speech language

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA  90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

10

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

pathology services to the FACILITIES pursuant to contracts mandated by the MANAGEMENT DEFENDANTS (the "Contracts").

32.     Defendant KAZAK ENTERPRISES, INC. was at all relevant times a corporation existing pursuant to the laws of the State of California and doing business under the fictitious business name Diablo Medical Supplies and was in the business of providing medical supplies, nursing supplies, minor equipment, non-covered equipment, rentals, and non-covered equipment to the FACILITIES pursuant to contracts mandated by the MANAGEMENT DEFENDANTS (the "Contracts").

33.     Relator is ignorant of the names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue such Defendants by fictitious names.  Relator will amend this complaint to allege the true names and capacities of the fictitiously named Defendants once ascertained. Relator is informed and believes that Defendant Does 1 through 100, inclusive, are in some manner responsible for the actions alleged herein.

34.     Relator was employed by DEFENDANTS from approximately 2007 to November 2014. Relator left his employment with DEFENDANTS at least in part because of the unlawful practices undertaken by DEFENDANTS described herein.

## IV.     THE MEDICARE/MEDI-CAL REIMBURSEMENT SYSTEM

35.     The FCA provides that any person who: (a) knowingly presents or causes to be presented to the Government or officers/employees of the Government a false or fraudulent claim for payment or approval; (b) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; or (4) knowingly makes, uses or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, is liable for a civil penalty of not less than $5,000 and not more than $11,000 for each such claim presented or paid and

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEO.] ET AL.

three times the amount of damages sustained by the Government. California's False Claims Act has a comparable provision.

36.   A skilled nursing facility ("SNF") is eligible to receive Medicare and Medi-Cal funds provided the institution is primarily engaged in providing nursing care and health-related services (above the level of room and board) to residents who, because of their mental or physical condition, require a level of care which can be furnished only in an institutional facility. Institutions primarily for the treatment of mental disease are specifically excluded. 42 U.S.C.A. §1396r(a).

37.   Medicare is a federally-administered health insurance program primarily benefiting the elderly – i.e., individuals aged 65 and older who have worked in the Social Security or Railroad Systems. Approximately 16% of Medicare beneficiaries, however, are less than 65 years old but either are afflicted with end-stage renal disease ("ESRD") or are permanently disabled workers and their dependents eligible for old age, survivors, and disability insurance ("OASDI") benefits. Medicare was created in 1965 by Title XVIII ("Health Insurance for the Aged") of the Social Security Act (Public Law 89-97).  *See* 42 U.S.C. §1395 *et seq*. Medicare has two parts that are relevant to the instant lawsuit. Medicare Part A ("Part A"), the Hospital Insurance ("HI") program, helps pay for medically necessary inpatient hospital, home health, skilled nursing facility ("SNF"), and hospice care for eligible Medicare beneficiaries. *See* 42 U.S.C. §§1395c-1395i-4. The HI program is financed primarily by payroll taxes paid by workers and employers. Medicare Part B ("Part B"), the Supplementary Medical Insurance ("SMI") program, helps pay for the cost of most physician services, diagnostic tests, durable medical equipment ("DME"), and ambulance services as well as outpatient hospital care, physical therapy, speech therapy, and speech pathology services, that is medically necessary for eligible Medicare beneficiaries who have voluntarily enrolled. *See* 42 U.S.C. §§1395j-1395w-4. The SMI program is financed primarily by transfers from the general fund of the U.S. Treasury and by monthly

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

premiums paid by beneficiaries. The Centers for Medicare and Medicaid Services ("CMS"), an agency of the U.S. Department of Health and Human Services ("DHHS"), is directly responsible for the administration and supervision of the Medicare program.

38.     In addition to other benefits, Medicare Part A covers and pays for medically necessary short-term skilled nursing care, rehabilitation services and other goods and services provided by a skilled nursing facility ("SNF") for Medicare beneficiaries who have been discharged from an inpatient hospital stay of at least three consecutive calendar days.  SNFs are healthcare institutions that are primarily engaged in either (a) providing skilled nursing care and related services for residents who require medical or nursing care or (b) the rehabilitation of injured, disabled, or sick persons. For a Medicare beneficiary to be eligible for SNF care, the beneficiary's physician must certify that daily skilled care (such as intravenous injections or physical therapy) is needed. *See* 42 U.S.C. 1395f (a)(2)(B).  Medicare Part A skilled nursing services are used much more frequently by beneficiaries at ages 80 and above than by younger beneficiaries who are primarily ages 65 through 79. These older patients tend to be frail and often suffer from multiple systemic diseases and disorders. Medicare Part A covers and pays a pre-determined rate for inpatient hospital care services for eligible Medicare beneficiaries up to a maximum of 90 days, subject to certain conditions and co-payment obligations. After a Medicare beneficiary is transferred to a SNF, Medicare Part A will pay the SNF a pre-determined daily rate for each day of care up to 100 days, subject to co-payment obligations after the first 20 days which are billed separately to and paid by the resident, private insurance, or Medicaid.  Consequently, under Part A, a Medicare beneficiary conceivably could receive up to 190 days of covered services during a single "spell of illness." A "spell of illness" begins when the beneficiary is admitted to either an inpatient hospital or a SNF and ends when the beneficiary has been in neither institution for 60 consecutive days.

39.     Many SNF residents, however, are admitted directly into the facility

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.

1   without requiring prior acute-care hospitalization. These residents, who are directly

2   admitted to the intermediate (unskilled) care nursing areas, are frequently Medicaid

3   beneficiaries. When medical complications necessitating inpatient acute-care

4   hospitalization occur, Medicare Part A pays for the hospitalization. Once stabilized, the

5   patient is transferred back to the SNF and, based on the doctor's certification that

6   skilled nursing care is needed, is admitted to the Medicare-certified skilled nursing area.

7       40.   Medicare Part B, which generally commences following the 100 days of

8   Medicare Part A coverage, reimburses nursing facilities for other physician-ordered

9   services and devices on a fee schedule. These include, for example, physical therapy,

10   occupational therapy, speech therapy, devices such as urinary collection systems

11   (catheters), feeding tubes, wound kits, laboratory tests, drugs, and the like so long as

12   they are certified and ordered by a physician as medically necessary. See reference to

13   42 U.S.C. §1395y(a)(1)(A) in paragraph 4 of this complaint.

14       41.   At the end of each month, SNFs bill the Medicare program by submitting

15   an invoice known as Universal Bill 92 ("UB-92") to the appropriate fiscal intermediary,

16   which is a CMS contractor.  A UB-92 is submitted for each resident and contains the

17   numbers of billing days, the per diem RUG rate, the total billed amount, and other

18   pertinent data.

19       42.   Medicaid is a federally aided, state-administered program that provides

20   medical assistance to certain low-income people who are either indigent or disabled,

21   including, *inter alia*, low-income residents of nursing facilities. Medicaid was created

22   in 1965 by Title XIX ("Grants to States for Medical Assistance Programs") of the

23   Social Security Act (Public Law 89-97). *See* Title 42 of the U.S. Code of Federal

24   Regulations ("CFR"), Parts 430-456. In the State of California, the Medicaid program

25   is known as Medi-Cal. Funding for Medicaid is shared between the federal government

26   and those states that participate in the program with the federal government paying

27   approximately one half of the Medicaid bill and the State paying the other half. Primary

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEO.] ET AL.

regulatory control of Medicaid programs is, however, left to the states. Consequently, the procedures for obtaining reimbursements and the amount of reimbursement vary between the states.

## V.   ILLEGAL KICKBACK SCHEME

43.    The federal Anti-kickback Statute, 42 U.S.C. §1320a-7b(b) prohibits individuals or entities from knowingly and willfully offering, paying, soliciting or receiving remuneration to induce referrals of items or services covered by Medicare, Medicaid or any other federally funded program. The main purpose of the federal anti-kickback law is to protect patients and the federal health care programs from increased costs and abusive practices resulting from provider decisions that are based on self-interest rather than cost, quality of care or necessity of services. The law seeks to prevent overutilization, limit cost, preserve freedom of choice and preserve competition.

44.    The Medicare Anti-Kickback Statute provides penalties for individuals or entities that "knowingly and willfully offer, pay, solicit or receive remuneration in order to induce or reward referrals of items or services reimbursed under the Medicare or State health care programs." The Patient Protection and Affordable Care Act ("PPACA") amended the Anti-kickback Statute to provide that Medicare or Medicaid claims that include items or services that result in kickback violations are false claims under the False Claims Act.

45.    The types of remuneration covered by this prohibition include the transfer of anything of value, such as kickbacks, bribes, and rebates, made directly or indirectly, overtly or covertly, in cash or in kind. Prohibited conduct includes not only remuneration intended to induce or reward referrals of patients, but also remuneration intended to induce or reward the purchasing, leasing, ordering or arranging for any good, facility, service or item paid for by Medicare or State health care programs.

46.    California's Anti-Kickback Statute is codified at California *Welfare &*

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.

*Institutions Code* §14107.2. This statute prohibits the solicitation, receipt, offer, or payment of "any remuneration, including but not restricted to, any kickback, bribe or rebate, directly or indirectly, overtly over covertly, in cash or in valuable consideration of any kind . . . [in return for the referral, or promised referral, of any person for the furnishing . . . of any service" covered by the Medi-Cal program. California *Welfare & Institutions Code* §14107.2.

47.     California *Business & Professions Code* §650 prohibits the offer, delivery, receipt or acceptance by any licensed practitioner of any rebate, refund, commission, preference, patronage, patronage dividend, discount, or other consideration as compensation or inducement for referring patients, clients, or customers to any person.

48.     Section 3729(a)(3) is a civil conspiracy provision that provides, in pertinent part:  "Any person who – conspires to defraud the government by getting a false or fraudulent claim allowed or paid . . . is liable to the United States Government . . . ." 31 U.S.C. §3729(a)(3). In the context of illegal kickbacks, the subject conspiracy was by and through the SNF owners and administrators to pay remuneration to hospitals for the purpose of inducing those hospitals to discharge patients to the subject SNFs for residency and ancillary treatments that were in whole or in part reimbursable under the Medicare Program.

49.     DEFENDANTS, pursuant to their obligations under federal and state law, entered into one or more contracts or agreements with the United States Government and the State of California to provide health care to their residents covered by Medicare and/or Medi-Cal at each of DEFENDANTS' FACILITIES. Under the terms of the contracts, DEFENDANTS were responsible for keeping and submitting to the United States Government detailed, accurate records and resident assessments, including but not limited to, MDS, UB-92, physician certifications and re-certifications, physician orders, and any back-up medical records supporting the amount of services provided, when they were provided, and who provided them. California state health authorities

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA  90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

16

1   also impose similar requirements.

2        50.    In order to receive payment from the United States Government for

3   providing health care services and supplies, pursuant to the Federal Medicare and

4   Medicaid statutes and regulations, DEFENDANTS prepared claims for payment or

5   approval, including MDS; UB-92; Client Assessment, Review and Evaluation (CARE)

6   Form 3652; cost reports, and billing records, invoices, and medical records based upon

7   the claims described herein and presented or caused them to be presented to an officer

8   or employee of the United Sates Government. In order to receive payment from the

9   California State Government for providing health care services and supplies covered by

10  Medi-Cal, DEFENDANTS prepared claims for payment or approval, billing records,

11  invoices and medical records based upon the claims described herein and presented or

12  caused them to be presented to an officer or employee of the State of California. In

13  making claims for payment to the federal Medicare program and to the federal and

14  State Medicaid programs, and as a condition for receiving payment,

15  DEFENDANTS' nursing facilities represented, impliedly or directly, that they were

16  in compliance with applicable laws and regulations. As described in more detail below,

17  DEFENDANTS knowingly and willfully defrauded the federal and California

18  Governments by obtaining substantial payments for false or fraudulent claims.

19       51.    DEFENDANTS offered and paid remunerations to another person in

20  violation of the Anti-Kickback Act as the purpose of the offer and payment was to

21  induce a Medicare or Medicaid patient referral. DEFENDANTS' actions were

22  fraudulent because by submission of the claims, DEFENDANTS implicitly stated that

23  they had complied with all statutes, rules and regulations governing the Medicare Act,

24  including state and federal anti-kickback statutes. Participation in the state and federal

25  programs involves an implied certification that the participant will abide by and adhere

26  to all statutes, rules and regulations governing that program. By submitting a claim for

27  payment without complying with such statutes, rules and regulations, DEFENDANTS

28

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEO.] ET AL.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1   have submitted a fraudulent claim in violation of the False Claims Act.

2       52.    DEFENDANTS, by and through their officers, agents, or employees,

3   caused claims to be made, used, presented, or delivered to the United States

4   Government, either directly or indirectly by means of summaries of them. Such claims

5   were false or fraudulent because they indicated, either explicitly or implicitly, that the

6   Facility and its personnel had complied with requisites statutes, rules and regulations,

7   when in fact they were not.

8       53.    DEFENDANTS are presently engaged in operating skilled nursing

9   facilities providing long-term health care and rehabilitation to residents. A significant

10  number of these residents are Medicare, Medicaid and/or Medi-Cal beneficiaries, and a

11  significant portion of DEFENDANTS' revenues are derived from payments made by

12  Medicare, Medicaid and Medi-Cal programs for services rendered to these residents.

13  For the time period 2012 to 2014, Medicare accounted for anywhere from 33 to 98

14  percent of the FACILITIES' revenue for ancillary services and Medi-Cal accounted for

15  59 to 93 percent of the FACILITIES' revenue for routine services.

16      54.    During the timeframe in which Relator was employed by DEFENDANTS,

17  he held the position of Vice President of Operations/Chief Operating Officer. In this

18  position, Relator was involved in the processing of payments to third parties including

19  physicians and case managers by the FACILITIES and was involved in the admissions

20  and marketing of the FACILITIES.

21      55.    By reason of his position with DEFENDANTS and involvement with their

22  upper levels of management, Relator acquired direct and independent knowledge of the

23  systematic and pervasive process by which DEFENDANTS would provide

24  remuneration to physicians and case managers in exchange for the referral of patients to

25  the FACILITIES, resulting in claims to Medicare, Medicaid and Medi-Cal. Among the

26  false claims, DEFENDANTS knowingly and willfully submitted false and/or fraudulent

27  claims to Medicare, Medicaid and Medi-Cal related to patients that were procured by

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

18

means of a referral that was induced by an illegal kickback. Such fraudulent practices were designed to achieve the highest capacity and therefore reimbursement for the nursing home, without regard for the patient's actual need. These fraudulent practices are described in more detail below.

56.    DEFENDANTS knowingly and willfully submitted claims to Medicare and Medi-Cal for services rendered to patients that were the result of referrals for which the DEFENDANTS received and paid kickbacks. Relator observed a pervasive pattern of practice whereby DEFENDANTS: (a) provided monthly compensation to physicians in exchange for the referral of Medicare patients to the FACILITIES; (b) provided remuneration on a per-referral basis to physicians in exchange for the referral of Medicare patients to the FACILITIES; (c) provided gifts to physicians in exchange for the referral of Medicare patients to the FACILITIES; and (d) provided cash and gifts to case managers in exchange for the referral of Medicare patients to the FACILITIES.

57.    Relator observed a persistent pattern whereby DEFENDANTS routinely provided such remuneration to physicians which were disguised as "medical director fees" and "physician consultant fees" but in reality were all in exchange for referral of patients whose healthcare costs were reimbursed in whole or in part with government healthcare funding.

58.    By reason of his position with DEFENDANTS and involvement with their upper levels of management, Relator acquired direct and independent knowledge of the following:

(a) DEFENDANTS paid Rajesh Suri, M.D. approximately $300.00 per referral during the time period from 2012 to the present to refer Medicare patients to NADHI, INC. dba Gateway Care & Rehabilitation Center and AAKASH, INC. dba Park Central Care & Rehabilitation Center;

(b) DEFENDANTS paid Harpreet Dhillon $250 per referral over a period of over four years for referring Medicare patients to AAKASH, INC. dba Park Central Care &

19

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  Rehabilitation Center;

2      (c) DEFENDANTS paid Norman Cheung, M.D. approximately $1,500.00 per

3  month to refer Medicare patients to Defendant KAYAL, INC. dba Bay Point Health

4  Care Center and NADHI, INC. dba Gateway Care & Rehabilitation Center;

5      (d) DEFENDANTS paid Romesh Japra, M.D. approximately $2,000.00 per

6  month from approximately 2010 to 2013 to refer Medicare patients to Defendant

7  AAKASH, INC. dba Park Central Care & Rehabilitation Center;

8      (e) DEFENDANTS paid Nirmala Kannan, M.D. approximately $3,000.00 per

9  month from approximately 2011 to 2013 to refer Medicare patients to NADHI, INC.

10 dba Gateway Care & Rehabilitation Center;

11     (f) DEFENDANTS paid Rajesh Rampal, M.D. with various gifts over the time

12 period of 2012 to the present to refer Medicare patients to NADHI, INC. dba Gateway

13 Care & Rehabilitation Center and BAYVIEW CARE, INC. dba Hilltop Care and

14 Rehabilitation Center;

15     (g) DEFENDANTS paid Rabin Khetrapal, M.D. approximately $2,500.00 per

16 month over the time period of 2011 to 2014 to refer Medicare patients to Defendant

17 AAKASH, INC. dba Park Central Care & Rehabilitation Center and NADHI, INC. dba

18 Gateway Care & Rehabilitation Center;

19     (h) DEFENDANTS paid Ramiro Garcia, M.D. approximately $2,500.00 per

20 month over an approximate four-year time period to refer Medicare patients to NADHI,

21 INC. dba Gateway Care & Rehabilitation Center and KAYAL, INC. dba Bay Point

22 Health Care Center;

23     (i) DEFENDANTS paid Steven Verbinsky, M.D. approximately $2,500.00 per

24 month over an approximate four-year time period which is still ongoing to refer

25 Medicare patients to NADHI, INC. dba Gateway Care & Rehabilitation Center;

26     (j) DEFENDANTS paid Bhupinder Bhandari, M.D. approximately $1,000.00 per

27 month to refer Medicare patients to multiple of the FACILITIES. In addition,

28

20

1   DEFENDANTS paid Bhupinder Bhandari, M.D. a lump sum of $10,000 to refer

2   patients and as a pretext the DEFENDANTS ostensibly employed him as a Medical

3   Director of THEKKEK HEALTH SERVICES, INC. dba Martinez Convalescent

4   Hospital even though he was not performing the functions of Medical Director of that

5   facility and in fact never even visited that facility;

6       (k) DEFENDANTS paid Gautam Pareekh, M.D. approximately $2,000.00 per

7   month during the time period of 2012 to the present to refer Medicare patients to

8   KAYAL, INC. dba Bay Point Health Care Center;

9       (l) DEFENDANTS paid Htay Win, M.D. approximately $2,000.00 per month

10  during 2012 to refer Medicare patients to AAKASH, INC. dba Park Central Care &

11  Rehabilitation Center;

12      (m) DEFENDANTS paid Ricardo Molina, M.D. approximately $2,000.00 per

13  month over a time period of two years to refer Medicare patients to NADHI, INC. dba

14  Gateway Care & Rehabilitation Center;

15      59.    Relator has personal and independent knowledge that none of the

16  physicians set forth in the immediately preceding paragraph ever visited the

17  FACILITIES and none provided services to the DEFENDANTS other than to refer

18  Medicare patients to the FACILITIES.

19      60.    In addition to the illegal kickbacks alleged hereinabove, for the month of

20  August 2010, Defendant NADHAN, INC. dba Creekside Rehabilitation & Behavioral

21  Health paid "medical director fees" and "medical consultant fees" to seven different

22  physicians – Susan Ahart, M.D., Nancy Burkey, M.D., Eran Matalon, M.D., Jeremy

23  Juriansz, M.D., Tim Gieseke, M.D., Scott Peterson, M.D., and Kevin Howe, M.D.

24  Relator has personal and independent knowledge that these physicians provided no

25  services to the defendant facility other than to refer Medicare patients to the defendant

26  facility.

27      61.    For the month of November 2013, Defendant NADHAN, INC. dba

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

21

Creekside Rehabilitation & Behavioral Health paid "medical director fees" to four different physicians – Tim Gieseke, M.D., Scott Peterson, M.D., Kevin Howe, M.D., and John Hurwitz, M.D. – and in the same month also paid a "physician consultant fee" to Phillip Grob, M.D. Relator has personal and independent knowledge that these physicians provided no services to the defendant facility other than to refer Medicare patients to the defendant facility.

62.     For the month of August 2010, Defendant NADHI, INC. dba Gateway Care & Rehabilitation Center paid "medical director fees" and "medical consultant fees" to three different physicians – Rabin Khetrapal, M.D., Nirmala Kannan, M.D., and an unnamed infectious disease consultant. Relator has personal and independent knowledge that these physicians provided no services to the defendant facility other than to refer Medicare patients to the defendant facility.

63.     For the time period of May 1, 2014, through May 31, 2014, Defendant NADHI, INC. dba Gateway Care & Rehabilitation Center paid $9,900.00 in "medical director fees" and $20,273.00 in "consultant fees," which were both in reality payments to physicians for the referral of Medicare patients. Relator has personal and independent knowledge that these payments were not for the provision of any services to the defendant facility other than to refer Medicare patients to the defendant facility.

64.     For the time period of January 1, 2014, through July 31, 2014, Defendant KAYAL, INC. dba Bay Point Health Care Center paid a total of over $40,000.00 in "medical director fees" and over $81,000.00 in "consultant fees" which were both in reality payments to physicians for the referral of Medicare patients. Relator has personal and independent knowledge that these payments were not for the provision of any services to the defendant facility other than to refer Medicare patients to the defendant facility.

65.     Similarly, for the time period of January 1, 2014, through July 31, 2014, Defendant AAKASH, INC. dba Park Central Care & Rehabilitation Center paid a total

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

22

1  of over $41,000.00 in "medical director fees" and over $109,000.00 in "consultant

2  fees," which were both in reality payments to physicians for the referral of Medicare

3  patients. Relator has personal and independent knowledge that these payments were not

4  for the provision of any services to the defendant facility other than to refer Medicare

5  patients to the defendant facility.

6  66.    For the month of August 2010, Defendant AAKASH, INC. dba Park

7  Central Care & Rehabilitation Center paid "medical director fees" and "medical

8  consultant fees" to three different physicians – Rabin Khetrapal, M.D., Raad Alshaikh,

9  M.D., and Khalid A. Baig, M.D. Relator has personal and independent knowledge that

10  these physicians provided no services to the defendant facility other than to refer

11  Medicare patients to the defendant facility.

12  67.    In addition, relator has personal and independent knowledge that the

13  DEFENDANTS routinely provided the aforementioned physicians and case managers

14  with expensive gifts, alcohol, and tickets to events for referring Medicare patients to the

15  FACILITIES. In addition, DEFENDANTS invited the aforementioned physicians and

16  case managers to DEFENDANTS' Christmas party where the aforementioned

17  physicians and case managers were provided with presents.

18  68.    Other companies that are not engaging in such fraudulent practices are

19  adversely affected.

20  69.    These ongoing and knowing acts were a direct product of DEFENDANTS'

21  motive to increase Medicare and Medi-Cal reimbursement revenues by submitting false

22  and/or fraudulent claims to Medicare, Medicaid and Medi-Cal in relation to patients

23  that were procured by means of a referral that was induced by an illegal kickback.

24  Through the submission of such claims for reimbursement, DEFENDANTS stated that

25  they had complied with all statutes, rules and regulations governing the Medicare Act,

26  including state and federal anti-kickback statutes. Participation in the state and federal

27  programs involves an implied certification that the participant will abide by and adhere

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

23

1  to all statutes, rules and regulations governing that program. By submitting a claim for

2  payment without complying with such statutes, rules and regulations, DEFENDANTS

3  have submitted a fraudulent claim in violation of the False Claims Act. These acts were

4  ongoing and widespread and stemmed from the DEFENDANTS' constant and intense

5  pursuit to maximize its revenues.

6  **VI.   SCHEME TO INCREASE MEDI-CAL REIMBURSEMENT RATES**

7  **THROUGH EXCESSIVE CHARGES FOR PHYSICAL THERAPY AND**

8  **RELATED SERVICES AND FOR MEDICAL SUPPLIES**

9      70.    **Overview of Scheme.** The DEFENDANTS engaged in an intentional and

10  fraudulent scheme of knowingly and fraudulently inflating the costs of the

11  FACILITIES and reporting said inflated costs to the State of California in order to

12  increase the FACILITIES' Medi-Cal reimbursement rates, which are determined using

13  a prospective, cost-based methodology. The DEFENDANTS' fraudulent scheme

14  consisted of the following practices: (1) as mandated by the MANAGEMENT

15  DEFENDANTS, the FACILITIES entered into contracts with a vendor also owned by

16  the MANAGEMENT DEFENDANTS for the provision of physical therapy and related

17  services to facility residents at rates which greatly exceeded the industry average; (2) as

18  mandated by the MANAGEMENT DEFENDANTS, the FACILITIES entered into

19  contracts with a vendor also owned by the Defendants for the provision of medical

20  supplies, nursing supplies, minor equipment, non-covered equipment, rentals, and non-

21  covered equipment to the facility residents at rates which greatly exceeded the industry

22  average; and (3) the FACILITIES made exorbitant payments to related parties owned

23  by the MANAGEMENT DEFENDANTS under the guise of "management fees" or

24  "management fees" for inadequate consideration in that these related parties provided

25  no such services for, or did not provide services commensurate with, the fees paid.

26  These practices artificially inflated the operating costs of the FACILITIES while

27  simultaneously and doubly lining the coffers of the DEFENDANTS.

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

71. **Background on Medi-Cal Rate-Setting.** Assembly Bill (AB) 1629, signed into law in September 2004, included Long-Term Care Reimbursement Act. This legislation changed the state's Medi-Cal reimbursement from a prospective, flat rate to a prospective, cost-based methodology and was designed in part to increase nursing home nurse staffing. This ushered in the beginning of a new Medi-Cal reimbursement methodology for long-term nursing home care that was prospective, facility-specific, and cost-based. The previous methodology was prospective, peer-grouped (median facility determined the rate for that group), and employed flat-rates.

72. The purpose of the Long-Term Care Reimbursement Act was to implement a facility-specific rate setting system that "reflects the costs and staffing levels associated with quality of care for residents in nursing facilities" (California Department of Health Care Services, 2004). More specifically, the legislative intent was meant to effectively ensure individual access to appropriate long-term care services, promote quality care, advance wages and benefits for nursing home workers, support provider compliance with all applicable state and federal requirements, and encourage administrative efficiency (A.B. 1629, 2004). California's new reimbursement methodology is a unique prospective, facility-specific, and cost-based approach to Medi-Cal reimbursement for nursing homes. However, it is not case-mix adjusted meaning that patient acuity is not taken into account (California Health Policy and Data Advisory Committee, 2005).

73. The reimbursement rate itself was based upon five cost categories. The five cost categories were: (a) labor costs; (b) indirect care, nonlabor costs; (c) administrative costs; (d) capital costs; and (e) direct pass-through costs. A facility's applicable costs for each of the first three categories were divided by the total number of skilled nursing days to create that portion of the per diem (Department of Health Care Services, 2009). The Medi-Cal facility-specific, cost-based per diem reimbursement rate equaled the sum of these five categories.

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.

74. Each year, the Department of Health Care Services (DHCS) conducts what is known as a rate study for the purpose of setting the fee-for-service (FFS) long-term care per-diem rates for the upcoming rate-year. Historic cost data reported by each facility serves as the basis for setting the rates for all provider types. Rates are established by the provider types identified above. The reported cost data is audited by DHCS's Audits and Investigations. Because cost data is two or three years old, costs are trended forward using inflation factors in order to project the costs to the rate year. An important factor to consider in evaluating the potential impact on access of the proposed rate reductions is how reimbursement to freestanding facilities (both skilled nursing and adult subacute) will function over the two year period of the 2011-12 and 2012-13 rate years. Although these facilities are subject to the proposed 10% reduction in 2011-12, the reduction will be reversed in 2012-13 and facilities will also be reimbursed through a lump sum supplemental payment an amount equal to their 2011-12 reduction. Furthermore, for the 2012-13 rate year the facilities will receive a 2.4% increase over their 2010-11 rates. Given the two-year reimbursement structure, the freestanding facilities (both skilled nursing and adult subacute) have indicated support for the total two-year structure.

75. As early as March 2014, Relator became aware that each of the FACILITIES entered into contracts with PREMIER REHAB SERVICES, INC. to provide physical therapy, occupational therapy, and speech language pathology services to the FACILITIES (the "Contracts"). That the DEFENDANTS failed to disclose to the State of California or the federal government that PREMIER REHAB SERVICES, INC. is a "related party" to the DEFENDANTS in that it is owned and operated by defendant PREMA THEKKEK and maintains the same corporate headquarters as DEFENDANTS. The FACILITIES were required to contract with PREMIER REHAB SERVICES, INC. and no other providers and were not given the option of negotiating the rates with PREMIER REHAB SERVICES, INC.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

76.     The rates that the FACILITIES agreed to pay PREMIER REHAB SERVICES, INC. far exceeded the industry average. Based on Relator's extensive experience in the industry, Relator has personal knowledge that the average rate charged to skilled nursing facility for physical therapy in geographic areas in which the FACILITIES operate is $1.10-$1.20 per minute. The rates charged by DEFENDANTS greatly exceeded these averages. For example, under the Contracts, for the time period beginning May 1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $200 per day for categories RUX and RUL (rehabilitation plus extensive services) of Medicare's Health Insurance Prospective Payment System (HIPPS), which amounts to $1.94 per minute, far greater than the industry standard.

77.     Pursuant to the terms of the Contracts, for the time period beginning May 1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $175 per day for categories RVX and RVL (rehabilitation plus extensive services) of HIPPS, which amounts to $1.70 per minute, far above the industry average.

78.     Pursuant to the terms of the Contracts, for the time period beginning May 1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $150 per day for categories RHX and RHL (rehabilitation plus extensive services) of HIPPS, which amounts to $1.46 per minute, far above the industry average.

79.     Pursuant to the terms of the Contracts, for the time period beginning May 1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $200 per day for categories RUA, RUB, and RUC (rehabilitation) of HIPPS, which amounts to $1.94 per minute, far above the industry average.

80.     Pursuant to the terms of the Contracts, for the time period beginning May 1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $175 per day for categories RVA, RVB, and RVC (rehabilitation) of HIPPS, which amounts to $1.70 per minute, far above the industry average.

81.     Pursuant to the terms of the Contracts, for the time period beginning May

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.

1, 2014, DEFENDANTS agreed to pay PREMIER REHAB SERVICES, INC. $150 per day for categories RHA, RHB, and RHC (rehabilitation) of HIPPS, which amounts to $1.46 per minute, far above the industry average.

82.     For the time period of January 1, 2012, through December 31, 2012, Bay Point Healthcare Center reported $370,322.00 in physical therapy expenses, or 4.1% of the total health care expense, or $10.95 per patient day. For the time period of January 1, 2013, through December 31, 2013, Bay Point Healthcare Center reported $337,430.00 in physical therapy expenses, or 3.7% of its total healthcare expense, or $10.64 per patient day.

83.     In paying rates to PREMIER REHAB SERVICES, INC. which exceed the industry average, the DEFENDANTS have intentionally driven up their costs to receive increased Medi-Cal rates.

84.     Indeed, Defendant KAYAL, INC. dba Bay Point Healthcare Center had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014 through July 31, 2015 of $210.49 at a time when the average reimbursement rate for nursing homes with substantially the same staffing ratios was $175.72.

85.     Defendant MARINOAK, INC. dba Corinthian Gardens Healthcare & Subacute Center had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014 through July 31, 2015 of $173.61 at a time when the average reimbursement rate for nursing homes with substantially the same or higher staffing ratios was $166.25.

86.     Defendant NADHAN, INC. dba Creekside Rehabilitation & Behavioral Health had a Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014 through July 31, 2015 of $247.85 at a time when the average reimbursement rate for nursing homes with substantially the same staffing ratios was $205.11.

87.     Defendant NADHI, INC. dba Gateway Care & Rehabilitation Center had a

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.

1    Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014

2    through July 31, 2015 of $210.39 at a time when the average reimbursement rate for

3    nursing homes with substantially the same staffing ratios was $175.72.

4        88.    Defendant OAKRHEEM, INC. dba Hayward Convalescent Hospital had a

5    Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014

6    through July 31, 2015 of $180.86 at a time when the average reimbursement rate for

7    nursing homes with substantially the same staffing ratios was $175.72.

8        89.    Defendant BAYVIEW CARE, INC. dba Hilltop Care and Rehabilitation

9    Center had a Medi-Cal reimbursement rate for regular services for the time period of

10   August 1, 2014 through July 31, 2015 of $187.01 at a time when the average

11   reimbursement rate for nursing homes with substantially the same staffing ratios was

12   $175.72.

13       90.    Defendant SAGAR, INC. dba La Mariposa Care & Rehabilitation Center

14   had a Medi-Cal reimbursement rate for regular services for the time period of August 1,

15   2014 through July 31, 2015 of $215.03 at a time when the average reimbursement rate

16   for nursing homes with substantially the same staffing ratios was $178.53.

17       91.    Defendant KARMA, INC. dba Manteca Care and Rehabilitation Center

18   had a Medi-Cal reimbursement rate for regular services for the time period of August 1,

19   2014 through July 31, 2015 of $186.51 at a time when the average reimbursement rate

20   for nursing homes with substantially the same staffing ratios was $160.97.

21       92.    Defendant THEKKEK HEALTH SERVICES, INC. dba Martinez

22   Convalescent Hospital had a Medi-Cal reimbursement rate for regular services for the

23   time period of August 1, 2014 through July 31, 2015 of $191.09 at a time when the

24   average reimbursement rate for nursing homes with substantially the same staffing

25   ratios was $178.85.

26       93.    Defendant NADHAN, INC. dba Orchard Post Acute Care Hospital had a

27   Medi-Cal reimbursement rate for regular services for the time period of August 1, 2014

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

29

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1   through July 31, 2015 of $217.84 at a time when the average reimbursement rate for

2   nursing homes with substantially the same staffing ratios was $178.53.

3       94.   Defendant AAKASH, INC. dba Park Central Care & Rehabilitation Center

4   had a Medi-Cal reimbursement rate for regular services for the time period of August 1,

5   2014 through July 31, 2015 of $212.33 at a time when the average reimbursement rate

6   for nursing homes with substantially the same staffing ratios was $144.96.

7       95.   Defendant NASAKY, INC. dba Yuba Skilled Nursing Center had a Medi-

8   Cal reimbursement rate for regular services for the time period of August 1, 2014

9   through July 31, 2015 of $181.92 at a time when the average reimbursement rate for

10  nursing homes with substantially the same staffing ratios was $177.39.

11      96.   Relator also became aware that the MANAGEMENT DEFENDANTS

12  mandated that each of the FACILITIES entered into contracts with Defendant KAZAK

13  ENTERPRISES, INC. doing business under the fictitious business name Diablo

14  Medical Supplies to provide the FACILITIES with medical supplies, nursing supplies,

15  minor equipment, non-covered equipment, rentals, and non-covered equipment. That

16  the DEFENDANTS failed to disclose to the State of California or the federal

17  government that KAZAK ENTERPRISES, INC. is a "related party" to the

18  DEFENDANTS in that it is owned and operated by defendant PREMA THEKKEK and

19  maintains the same corporate headquarters as DEFENDANTS. The FACILITIES were

20  required to contract with KAZAK ENTERPRISES, INC. and no other providers and

21  the FACILITIES were not given the option of negotiating the rates with KAZAK

22  ENTERPRISES, INC. The rates that the FACILITIES were mandated to pay KAZAK

23  ENTERPRISES, INC. far exceeded the industry average.

24  **VII.   SCHEME TO INCREASE MEDI-CAL REIMBURSEMENT RATES**

25         **THROUGH PAYMENT OF EXORBITANT "MANAGEMENT FEES"**

26      97.   DEFENDANTS also illegally and fraudulently increased costs (thereby

27  illegally and fraudulently increasing Medi-Cal reimbursement rates) by funneling

28

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEO.] ET AL.

1    payments from the LICENSEES to the MANAGEMENT DEFENDANTS under the
2    guise of "management fees" and other related fees. The LICENSEES fraudulently
3    transferred assets to the MANAGEMENT DEFENDANTS for no and/or inadequate
4    consideration in that the MANAGEMENT DEFENDANTS performed virtually no
5    services for the LICENSEES in return for the payments. The Relator has personal and
6    independent knowledge that these fees were siphoned off to the MANAGEMENT
7    DEFENDANTS for inadequate consideration.

8       98. For example, for the time period of January 1, 2012, through December
9    31, 2012, KAYAL, INC. doing business as Bay Point Healthcare Center paid the
10   MANAGEMENT DEFENDANTS $178,082.00 for "management services,"
11   $659,436.00 for "property management services," and $44,452.00 for "interest
12   expense," for a mind-boggling total of $881,970.00 in administration and management-
13   related expenses.  For the time period of January 1, 2013 through December 31, 2013,
14   the MANAGEMENT DEFENDANTS were paid $663,690.00 for "property
15   management services," $191,177.00 for "management services," and $41,593 for
16   "interest expense," for a total of $896,460.00 in administration and management related
17   services. For the time period of January 1, 2014 through December 31, 2014, the
18   MANAGEMENT DEFENDANTS were paid $663,690.00 for "property management
19   services" and $77,708.00 for "management services" for a total of $741,398.00.
20   However, Relator has personal and independent knowledge these funds were
21   transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as
22   the MANAGEMENT DEFENDANTS provided KAYAL, INC. doing business as Bay
23   Point Healthcare Center with little or no services in return for these fees.

24      99. For the time period of January 1, 2013, through December 31, 2013,
25   MARINOAK, INC. doing business as Corinthian Garden Healthcare & Subacute
26   Center paid the MANAGEMENT DEFENDANTS a mind-boggling $1,099,092.00 for
27   "support services." For the time period of January 1, 2014 through December 31, 2014,

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729
ET SEO.] ET AL.

1  the MANAGEMENT DEFENDANTS were paid $398,297.00 for "management

2  services." However, Relator has personal and independent knowledge these funds were

3  transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as

4  the MANAGEMENT DEFENDANTS provided MARINOAK, INC. doing business as

5  Corinthian Garden Healthcare & Subacute Center with little or no services in return for

6  these fees.

7      100.   For the time period of January 1, 2012, through December 31, 2012,

8  NADHAN, INC. doing business as Creekside Rehabilitation & Behavioral Health paid

9  the MANAGEMENT DEFENDANTS a mind-boggling $4,233,181.00 for

10 "management services," $1,708,875.00 for "property management services," and

11 $148,431.00 for "related interest expense," for a mind-boggling total of $6,090,487.00

12 in administration and management-related expenses. For the time period of January 1,

13 2013 through December 31, 2013, the MANAGEMENT DEFENDANTS were paid

14 $2,486,731.00 for " management services," $1,719,900.00 for "property management

15 services," and $245,212.00 for "related interest expense," for a total of $4,451,843.00

16 in administration and management related services. For the time period of January 1,

17 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS were paid

18 $2,550,547.00 for "management services" and $1,719,900.00 for "property

19 management services" for a total of $4,270,447.00. However, Relator has personal and

20 independent knowledge these funds were transferred to the MANAGEMENT

21 DEFENDANTS for inadequate consideration, as the MANAGEMENT

22 DEFENDANTS provided NADHAN, INC. doing business as Creekside Rehabilitation

23 & Behavioral Health with little or no services in return for these fees.

24      101.   For the time period of January 1, 2014, through December 31, 2014,

25 DIYAVILLA, INC. doing business as Diyamonte Acute Care Center paid the

26 MANAGEMENT DEFENDANTS $107,860.00 for "management services" and

27 $420,000.00 for "property management services," for a total of $527,860.00 in

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1   administration and management-related expenses. However, Relator has personal and

2   independent knowledge these funds were transferred to the MANAGEMENT

3   DEFENDANTS   for   inadequate   consideration,   as   the   MANAGEMENT

4   DEFENDANTS provided DIYAVILLA, INC. doing business as Diyamonte Acute

5   Care Center with little or no services in return for these fees.

6       102.   For the time period of January 1, 2012, through December 31, 2012,

7   NADHI, INC. doing business as Gateway Care & Rehabilitation Center paid the

8   MANAGEMENT DEFENDANTS $468,570.00 for "management services," and

9   $75,812.00 for "related interest expense," for a total of $544,382.00 in administration

10   and management-related expenses. For the time period of January 1, 2013 through

11   December 31, 2013, the MANAGEMENT DEFENDANTS were paid $212,366.00 for

12   "management services" and $92,794.00 for "related interest expense" for a total of

13   $305,160.00 in administration and management related services. For the time period of

14   January 1, 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS

15   were paid $55,858.00 for "management services." However, Relator has personal and

16   independent knowledge these funds were transferred to the MANAGEMENT

17   DEFENDANTS   for   inadequate   consideration,   as   the   MANAGEMENT

18   DEFENDANTS provided NADHI, INC. doing business as Gateway Care &

19   Rehabilitation Center with little or no services in return for these fees.

20       103.   For the time period of January 1, 2012, through December 31, 2012,

21   OAKRHEEM, INC. doing business as Hayward Convalescent Hospital paid the

22   MANAGEMENT DEFENDANTS $877,188.00 for "lease-building" and $268,881.00

23   for "management services," for a total of $1,146,069.00 in administration and

24   management-related expenses. For the time period of January 1, 2013 through

25   December 31, 2013, the MANAGEMENT DEFENDANTS were paid $907,690.00 for

26   "lease-building" and $151,464.00 for "management services" for a total of

27   $1,059,154.00 in administration and management related services. For the time period

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729
ET SEO.] ET AL.

of January 1, 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS were paid $1,117,118.00 for "lease-building" and $287,526.00 for "management services" for a total of $1,404,644.00. However, Relator has personal and independent knowledge these funds were transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as the MANAGEMENT DEFENDANTS provided OAKRHEEM, INC. doing business as Hayward Convalescent Hospital with little or no services in return for these fees.

104.   For the time period of January 1, 2012, through December 31, 2012, BAYVIEW CARE, INC. doing business as Hilltop Care and Rehabilitation Center paid the MANAGEMENT DEFENDANTS $10,000.00 for "management services" and $512,663.00 for "property management services" for a total of $522,663.00 in administration and management-related expenses. For the time period of January 1, 2013 through December 31, 2013, the MANAGEMENT DEFENDANTS were paid $519,970.00 for "property management services" and $94,517.00 for "management services" for a total of $614,487.00 in administration and management related services. For the time period of January 1, 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS were paid $565,920.00 for "property management services" and $31,773.00 for "management services" for a total of $597,693.00. However, Relator has personal and independent knowledge these funds were transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as the MANAGEMENT DEFENDANTS provided BAYVIEW CARE, INC. doing business as Hilltop Care and Rehabilitation Center with little or no services in return for these fees.

105.   For the time period of January 1, 2012, through December 31, 2012, SAGAR, INC. doing business as La Mariposa Care & Rehabilitation Center paid the MANAGEMENT DEFENDANTS $406,341.00 for "management services" and $71,476.00 for "related interest expense," for a total of $477,817.00 in administration

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEO.] ET AL.

and management-related expenses. For the time period of January 1, 2013 through December 31, 2013, the MANAGEMENT DEFENDANTS were paid $213,793.00 for "management services" and $58,396.00 for "related interest expense," for a total of $272,189.00 in administration and management related services. For the time period of January 1, 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS were paid $231,021.00 for "management services". However, Relator has personal and independent knowledge these funds were transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as the MANAGEMENT DEFENDANTS provided SAGAR, INC. doing business as La Mariposa Care & Rehabilitation Center with little or no services in return for these fees.

106.   For the time period of March 11, 2014 through September 30, 2014, GRACEVILLA, INC. doing business as Genesis Healthcare Center paid the MANAGEMENT DEFENDANTS $240,000.00 for "management services." However, Relator has personal and independent knowledge these funds were transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as the MANAGEMENT DEFENDANTS provided GRACEVILLA, INC. doing business as Genesis Healthcare Center with little or no services in return for these fees.

107.   For the time period of January 1, 2012, through December 31, 2012, KARMA, INC. doing business as Manteca Care and Rehabilitation Center paid the MANAGEMENT DEFENDANTS $578,078.00 for "management services," $1,263,200.00 for "property management services," and $119,767.00 for "interest expense," for a mind-boggling total of $1,961,045.00 in administration and management-related expenses. For the time period of January 1, 2013 through December 31, 2013, the MANAGEMENT DEFENDANTS were paid $1,271,350.00 for "property management services," $172,303.00 for "management services," and $94,390.00 for "interest expense," for a total of $1,538,043.00 in administration and management related services. For the time period of January 1, 2014 through December

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

35

31, 2014, the MANAGEMENT DEFENDANTS were paid $1,271,350.00 for "property management services" and $874,374.00 for "management services" for a total of $2,145,724.00. However, Relator has personal and independent knowledge these funds were transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as the MANAGEMENT DEFENDANTS provided KARMA, INC. doing business as Manteca Care and Rehabilitation Center with little or no services in return for these fees.

108.   For the time period of January 1, 2012, through December 31, 2012, NADHAN, INC. doing business as Orchard Post Acute Care Hospital paid the MANAGEMENT DEFENDANTS $746,961.00 for "management services" and $8,570.00 for "interest expense," for a total of $755,531.00 in administration and management-related expenses. For the time period of January 1, 2013 through December 31, 2013, the MANAGEMENT DEFENDANTS were paid $493,274.00 for "management services" and $5,798.00 for "interest expense," for a total of $499,072.00 in administration and management related services. For the time period of January 1, 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS were paid $543,017.00 for "management services." However, Relator has personal and independent knowledge these funds were transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as the MANAGEMENT DEFENDANTS provided NADHAN, INC. doing business as Orchard Post Acute Care Hospital with little or no services in return for these fees.

109.   For the time period of January 1, 2012, through December 31, 2012, AAKASH, INC. doing business as Park Central Care & Rehabilitation Center paid the MANAGEMENT DEFENDANTS $1,299,177.00 for "management services" and $10,563.00 for "interest expense," for a mind-boggling total of $1,309,740.00 in administration and management-related expenses. For the time period of January 1, 2013 through December 31, 2013, the MANAGEMENT DEFENDANTS were paid

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.

$836,686.00 for "management services." For the time period of January 1, 2014 through December 31, 2014, the MANAGEMENT DEFENDANTS were paid $663,690.00 for "property management services" and $77,708.00 for "management services" for a total of $741,398.00. However, Relator has personal and independent knowledge these funds were transferred to the MANAGEMENT DEFENDANTS for inadequate consideration, as the MANAGEMENT DEFENDANTS provided KAYAL, INC. doing business as Bay Point Healthcare Center with little or no services in return for these fees.

## VIII. <u>SCHEME TO DEFRAUD HUD/FHA</u>

110.   HUD/FHA provides mortgage insurance on loans that cover housing for the frail elderly. Known as a Section 232 loan, these loans help finance nursing homes, assisted living facilities, and board and care facilities. FHA mortgage insurance provides lenders with protection against losses as the result of borrowers defaulting on their mortgage loans. The lenders bear less risk because FHA will pay a claim to the lender in the event of a borrower's default. Loans must meet certain requirements established by FHA to qualify for insurance. Proposed projects are evaluated on the basis of whether the proposal is an acceptable insurance risk for the FHA Insurance Fund. It is not a competitive process. The Section 232 program is codified at 12 U.S.C. § 1715w and HUD's regulations for the Section 232 program are codified at 24 C.F.R. part 232.

111.   Section 232 may be used to finance the purchase, refinance, new construction, or substantial rehabilitation of a project. A combination of these uses is acceptable - e.g. refinance of a nursing home coupled with new construction of an assisted living facility.

112.   Section 232 sets certain requirements relating to the qualification of Borrowers and Operators for the Section 232 program. As stated in the HUD Handbook:

THE GARCIA LAW FIRM

ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA  90831
TELEPHONE  (562) 216-5270  •  FACSIMILE  (562) 216-5271

> A key component of the underwriting process is to assess the Borrower and/or Operator's ability to manage the development, construction, completion and successful lease-up of the FHA insured property. The underwriting of Section 232 projects involves evaluating the experience and financial condition of the Borrower and its principals, the Operator, parent of the Operator and the general contractor.

(Section 232 Handbook, Section 11, Production, Chapter 6, §6.1.B.)

113.   Identifying principal ownership interest. There are numerous ways for investors to own an interest in real property. Each form of ownership offers different benefits and risks. If the Borrower (and/or the Operator and parent of the Operator) has a complex or layered organizational structure, the Lender must review the structure and identify the individuals or entities that have control under the organizational structure. The Lender must confirm that the Borrower (and/or the Operator and parent of the Operator) is legally organized in a manner that meets U.S. Department of Housing and Urban Development's ("HUD") requirements for owning and operating an FHA-insured facility, and consider any difficulties or increased risk that the organizational structure might pose in the event of default or foreclosure on the FHA-insured mortgage loan. All principals that meet the ownership and control standards set forth in HUD's previous participation regulations must file a Previous Participation Certification Form HUD-2530) or APPS submission (see Production, Chapter 2) and are subject to the disclosure and certification requirements regarding bankruptcy, judgments, pending litigation and delinquent federal debt. Those principals with decision-making authority, active management roles, or a significant percentage of financial investment in the project are subject to a more complete credit investigation. The Lender is responsible for identifying the principals and the extent of the credit review required and appropriate for each such principal. (Section 232 Handbook, Section II, Production, Chapter 6, §6.1.C.)

114.   Operators and Management Agents that operate FHA-insured residential

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

healthcare facilities play a key role in providing quality housing and health services, critical to the success of the project over the life of the mortgage. To this end, ORCF requires that detailed Operator and/or Management Agent documents be submitted for approval with the application or when there is a proposed change in the Operator and/or Management Agent. [¶] It is the Lender's responsibility to review whether the proposed Operator and/or Management Agent demonstrate the capability and track record to assure that the project will be operated in a prudent, efficient, and cost-effective manner, while providing excellent care to the residents. [¶] ORCF holds the Borrower ultimately accountable for all functions and actions necessary to sustain an insured healthcare project. That ultimate project responsibility holds regardless of the Regulatory and/or Management Agreements the Operators and/or agents sign. [¶] Once the Lender recommends approval, ORCF must also approve a proposed Operator and/or Management Agent prior to their involvement in a Section 232 project. (Section 232 Handbook Section II, Production, Chapter 8, ¶8.1.)

115.   An "Operator," for purposes of projects insured under Section 232 of the National Housing Act, is the legal entity licensed by the applicable state licensing authority to "operate" a particular healthcare project. Thus, the state awards a particular entity the right to provide resident care services and to conduct the usual and necessary business matters of a healthcare provider at the designated project. Thereafter, the state holds the licensee accountable for its healthcare services provided and its business conduct in accordance with existing standards and regulations. In certain jurisdictions, the state licensing authority may name more than one entity on the project operating license. For purposes of ORCF requirements, all such entities shall be considered an Operator and shall be held to the same submission standards and regulatory requirements. [¶] ORCF requires that an operator of an FHA-insured healthcare project be licensed as the project Operator by the state. ORCF also requires that the Operator be a single-asset entity acceptable to the Commissioner, and that it possess all powers

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEO.] ET AL.

necessary and incidental to operating the healthcare project. Occasional exceptions may be granted under such circumstances, terms and conditions determined and specified by the Commissioner. Circumstances under which exemption from this single asset operator entity requirement may be considered are set forth in Production, Chapter 2, at 2.5C. (Section 232 Handbook, Section II, Production, Chapter 8, §8.2.)

116.   In yet another circumstance, a licensed Operator, rather than leasing the project, contracts with the Borrower to operate the project for a negotiated fee (through, for example, an "Operating Agreement" or a "Management Agreement"). In such circumstances, including those in which a Management Agent is the co-licensee for a healthcare project, such entity shall be subject to the same requirements as an Operator. In these instances, the contract made between the Borrower and approved Operator requires ORCF approval. In any case HUD ORCF enforces the Operator's responsibilities via the Healthcare Regulatory Agreement-Operator.

(Section 232 Handbook, Section II, Production, Chapter 8, §8.2.)

117.   The Lender must ensure that the proposed Operator and/or Management Agent have the business and healthcare expertise to market and operate the proposed project. Inherent in this expertise is knowledge of the intended clientele, their specific health-related and hospitality needs, and the best approach to meeting these needs. At least one principal or entity of the proposed Operator or Management Agent must have a proven track record of successful operations in the type of project proposed (e.g. Nursing Home, Assisted Living, Memory Care or Board & Care). Principals must have at least 3 years of experience participating in multiple properties. Longer operating histories may be required for participants with only one project. Experience must include developing, marketing, operating, and, as applicable, lease-up of the type of project proposed. Evidence of appropriate experience must be provided that includes specific project examples including project name, type of care provided, location, and unit/bed count. For projects adding units to a market, evidence must also include year

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

opened and key operating metrics (fill pace, occupancy, net operating income margins), and specific responsibilities for the management and operation of the example healthcare project. ORCF is seeking assurance that the Operators and Management Agents are committed to the long-term success of the project and have the requisite experience to operate and manage the project. (Section 232 Handbook, Section II, Production, Chapter 8, §8.4.)

118.   A Transfer of Physical Assets ("TPA") is the sale and conveyance by deed of title to a property which has a mortgage insured or held by U. S. Department of Housing and Urban Development ("HUD") and necessitates a substitution of Borrowers. HUD approval of the substitution is required in every case where HUD exercises control over the Borrower either as preferred stockholder, by regulatory agreement, or by certificate of beneficial interest. This chapter applies to all transactions involving the transfer of all or part of an interest in the ownership of such properties. (Section 232 Handbook, Section III, Asset Management, Chapter 7, §7.1.)

119.   Transactions requiring HUD's full review of a project, its current Borrower, and the qualifications of the new controlling entity include, but are not limited to, projects demonstrating the following characteristics: 1. Transfer of title from the Borrower entity to a buyer, including conveyance by installment sales contract, land contract or wrap-around mortgage; 2. Transfer of any interest in a partnership Borrower which causes a dissolution of the partnership under applicable state law; 3. Transfer of the beneficial interest in a passive trust which results in a change in control and management of the asset, although legal title remains in the trustee. (Section 232 Handbook, Section III, Asset Management, Chapter 7, §7.2.A.)

120.   The ORCF will review the Application for Transfer of Physical Assets (TPA) (Form HUD-92266-ORCF) and all accompanying documentation. At the end of the review process, if the attached instruments are found to be in order, and the transfer proposal is acceptable, HUD will issue a letter granting initial approval of the

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  application. This approval may be conditioned upon any ORCF requirement plus

2  necessary changes in the submitted documents, if any, and will authorize the execution

3  of all remaining required instruments. It is at this point that the parties to the transaction

4  are authorized to transfer possession of and beneficial interest in the project. The

5  purchaser is not authorized to transfer any interest in, take possession of, or assume the

6  burdens and benefits of ownership without the written approval of ORCF.

7  (Section 232 Handbook, Section III, Asset Management, Chapter 7, §7.5.)

8      121.   All Borrowers and Operators must execute an ORCF Regulatory

9  Agreement governing the operation of the project in order to comply with Program

10 Obligations, the requirements of the National Housing Act, as amended, and the

11 regulations adopted by HUD. The regulatory agreement will be recorded at Initial

12 Closing and will continue during such period of time as HUD is the owner, holder or

13 insurer of the Note. Borrowers and Operators are responsible for any violations of the

14 Regulatory Agreements and may be subject to adverse actions if violations occur. The

15 Borrower Regulatory Agreement is Form HUD-92466-ORCF and the Operator

16 Regulatory Agreement is Form HUD-92466A-ORCF.

17     122.   Because DEFENDANTS did not qualify as borrowers under the Section

18 232 program requirements alleged hereinabove, DEFENDANTS concealed from HUD

19 and the FHA their true ownership interests in Apple Valley Care Center and entered

20 into a side agreement relating to Apple Care Center by which they fraudulently

21 obtained loans under the Section 232 program for their own benefit but in the name of

22 unrelated entities. These side agreements also constituted unlawful TPAs which were

23 concealed from HUD in violation of the law.

24     123.   Specifically, the side agreements provided as follows:

25          (i)    _____, LLC, a California limited
26          liability company ("Real Estate Purchaser"), will be
           entering into that certain Real Estate Purchase Agreement
27          Joint Escrow Instructions (the "REPA"), with Apple Valley
           Christian Senior Care Community, LLC, and Apple Valley

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

Christian Care Center Real Estate Holding Company, LLC (collectively, "Real Estate Sellers"), pursuant to which Real Estate Purchaser will be acquiring the real property and improvements housing that certain 99- bed skilled nursing facility located at 11959 Apple Valle Road, Apple Valley, California 92308-7507 (the "Facility");

(ii)     Apple Care Center, LLC, a California limited liability company ("New Operator"), will be entering into that certain Asset Purchase Agreement and Joint Escrow Instructions (the "APA"), with Real Estate Sellers and Apple Valley Christian Centers, pursuant to which New Operator will be acquiring the operations of the Facility and the operational assets as more particularly described in the APA; and

(iii)    The matters described in (ii) and (iii) above shall collectively be described as (the "Transaction").

(iv)    New Operator is governed by that certain Operating Agreement, and the members of New Operator are _____ and AV Holding Company, LLC, a California limited liability company ("AVHC"). _____ is owned by James Preimesberger. Mr. Preimesberger agreed to enter into the Transaction on the following conditions:

     1)     That Mr. Preimesberger shall be paid key money in the amount of One Hundred Fifty Thousand Dollars ($150,000.00) (the "Key Money") as follows:

    a)     Fifty Thousand Dollars ($50,000.00) was paid to Mr. Preimesberger on or about August 30, 2013;

    b)     One Hundred Thousand Dollars ($100,000.00) shall be paid to Mr. Preimesberger on the date on which the Transaction documents are executed; and

     2)     Mr. Preimesberger shall receive monthly compensation in the amount of Fifteen Thousand Dollars ($15,000.00) per month for his services to the New Operator as the Managing Member (the "Manager Fee"), commencing on the Closing Date and continuing for as long as Mr. Preimesberger is the Managing Member of New Operator.

124.   In 2013, Apple Valley Christian Centers, a California nonprofit public

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

benefit corporation, Apple Valley Christian Senior Care Community, LLC, and Apple Valley Christian Care Center Real Estate Holding Company, LLC sold Apple Valley Care Center to Apple Care Center, LLC. Apple Valley Care Center, LLC was a shell corporation set up by DEFENDANTS. The DEFENDANTS concealed this side agreement from HUD and the FHA, thereby illegally and fraudulently obtaining loans relating to Apple Valley Care Center under the Section 232 program.

125.   Based upon all of the foregoing allegations, Relator is informed and believes that the fraudulent practices described in this Complaint are representative of a pattern and practice of fraud to be found throughout all of DEFENDANTS' FACILITIES. These acts were ongoing and widespread and stemmed from the DEFENDANTS' constant and intense pursuit to maximize its revenues.

126.   DEFENDANTS' false claims occurred from at least 2012 forward. Medicare, Medicaid and Medi-Cal beneficiaries represented a substantial portion of DEFENDANTS' total patient days and gross revenues during the relevant time period and as such, significant sums of money are derived solely from Medicare, Medicaid and Medi-Cal reimbursements. As a consequence of DEFENDANTS' pattern and practice described herein, it is estimated that DEFENDANTS have defrauded the Medicare, Medicaid and Medi-Cal programs and the U.S. taxpayers out of millions of dollars. Based upon the federal statutory civil penalty of Eleven Thousand Dollars ($11,000.00) for each false claim submitted and treble damages applied to the amount of the overpayments, Relator estimates the total amount to be recovered from the DEFENDANTS to be millions of dollars.

### First Claim for Relief

### (Against All Defendants)

### False Claims Act, 31 U.S.C. §§3729 *et seq.*

127.   Relator realleges and incorporates by reference the allegations set forth in the paragraphs above as if set forth fully herein.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

128.   This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§3729 *et seq.,* as amended.

129.   Through the acts described above, DEFENDANTS knowingly and willfully presented, or caused to be presented, to the United States Government and to the federally-funded Medi-Cal and Medicare programs false and fraudulent claims for payment or approval relating to nursing facility care of Medicare and Medi-Cal patients in violation of the False Claims Act.

130.   Through the acts described above, DEFENDANTS knowingly and willfully made, used, or caused to be made and used, false records and false statements to get false or fraudulent claims paid or approved by the United States Government and recipients of federal funds in violation of federal laws.

131.   Through the acts described above, DEFENDANTS conspired among themselves and others to defraud the United States Government by getting false or fraudulent Medicare and Medicaid claims allowed and paid. Moreover, DEFENDANTS took substantial steps toward the completion of the goals of that conspiracy, *inter alia,* by submitting false claims, by providing and receiving remuneration in exchange for the referral of patients, and by making misrepresentation that defendants had complied with all statutes, rules and regulations governing the Medicare Act, including state and federal anti-kickback statutes. Thus, in violation of federal laws, DEFENDANTS conspired to cause the United States to pay claims for health care services based on false claims and false statements that the services were provided in compliance with all laws regarding the provision of health care services when they were not so provided.

132.   The United States, unaware of the falsity of the claims made by the DEFENDANTS, directly or indirectly approved, paid, or participated in payments to DEFENDANTS that would otherwise not have been allowed or paid but for DEFENDANTS' conduct.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

45

133.   The United States, unaware of the defendants' conspiracy or the steps taken in furtherance thereof, allowed, paid, or participated in payments to DEFENDANTS that would otherwise not have been allowed or paid but for DEFENDANTS' conduct.

134.   By virtue of the acts described above, DEFENDANTS also knowingly and willfully made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States Government, within the meaning of 31 U.S.C. §3729(a)(1)(G). DEFENDANTS acted with actual knowledge, deliberate ignorance, and/or reckless disregard of the law when submitting their claims to the Medicare and Medi-Cal programs for reimbursement of services rendered to beneficiaries of these programs. As a result, monies were lost to the United States through the non-payment or non-transmittal of money or property owed to the United States by DEFENDANTS, and other costs were sustained by the United States.

135.   The acts described above also amount to healthcare fraud in violation of 18 U.S.C. §1347 as DEFENDANTS knowingly and willfully executed a scheme to defraud a healthcare benefit program and to obtain money or property from a healthcare benefit program through false representations.

136.   The acts described above also amount to false statements relating to healthcare matters in violation of 18 U.S.C. §1035 as DEFENDANTS knowingly and willfully falsified or concealed a material fact, made any materially false statement, or used any materially false writing or document in connection with the delivery of or payment for healthcare benefits, items or services.

137.   By reason of DEFENDANTS' conduct described above, the United States was damaged, and continues to be damaged, in an amount yet to be determined.

## **Second Claim for Relief**

### **(Against All Defendants)**

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729 ET SEQ.] ET AL.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

**Federal Anti-Kickback Statute, 42 U.S.C. §1320A-7(B)(b)**

138.   Relator re-alleges and incorporates by reference the allegations set forth the paragraphs above as if set forth fully herein.

139.   The Federal Anti-Kickback Statute prohibits the solicitation or receipt of remuneration in return for referrals of Medicare patients and the offer or payment of remuneration to induce such referrals.

140.   DEFENDANTS, and each of them, induced and continue to induce referrals of Medicare patients by offering physicians and hospital case managers money, gift cards, funds disguised as medical director fees and consultation fees, and other remuneration in exchange for such referrals.

141.   DEFENDANTS accepted referrals of Medicare patients from hospitals that were induced by the provision of illegal remuneration and then have submitted claims for such residents in violation of the statute.

142.   DEFENDANTS' failure to disclose such conduct constitutes fraud and any subsequent submission of a HCFA form 2552 (certifying that the services were provided in compliance with healthcare laws and regulations) included services to patients whose healthcare providers received kickbacks or illegal inducements prohibited by §1320a-7(b)b, thus causing the HCFA form 2552 reports to be "false records or statements."

143.   At least one of the purposes of DEFENDANTS' payment and receipt of remuneration was to induce future referrals.

144.   By reason of DEFENDANTS' conduct described above, the United States was damaged, and continues to be damaged, in an amount yet to be determined.

**<u>Third Claim for Relief</u>**

**(Against All Defendants)**

**California False Claims Act, Cal Gov. Code §12651 *et seq.***

145.   Relator realleges and incorporates by reference the allegations set forth the

47

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA  90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271

1  paragraphs above as if set forth fully herein.

2      146.   This is a claim for treble damages and penalties under the California False
3  Claims Act.

4      147.   By virtue of the acts described above, DEFENDANTS knowingly and
5  willfully made, used, or caused to be made or used false records and statements, and
6  omitted material facts, to induce the California State Government to approve and pay
7  such false and fraudulent claims.

8      148.   Through the acts described above, defendants conspired among themselves
9  and others to defraud the California State Government by getting false or fraudulent
10  claims allowed and paid. Moreover, DEFENDANTS took substantial steps toward the
11  completion of the goals of that conspiracy, *inter alia*, by submitting false claims, by
12  creating false documentation in support of such claims, and by making
13  misrepresentations about how patients were being provided nursing facility care.

14      149.   Through the acts described above, DEFENDANTS conspired among
15  themselves and others to defraud the California State Government by getting false or
16  fraudulent claims allowed and paid. Moreover, DEFENDANTS took substantial steps
17  toward the completion of the goals of that conspiracy, *inter alia,* by submitting false
18  claims, by providing and receiving remuneration in exchange for the referral of
19  patients, and by making misrepresentation that defendants had complied with all
20  applicable statutes, rules and regulations, including state anti-kickback statute.

21      150.   The California State Government, unaware of the falsity of the claims
22  made by the DEFENDANTS, approved, paid, or participated in payments to
23  DEFENDANTS that would otherwise not have been allowed or paid but for
24  DEFENDANTS' conduct.

25      151.   The California State Government, unaware of the DEFENDANTS'
26  conspiracy or the steps taken in furtherance thereof, allowed, paid, or participated in
27  payments to DEFENDANTS that would otherwise not have been paid or allowed but

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

48

1   for DEFENDANTS' conduct.

2       152.   By virtue of the acts described above, DEFENDANTS also knowingly and
3   willfully made, used, or caused to be made or used, false records or statements to
4   conceal, avoid, or decrease an obligation to pay or transmit money or property to the
5   California State Government. As a result, monies were lost to the California State
6   Government through the non-payment or non-transmittal of money or property owed to
7   the California State Government by DEFENDANTS, and the California State
8   Government sustained additional costs.

9       153.   By reason of DEFENDANTS' conduct described above, the California
10  State Government was damaged, and continues to be damaged, in an amount yet to
11  be determined.

12              **Fourth Claim for Relief**

13              **(Against All Defendants)**

14  **California Anti-Kickback Statute, Wel. & Inst. §14107.2 and Bus & Prof §650**

15      154.   Relator realleges and incorporates by reference the allegations set forth the
16  paragraphs above as if set forth fully herein.

17      155.   California's Anti-Kickback statute prohibits the solicitation, receipt, offer,
18  or payment of "any remuneration, including but not restricted to, any kickback, bribe or
19  rebate, directly or indirectly, overtly over covertly, in cash or in valuable consideration
20  of any kind" in connection with the referral of any person for the furnishing or
21  arrangement of any service or merchandise, or the purchase, lease, order, arrangement,
22  or recommendation of any goods, facility, service, or merchandise for which payment
23  may be made by Medi-Cal. California *Welfare & Institutions Code* §14107.2.

24      156.   Further, California *Business & Professions Code* §650 prohibits the offer,
25  delivery, receipt or acceptance by any licensed practitioner of any rebate, refund,
26  commission, preference, patronage, patronage dividend, discount, or other
27  consideration as compensation or inducement for referring patients, clients, or

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA  90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

1  customers to any person.

2      157.   DEFENDANTS, and each of them, induced and continue to induce

3  referrals of Medi-Cal patients by offering physicians and hospital case managers

4  money, giftcards, funds disguised as medical director fees and consultation fees, and

5  other remuneration in exchange for such referrals.

6      158.   DEFENDANTS accepted referrals of Medi-Cal patients from hospitals

7  that were induced by the provision of illegal remuneration and then have submitted

8  claims for such residents in violation of the statute.

9      159.   At least one of the purposes of DEFENDANTS' payment and receipt of

10  remuneration was to induce future referrals

11     160.   By reason of DEFENDANTS' conduct described above, the California

12  State Government was damaged, and continues to be damaged, in an amount yet to

13  be determined.

14                         **PRAYER**

15      **WHEREFORE**, Relator requests that Judgment be entered against Defendants,

16  ordering that:

17      a.     Defendants cease and desist from violating 31 U.S.C. §3729 *et seq.*, 42

18  U.S.C. §1320A-7b(b), 31 U.S.C. §3729(a)(3), 18 U.S.C. §1347,  18 U.S.C. §1035,

19  California *Government Code* §12651 *et seq.,* California *Welfare & Institutions Code*

20  §14107.2, California *Business & Professions Code* §650;

21      b.     Defendants pay an amount equal to three times the amount of damages

22  the United States has sustained because of Defendants' actions, plus a civil penalty

23  against each defendant of not less than $5,000, and not more than $11,000 for each

24  violation of 31 U.S.C. § 3729 *et seq.*;

25      c.     Defendants pay an amount equal to three times the amount of damages

26  the United States has sustained because of Defendants' actions, plus a civil penalty

27  against each defendant of $50,000 for each violation of 42 U.S.C. §1320A-7b;

28

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA  90831
TELEPHONE (562) 216-5270  •  FACSIMILE (562) 216-5271

1       d.     Defendants pay an amount equal to three times the amount of damages

2   California has sustained because of Defendants' actions, plus a civil penalty of

3   $10,000 for each violation of Cal. Gov. Code §12650 *et seq.*;

4       e.     Defendants pay an amount of up to $50,000 for violation of Cal. Welf.

5   & Inst. Code §14107.21;

6       f.     Defendants pay an amount equal to three times the amount of damages

7   California has sustained because of Defendants' actions, plus a civil penalty of

8   $50,000 for each violation of Cal. Bus. & Prof. Code §650;

9       g.     Relator be awarded the maximum amount allowed pursuant to the *qui tam*

10  provisions of the federal and California statutes, of the proceeds of this action or

11  settlement of this action. Relator requests that his percentage be based upon the total

12  value recovered, including any amounts received from individuals or entities not parties

13  to this action;

14      h.     Relator be awarded all costs of this action, including attorneys' fees and

15  costs; and

16      i.     The United States, California and Relator be granted all such other relief

17  as the Court deems just and proper.

18                         **<u>REQUEST FOR TRIAL BY JURY</u>**

19      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby

20  demands a trial by jury.

21  DATED: December 11, 2015       **GARCIA, ARTIGLIERE & MEDBY**

22

23

24                    By: _____

25                       Stephen M. Garcia
                       David M. Medby

26                       Attorneys for Relator and Qui Tam Plaintiff

27                       Trilochan Singh

28

FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. §3729
ET SEQ.] ET AL.

THE GARCIA LAW FIRM
ONE WORLD TRADE CENTER, SUITE 1950
LONG BEACH, CALIFORNIA 90831
TELEPHONE (562) 216-5270 • FACSIMILE (562) 216-5271