Benjamin N. Gluck - State Bar No. 203997
    bgluck@birdmarella.com
Nicole R. Van Dyk - State Bar No. 261646
    nvandyk@birdmarella.com
Naomi S. Solomon - State Bar No. 321357
    nsolomon@birdmarella.com
Alexis A. Wiseley - State Bar No. 330100
    awiseley@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Attorneys for Defendants
Prema Thekkek, Paksn, Inc., Kayal, Inc.,
Nadhi, Inc., Oakrheem, Inc., Bayview
Care, Inc., Thekkek Health Services, Inc.,
Aakash, Inc., and Nasaky, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. TRILOCHAN SINGH, <br><br> Plaintiff, <br><br> vs. <br><br> PAKSN, INC., et al., <br><br> Defendants. | CASE NO. 2:15-cv-09064-SB-AGR <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT, OR IN THE ALTERNATIVE, STRIKE CERTAIN IMMATERIAL, IMPERTINENT, AND PREJUDICAL PARAGRAPHS FROM THE COMPLAINT** <br><br> *[Filed Concurrently with Proposed Order]* <br><br> Date:    November 19, 2021 <br> Time:    8:30 a.m. <br> Crtrm:   6C <br><br> Assigned to Hon. Stanley Blumenfeld Jr. |

3745209.8

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on November 19, 2021 at 8:30 a.m., in Courtroom 6C of the above-titled court, located at 350 West First Street, Los Angeles, CA 90012, or as soon thereafter as the matter may be heard, Defendants Prema Thekkek, Paksn, Inc., Kayal, Inc., Nadhi, Inc., Oakrheem, Inc., Bayview Care, Inc., Thekkek Health Services, Inc., Aakash, Inc., and Nasaky, Inc. (collectively, "Defendants") will and hereby do move, pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint of the United States.[1] Alternatively, pursuant to Federal Rule of Civil Procedure 12(f), Defendants move to strike Paragraphs 70, 72, 77, 99, 100, 101, 103-106, 119, 121, 126-127, 131, 136, 170-172, and footnote 1.

Dismissal of the Complaint and all claims therein for failure to state a claim is appropriate because the Government does not allege with the specificity the "who, what, when, where, and how" of each Defendant's role in the alleged fraud as required by Federal Rule of Civil Procedure 9(b).  References to Ms. Thekkek's invocation of her constitutional rights *before this litigation commenced* are immaterial and impertinent to this case and should be stricken pursuant to Rule 12(f).  This motion is based on this Notice, the attached Memorandum of Points and Authorities, all pleadings and records on file in this action, and on such other evidence or argument as may be presented to the Court.

---

[1]   The present motion responds only to the United States' Complaint in Intervention (Dkt. 72) (the "Complaint"), which is the operative pleading in this matter and, consistent with the agreement of counsel for Defendants and the Relator, the only complaint that the parties intend to litigate.

1    This motion is made following a conference of counsel pursuant to Local

2  Rule 7-3, which took place more than 7 days prior to the filing of this motion.

3  DATED:  September 10, 2021

Benjamin N. Gluck
Nicole R. Van Dyk
Naomi S. Solomon
Alexis A. Wiseley
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:    */s/ Nicole R. Van Dyk*
           Nicole R. Van Dyk
Attorneys for Attorneys for Defendants
Prema Thekkek, Paksn, Inc., Kayal, Inc.,
Nadhi, Inc., Oakrheem, Inc., Bayview Care,
Inc., Thekkek Health Services, Inc.,
Aakash, Inc., and Nasaky, Inc.

3745209.8

DEFENDANTS' MOTION TO DISMISS COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................... 8

II.    SUMMARY OF ALLEGATIONS ................................................................. 9

III.   LEGAL STANDARDS .................................................................................. 12

 A.     Federal Rule of Civil Procedure 12(b)(6) ............................................. 12

 B.     Federal Rule of Civil Procedure 12(f) ................................................... 13

IV.    ARGUMENT .................................................................................................. 13

 A.     The Government's FCA Claims Should Be Dismissed Because The Complaint Lacks Details Regarding The "Who, What, When, Where, and How" Of The Alleged Fraud. ................................ 13

  1.     The Complaint fails to state with particularity *who* was involved in the conduct that allegedly violated the False Claims Act. ....................................................................... 14

  2.     The Complaint fails to state with particularity *what* conduct allegedly violated the False Claims Act and *how* it occurred. ............................................................................... 16

 B.     The Government May Not Circumvent Pleading Requirements by Making Blanket Assertions of Imputed Knowledge. ..................... 18

 C.     The Government May Not Circumvent Pleading Requirements By Relying On Ms. Thekkek's Pre-Litigation Invocation of the Fifth Amendment. ............................................................................... 19

 D.     The Government's Payment-By-Mistake Claim Should Be Dismissed Because The Complaint Fails to Allege Knowledge And Does Not Link Alleged AKS Violations to Submitted Claims. .................................................................................................. 22

 E.     The Complaint Should Be Dismissed With Prejudice ......................... 23

 F.     In the Alternative, The Court Should Strike The Complaint's References to Ms. Thekkek's Invocation of the Fifth Amendment In Her Pre-Litigation Deposition ......................................................... 24

V.     CONCLUSION ............................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................ 12, 19

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................ 12, 14

*S.E.C. v. Cohmad Sec. Corp.,*
    No. 09 CIV. 5680 (LLS), 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) .............. 21

*United States ex rel. Durkin v. Cty. of San Diego,*
    No. 15cv2674-MMA (WVG), 2018 WL 3361148
    (S.D. Cal. July 10, 2018) ...................................................................... 9

*Fantasy, Inc. v. Fogerty,*
    984 F.2d 1524 (9th Cir. 1993) ........................................................ 13, 24

*U.S. ex rel. Frazier v. IASIS Healthcare Corp.,*
    812 F. Supp. 2d 1008 (D. Ariz. 2011) ................................................... 23

*Glob. Real Est. Invs. v. Anoteros, Inc.,*
    No. CV131943DSFVBKX, 2013 WL 12205630
    (C.D. Cal. Dec. 30, 2013) ................................................................... 22

*United States ex rel. Goldstein v. Fabricare Draperies, Inc.,*
    No. 03-1460, 2004 WL 26739 (4th Cir. Jan. 6, 2004) ........................... 13

*United States v. Kinetic Concepts, Inc.,*
    No. CV0806403BROAGRX, 2017 WL 11509966
    (C.D. Cal. Apr. 27, 2017) ................................................................... 17

*Konopasek v. Ten Assocs., LLC,*
    No. SACV 18-00272 JVS(DFMx), 2018 WL 6177249
    (C.D. Cal. Oct. 22, 2018) ................................................................... 15

*Kyung Cho v. UCBH Holdings, Inc.,*
    890 F. Supp. 2d 1190 (N.D. Cal. 2012) ................................................. 21

*Ebeid ex rel. United States v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ....................................................... 13, 16

*MicroTechs., LLC v. Autonomy, Inc.*,
    No. 15-CV-02220-JCS, 2018 WL 5013567
    (N.D. Cal. Oct. 16, 2018) ................................................................ 21

*U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect Prod., Inc.*,
    No. 12-CV-0602-L NLS, 2013 WL 774177
    (S.D. Cal. Feb. 28, 2013) ................................................................ 15

*United States ex rel. Puhl v. Terumo BCT*,
    No. CV178446PSGJPRX, 2019 WL 6954317
    (C.D. Cal. Sept. 12, 2019) .............................................................. 15

*Ohio v. Reiner*,
    532 U.S. 17 (2001) .......................................................................... 20

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
    232 F.3d 1258 (9th Cir. 2000) ..................................................... 21, 22

*United States v. Safran Grp.*,
    No. 15-CV-00746-LHK, 2017 WL 235197
    (N.D. Cal. Jan. 19, 2017) ................................................................ 15

*United States v. Scan Health Plan*,
    CV 09-5013-JFW, 2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) .......... 14, 19, 23

*Slochower v. Bd. of Higher Ed. of City of New York*,
    350 U.S. 551 (1956) ........................................................................ 20

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ......................................................... 23

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ....................................................... 14, 19

*Teal v. King*,
    No. 06-CV-2379 W (BLM), 2008 WL 11508594
    (S.D. Cal. Apr. 21, 2008) ................................................................ 22

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    718 F.3d 1006 (9th Cir. 2013) ......................................................... 12

*United States ex rel. Young v. Suburban Homes Physicians*,
    No. 14-cv-02793, 2017 WL 6625940 (N.D. Ill. Dec. 28, 2017) ........................ 18

**Statutes**

31 U.S.C. § 3729(a)(1)(2) ........................................................................... 18

31 U.S.C. § 3729(b)(1) ............................................................................... 18

42 U.S.C. § 1320a-7b(b)(2)(A) .................................................................. 23

**Other Authorities**

42 C.F.R. §§ 1001.952 ................................................................................ 18

Fed. R. Civ. P. 8(a)(2) ........................................................................*passim*

Fed. R. Civ. P. 9(b) ............................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ..................................................................... 9, 12, 24

Fed. R. Civ. P. 12(f) ................................................................................ 9, 13

U. S. Const. amend. V ..........................................................................*passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After a nearly six-year investigation and robust discovery from Defendants, the Government's 40-page False Claims Act ("FCA") Complaint is long on rhetoric and generalizations (and page count), but short on substance. Indeed, when stripped of those things, it boils down to allegations from a handful of emails related to *some* of the Defendants during *some* of the nearly 10-year time period alleged in the Complaint, unsupported suspicions, and improper references to Prema Thekkek's invocation of her constitutional rights when she was deposed in 2018 pursuant to a Civil Investigative Demand ("CID") at a time when the Government informed her that she and her company were under investigation in an unrelated matter. Thus, though voluminous, the allegations in the Complaint are thread-bare and fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

Rather than alleging the "who, what, when, where, and how of the misconduct charged," the Complaint makes sweeping, generalized allegations of misconduct by "Defendants" related to some unspecified number of contracts with "area physicians" that supposedly resulted in the submission of false claims. Rule 9(b) requires much more. There are nine named Defendants in this case; the Complaint must at a minimum identify each Defendant's role in the alleged scheme. It also must plead with particularity how the allegedly illegal physician contracts resulted in the submission of allegedly false claims. As set forth below, the Complaint fails both hurdles.

The Government attempts to circumvent Rule 9(b) and compensate for its lack of facts in various ways, none of which remedies the Complaint's deficiencies. First, the Government alleges that all Defendants are one and the same for purposes of this case because Ms. Thekkek owned Paksn, Inc. and either Ms. Thekkek owned, or Paksn managed, the seven skilled nursing facility ("SNF") defendants. But the law does not permit pleading by transitive property. Second, and relatedly, the

1  Government claims that Ms. Thekkek's knowledge is imputed to the eight other

2  Defendants.  Again, courts have rejected such attempts to assert FCA claims based

3  upon "collective knowledge" at the pleading stage because it is wholly inconsistent

4  with the FCA's language and purpose.  Third, the Government dedicates 19

5  paragraphs of the Complaint to Ms. Thekkek's invocation of the Fifth Amendment

6  in response to certain questions the Government asked her during a 2018 CID

7  deposition.  Presumably, the Government hopes the Court will draw an adverse

8  inference based on Ms. Thekkek's pre-litigation invocation of her constitutional

9  right.  But none can or should be drawn.  Nor does Ms. Thekkek's invocation of the

10  Fifth Amendment remedy the Complaint's pleading defects.

11       The Court should dismiss the Complaint pursuant to Federal Rule of Civil

12  Procedure 12(b)(6) for its failure to meet the pleading requirements of Rules 8(a)

13  and 9(b).  To the extent the Court does not grant Defendants' Motion, or grants it

14  with leave to amend, it should strike under Rule 12(f) the Complaint's immaterial

15  and impertinent references to Ms. Thekkek's invocation of the Fifth Amendment in

16  her 2018 CID deposition.[2]

17  **II.   SUMMARY OF ALLEGATIONS[3]**

18       The Complaint alleges that, beginning in at least 2009 and continuing until at

19  least 2017, seven skilled nursing facilities (the "SNF Defendants"), under Paksn,

20  Inc.'s and Prema Thekkek's "direction and control," entered into medical director

21

22  [2]   The Court also should strike the Government's unsupported opinion set forth at

23  footnote 1 of its Complaint as to why Ms. Thekkek may have exercised the rights
   granted to her under the Constitution.  It is not only irrelevant and immaterial, but

24  also inappropriate.

25  [3]   Defendants dispute every allegation in the Complaint but, as they must, accept

26  them as true for purposes of responding to the Complaint.  *See United States ex rel.*
   *Durkin v. Cty. of San Diego*, No. 15cv2674-MMA (WVG), 2018 WL 3361148, at

27  *1 n.2 (S.D. Cal. July 10, 2018) (on a motion to dismiss, "the Court must accept as

28  true the allegations set forth in the complaint").

1  and associate medical director contracts with area physicians.  Compl. ¶ 61.

2  According to the Complaint, some amalgamation of "Defendants" used these

3  physician contracts over that nearly 10-year time period "as a vehicle for paying

4  kickbacks to induce the physicians to refer patients" to the SNF Defendants.  *Id.*

5  ¶ 62.  The Complaint acknowledges that the physician contracts required physicians

6  to provide documentation to the facility of services provided and detailed the

7  services the physicians were responsible for providing.  *Id.* ¶¶ 67, 68.  The

8  Complaint alleges, however, that Defendants did not enforce, and the physicians did

9  not comply with, the contracts in these respects.  *Id.* ¶¶ 67, 69.

10         As "evidence" of the alleged referral scheme, the Complaint cites various

11  "examples" the Government claims show that all nine Defendants participated in the

12  allegedly unlawful scheme.  There is no linear narration to the Complaint.  Instead,

13  it makes four categories of sweeping, conclusory allegations lumping all

14  "Defendants" into one supposed scheme.  Then, it tries to buttress its generalizations

15  with factual assertions consisting of a series of soundbites from a handful of emails

16  referencing some Defendants at some points during the relevant time period that

17  mention referrals, interspersed with allegations of entirely lawful conduct such as

18  when certain physicians were hired or let go, how much certain physicians were

19  paid, and Ms. Thekkek's invocation of her constitutional rights:

20         •   The Complaint makes the general conclusory allegation that

21             "Defendants decided which physicians to contract with based on whom

22             they expected to refer the most patients to the SNF Defendants," but

23             only cites a handful of emails in 2011 and 2012 discussing the hope

24             that certain doctors have busy practices and might refer patients, and

25             some Fifth Amendment assertions from Ms. Thekkek's CID deposition.

26             *See id.* ¶¶ 78, 81, 85, 87, 90, 92, 93-97.  Of course, as discussed below,

27             it does not violate the FCA to "hope" for the referral of business, and

28

the Complaint does not tie such discussions to any actual payments or claims made on the part of any "Defendants," let alone all nine.

- The Complaint makes the sweeping allegation that "Defendants" paid their medical directors based at least in part on expected referrals. But its only support is seven paragraphs referring to Ms. Thekkek's Fifth Amendment invocation in the 2018 CID deposition, *id.* ¶¶ 99-101, 103-106, and selective citation to two emails that relate to only three of the nine Defendants, one from 2010 and one from 2015, *id.* ¶¶ 102, 109. It says nothing about the other six Defendants or the other six years for which the Government purports to bring claims.

- The Complaint alleges that "Defendants" pressured medical directors for referrals. In support, it cites to: (i) portions of two emails that relate to only one Defendant and unspecified "facility employees", one from 2010 and one from 2013, in which Ms. Thekkek said she would like certain employees to track referrals and admissions (*id.* ¶¶ 113, 115); (ii) pieces of emails regarding the timing of payment to medical directors from 2014 and 2015 that relate to only four of the nine Defendants (*id.* ¶¶ 118, 120); and (iii) pieces of emails in which Ms. Thekkek appears to express a desire for more referrals, all of which are from yet another time period—2012—and relate to only three of the nine Defendants (*id.* ¶¶ 117, 123, 124). None of the emails are to a single physician or physician representative. The Complaint also cites to Ms. Thekkek's invocation of the Fifth Amendment at her CID deposition. *Id.* ¶¶ 119, 121.

- Finally, the Complaint asserts that Defendants withheld payment from and/or terminated medical directors who did not refer enough patients. This sweeping declaration is supported only by soundbites from three emails that relate to only four of the nine Defendants, all sent or

1      received by the *qui tam* Plaintiff in 2011 and 2012. *Id.* ¶¶ 128-30,

2      134-135, 137. And, again the Complaint cites Ms. Thekkek's

3      invocation of the Fifth Amendment in response to certain questions she

4      was asked at her 2018 CID deposition. *Id.* ¶¶ 126-127, 131.

5      Stripped of its sweeping generalizations, the Complaint consists of no more

6 than a smattering of factual bread crumbs that lead nowhere, and fail to tie any

7 Defendants to a supposed scheme to submit false claims. Instead, the Complaint

8 alleges that "Paksn's conduct and knowledge are imputable to the SNF Defendants,

9 which it managed" and Ms. "Thekkek['s] conduct is imputable to Paksn, which she

10 owned, and to the SNF Defendants, which Thekkek owned and/or Paksn managed."

11 *Id.* ¶ 59. As set forth below, these allegations do not pass muster under Rules 9(b)

12 and 8(a).

13 **III.  LEGAL STANDARDS**

14     **A.  <u>Federal Rule of Civil Procedure 12(b)(6)</u>**

15      A court must dismiss, pursuant to Rule 12(b)(6), any portions of a complaint

16 that fail to state a claim upon which relief can be granted, either due to a "lack of a

17 cognizable legal theory" or the "absence of sufficient facts alleged." *UMG*

18 *Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir.

19 2013) (quotation and citation omitted). While the Court must assume the truth of

20 well-pleaded allegations, the Court is "not bound to accept as true a legal conclusion

21 couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

22 (2007).

23      Because the False Claims Act is a fraud statute, the Government's Complaint

24 is subject to the pleading requirements of both Federal Rules of Civil Procedure 8(a)

25 and 9(b). To satisfy Rule 8(a)(2), the Government must plead facts sufficient to

26 state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662,

27 678 (2009) (citing *Twombly*, 550 U.S. at 570). The heightened pleading standard of

28 Rule 9(b) also requires the Government to state with particularity the circumstances

constituting fraud or mistake, including the "who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal citation and quotation marks omitted). Rule 9(b) serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011) (citation omitted); *see also United States ex rel. Goldstein v. Fabricare Draperies, Inc.*, No. 03-1460, 2004 WL 26739, at *3 (4th Cir. Jan. 6, 2004) (affirming dismissal of FCA action because plaintiff's "amended complaints did not set forth the time, place, content, and individuals involved in the alleged frauds with the requisite particularity as required by Rule 9(b)").

### B. Federal Rule of Civil Procedure 12(f)

Under Federal Rule of Civil Procedure 12(f), the Court may "may order stricken from any pleading . . . any redundant, immaterial, impertinent or scandalous matter." "'Immaterial' matter is that which has no essential or important relationship to the claim for relief . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

## IV. ARGUMENT

### A. The Government's FCA Claims Should Be Dismissed Because The Complaint Lacks Details Regarding The "Who, What, When, Where, and How" Of The Alleged Fraud.

Rather than alleging the "who, what, when, where, and how of the misconduct charged," *Ebeid*, 616 F.3d at 998, the Complaint makes only

generalized allegations of misconduct against "Defendants" (often without specifying which one), and fails to allege particularized facts as to each Defendant to connect the dots between those allegations to make a plausible claim for fraud. *See Twombly*, 550 U.S. at 557 (explaining that complaint that pleads facts that are "merely consistent" with a defendant's liability "stops short of the line between possibility and plausibility of entitle[ment] to relief").

1. **The Complaint fails to state with particularity *who* was involved in the conduct that allegedly violated the False Claims Act.**

As to "who" perpetrated the alleged fraud, the Complaint lumps together Ms. Thekkek, Paksn and the seven SNFs, and attributes the vast majority of the alleged misconduct to them collectively as "Defendants." This collective pleading fails to meet Rule 9(b)'s particularity requirement.

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together," but rather requires "plaintiffs to differentiate their allegations when suing more than one defendant" and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States v. Scan Health Plan*, CV 09-5013-JFW (JEMx), 2017 WL 4564722, at *7 (C.D. Cal. Oct. 5, 2017) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)). The Government "must, at a minimum identify the role of each defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (brackets omitted).

In contravention of Rule 9(b), the Complaint frequently fails to differentiate between the nine named defendants. *See, e.g.*, Compl. ¶ 67 ("***Defendants*** withheld or terminated … stipend[s] because the physician was not referring enough patients to their facilities") (emphasis added); *id.* ¶ 97 (describing "***Defendants'*** typical practice of "tak[ing] care of" referring physicians, specifically by contracting with and paying stipends to them") (emphasis added); *id.* ¶ 98 ("***Defendants*** decided how much to pay medical directors based, at least in part, on how many patients they

expected that physician to refer to their facilities.") (emphasis added); *id.* ¶ 116
("***Defendants*** specifically tracked patient referrals from their contracted physicians
to ensure that those physicians were holding up their end of ***Defendants'*** illegal
kickback arrangements.") (emphasis added).  As a result, the Complaint's
allegations are "not particularized enough to link [each defendant] to the scheme."
*United States ex rel. Puhl v. Terumo BCT*, No. CV178446PSGJPRX, 2019 WL
6954317, at *3 (C.D. Cal. Sept. 12, 2019); *see also United States v. Safran Grp.*,
No. 15-CV-00746-LHK, 2017 WL 235197, at *9 (N.D. Cal. Jan. 19, 2017)
("[G]eneralized allegations made against the three 'Defendants' . . . are insufficient
to satisfy Rule 9(b)").

Alleging that the SNF Defendants are "owned by" Thekkek and operated
"under the direction and control of Paksn and Thekkek" does not remedy this
pleading defect.  *See* Compl. ¶¶ 2, 10-16, 61, 67, 73-74, 76, 80, 82-85, 88-89, 91,
107-08, 111-12, 122, 129, 132-33, 141, 151.  To the contrary, "allegations that [one
defendant] is a wholly-owned subsidiary" and "was at all times subject to [the
parent company defendant's] control" are "insufficient to support . . . treating the
two corporate entities as one."  *U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect
Prod., Inc.*, No. 12-CV-0602-L NLS, 2013 WL 774177, at *5 (S.D. Cal. Feb. 28,
2013).  Indeed, "[t]he mere fact of sole ownership and control does not eviscerate
the separate corporate identity that is the foundation of corporate law" and,
therefore, does not excuse the Government from identifying specific conduct
involving each of the separate corporate Defendants in its Complaint.  *Id.*
(dismissing complaint for failure to satisfy Rule 9(b)).  Nor is it sufficient to allege
that Defendants had a "unified operation."  Compl. ¶¶ 60-61.  *See Konopasek v. Ten
Assocs., LLC*, No. SACV 18-00272 JVS(DFMx), 2018 WL 6177249, at *4 (C.D.
Cal. Oct. 22, 2018) (dismissing complaint for failure to satisfy Rule 9(b), rejecting
allegations that entity defendants "operated as one in a coordinated effort" because
"they fail to identify specific conduct involving [each defendant]"); *Safran Grp.*,

2017 WL 235197, at *9 (dismissing complaint for failure to satisfy Rule 9(b) because allegations that one entity "does business" under the same name as the other entity "still does not specify [its] role in the alleged fraud at issue").

As such, the Complaint fails to give each defendant notice of the precise misconduct with which they are charged, falling short both of the notice pleading threshold under Rule 8(a) and the heightened particularity standard under Rule 9(b).

### 2. The Complaint fails to state with particularity *what* conduct allegedly violated the False Claims Act and *how* it occurred.

The Complaint likewise is devoid of particularized allegations as to "what" conduct violated the False Claims Act and "how" it occurred.  The Complaint alleges generally that "Defendants" (again, without identifying which one) "entered into dozens of contracts with area physicians," resulting in the submission of false claims to the Government.  Compl. ¶ 61.  But the Complaint fails to connect the allegedly illegal physician contracts to the resulting allegedly false claims with sufficient particularity.  Stated differently, the Complaint fails to allege which contracts with which physicians resulted in the submission of which allegedly fraudulent claims.

The False Claims Act "attaches liability, not to the underlying fraudulent activity . . . but to the 'claim for payment.'"  *Cafasso*, 637 F.3d at 1055.  "[A]n actual false claim is the *sine qua non* of a[n FCA] violation."  *Id.* (internal quotations omitted).  Thus, settled Ninth Circuit law requires a complaint to allege "particular details of a scheme to submit false claims paired with *reliable indicia* that lead to a strong inference that claims were actually submitted."  *Ebeid*, 616 F.3d at 998-99 (quotation and citation omitted) (emphasis added); *see also Cafasso*, 637 F.3d at 1057 (explaining that allegations that "identif[y] a general sort of fraudulent conduct but specif[y] no particular circumstances of any discrete fraudulent statement" are "precisely what Rule 9(b) aims to preclude").

Here, although the Complaint identifies a date range during which claims were submitted to the Government by the SNF Defendants (*see* Compl. ¶ 151), the range is limited to one month of the purported eight-year time period alleged in the Complaint.[4]  The other allegations in the Complaint regarding referrals fail under Rule 9(b) because they lack "reliable indicia" that those claims actually were submitted in connection with the alleged fraud and, as such, are false.  Specifically, they are devoid of information about the supposed unlawful referrals as a result of the physician contracts – such as the number and identity of the referrals, the timing of the referrals, the particular physicians who referred them, the SNF to which they were referred and their Medicare eligibility status – to explain *how* those claims were false.

As just one example of this pervasive deficiency, the Government alleges that one of the SNF Defendants, Hayward, submitted a claim for services provided by Dr. Bhupinder Bhandari between October 1, 2014 and October 31, 2014.  *Id.* ¶ 151.  But the sole allegation in the Complaint relating to Hayward is that, on January 4, 2011, Dr. Bhandari sought a directorship at Hayward.  *Id.* ¶ 90.  The Complaint provides almost no information at all about Hayward, much less any particularized facts connecting the claim submitted for treatment rendered to an unknown patient, whose stay at the facility lasted for an unknown period of time, *three years after* Dr. Bhandari sought employment at Hayward.  This clear factual disconnect is fatal to the Government's fraud claims.  *See United States v. Kinetic Concepts, Inc.*, No. CV0806403BROAGRX, 2017 WL 11509966, at *8 (C.D. Cal. Apr. 27, 2017)

---

[4]   Notably, for Baypoint, the Complaint fails to identify even a single claim submitted for reimbursement.  While the Government need not identify a specific claim for payment at the pleading stage of the case, the absence of particularized facts bears emphasis here because the Government's Complaint was filed in the wake of robust discovery that took place in the Relator's action.

(dismissing FCA claims where the complaint did "not link [an] alleged conversation [about the fraudulent scheme] to any claims that were ultimately submitted").

Even if the Complaint had pled particularized facts connecting the physician contracts to any of the claims identified, "simply referring patients . . . is not categorically unlawful." *United States ex rel. Young v. Suburban Homes Physicians*, No. 14-cv-02793, 2017 WL 6625940, at *2 (N.D. Ill. Dec. 28, 2017). Nor is the "'hope, expectation or belief that referrals may ensue from remuneration for legitimate services.'" *Id.* at *3; *see also* 42 C.F.R. §§ 1001.952(f), (s) (expressly exempting certain referral arrangements from penalties under the Anti-Kickback Statute). Yet this is precisely what the Complaint alleges. *See, e.g.*, Compl. ¶ 81 ("In a June 9, 2011 email . . . Singh wrote that he had just hired Dr. Gautam Pareek as an associate medical director at Gateway" and "explained that Pareek 'is [t]he most busiest doctor in st.rose [hospital] and I am very ***hope-full*** [sic] that having him our medicare will touch 20 mark in short period of time'")) (emphasis removed; italics added). The Government's attempt to cast lawful conduct as an illicit scheme falls short of meeting Rule 9(b)'s threshold.

Accordingly, the Government's causes of action pursuant to the FCA should be dismissed because they lack the requisite particularity.

## B. The Government May Not Circumvent Pleading Requirements by Making Blanket Assertions of Imputed Knowledge.

The Complaint should be dismissed for the additional reason that it fails plausibly to allege that the Defendants made any "knowingly" false claims or statements to the Government. The FCA imposes liability on any person who has, in relevant part, (1) knowingly presented or caused to be presented a false or fraudulent claim; or (2) knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid. 31 U.S.C. § 3729(a)(1)-(2). Under the FCA, "knowledge" is defined as actual knowledge, deliberate ignorance or reckless disregard as to truth or falsity. 31 U.S.C. § 3729(b)(1). While

Rule 9(b) allows knowledge to be pled generally, it does not give the Government "license to evade the less rigid—though still operative—strictures of Rule 8," which require pleading facts that give rise to a *plausible* claim for relief. *Iqbal*, 556 U.S. at 686-87.

Instead of pleading facts to show that each Defendant "knowingly" submitted false claims, the Government pleads that knowledge is imputed among the Defendants based on generalized allegations about only one of them. *See* Compl. ¶ 59 ("Paksn's conduct and knowledge are imputable to the SNF Defendants"); *id.* ("Thekkek's conduct and knowledge are imputable to Paksn … and to the SNF Defendants"); *id.* ¶ 157 ("Thekkek . . . and, by extension, Paksn and the SNF Defendants, to whom her actions and knowledge are imputed – acted with the knowledge described above."). However, "under the FCA, 'collective knowledge' provides an inappropriate basis for proof of scienter because it effectively imposes liability . . . for a type of loose constructive knowledge that is inconsistent with the Act's language, structure, and purpose." *Scan Health Plan*, 2017 WL 4564722, at * 5 (citations omitted); *Swartz*, 476 F.3d at 765 (dismissing claims for failure to plead with particularity, explaining that "[t]he complaint is shot through with general allegations that the 'defendants' engaged in fraudulent conduct," so "[c]onclusory allegations that Presidio and DB 'knew that [other defendants] were making . . . false statements' . . . without any stated factual basis are insufficient as a matter of law.").

Accordingly, the Government's FCA claims should also be dismissed for failure to plausibly plead scienter on the part of each Defendant.

### C. The Government May Not Circumvent Pleading Requirements By Relying On Ms. Thekkek's Pre-Litigation Invocation of the Fifth Amendment.

On March 28, 2018, the Government deposed Ms. Thekkek pursuant to a Civil Investigative Demand served on her in connection with its investigation.

1   Compl. at 15 n.1.  In an apparent attempt to compensate for its lack of evidence

2   against Ms. Thekkek, the Government dedicates 19 paragraphs of its Complaint to

3   the fact that more than three and a half years ago, Ms. Thekkek invoked her Fifth

4   Amendment right during that pre-complaint investigative deposition, when Ms.

5   Thekkek justifiably was concerned that she may be the target of a separate

6   investigation.[5]  These references are immaterial and impertinent to the relief the

7   Government seeks here, and at this beginning stage of litigation, before Ms.

8   Thekkek has been deposed *in this case*, they are improper and prejudicial.  The

9   Court should decline to draw any adverse inference based on them.

10        Though the Government attempts to cast aspersions on Ms. Thekkek from her

11   invocation of the Fifth Amendment, the Fifth Amendment "has been recognized as

12   one of the most valuable prerogatives of the citizen."  *Slochower v. Bd. of Higher*

13   *Ed. of City of New York*, 350 U.S. 551, 557 (1956) (citation omitted)).  "[O]ne of the

14   Fifth Amendment's 'basic functions . . . is to protect *innocent* men [and women] . . .

15   'who otherwise might be ensnared by ambiguous circumstances.'"  *Ohio v. Reiner*,

16   532 U.S. 17, 21 (2001) (quoting *Grunewald v. United States*, 353 U.S. 391, 421

17   (1957) (truthful responses of an innocent witness may provide the government with

18   incriminating evidence from the speaker's own mouth).  Ms. Thekkek should not be

19   penalized—and her innocence should not be questioned—merely because she

20   exercised her constitutional right.

21        Presumably, the Government intends to seek an adverse inference of Ms.

22   Thekkek's intent or knowledge based on the invocation of her Fifth Amendment

23   rights.  The Court should decline to draw any such inference, and disregard these

24   allegations for purposes of evaluating the sufficiency of the pleadings for at least

25   three reasons.

26

27   [5]   The paragraphs referencing Ms. Thekkek's invocation of the Fifth Amendment

28   are 70, 72, 77, 99, 100, 101, 103-106, 119, 121, 126-127, 131, 136, 170-172.

1    First, the Court has discretion to draw an adverse inference "[w]hen a party
2    asserts the privilege against self-incrimination *in a civil case* . . . ." *MicroTechs.,*
3    *LLC v. Autonomy, Inc.*, No. 15-CV-02220-JCS, 2018 WL 5013567, at *1 (N.D. Cal.
4    Oct. 16, 2018) (citing *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264
5    (9th Cir. 2000)).  Ms. Thekkek has not asserted her Fifth Amendment rights in this
6    civil case.  She asserted her Fifth Amendment rights during a pre-filing,
7    investigative CID deposition, at a time when Ms. Thekkek had been informed that
8    she or Paksn may be the target of an investigation.  *See, e.g.*, *S.E.C. v. Cohmad Sec.*
9    *Corp.*, No. 09 CIV. 5680 (LLS), 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010)
10   (rejecting SEC's argument that plaintiff's assertion of his Fifth Amendment
11   privilege during SEC investigative testimony was a reason to deny motion to
12   dismiss because "[g]iven the numerous criminal investigations arising from
13   Madoff's fraud, there is a justifiable concern for anyone who did business with
14   BMIS's investment advisory unit, as did Jaffe, that he or she will be hauled into the
15   criminal probe.").

16   Second, the law in this Circuit is clear that "no negative inference can be
17   drawn against a *civil litigant's* assertion of his privilege against self-incrimination
18   unless there is a *substantial need* for the information and *there is not another less*
19   *burdensome way of obtaining that information*."  *Glanzer*, 232 F.3d at 1265
20   (emphasis added).  This is because "the competing interests of the party asserting
21   the privilege, and the party against whom the privilege is invoked must be carefully
22   balanced."  *Id.*  Discovery *in this case* has not even commenced.  The Government
23   obviously has not yet deposed Ms. Thekkek *in this case*.  There is no basis for
24   assuming that the Government cannot obtain the information it seeks through the
25   civil discovery process, including through deposing Ms. Thekkek in this action.  *See*
26   *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203-04 (N.D. Cal.
27   2012) (rejecting plaintiffs' attempt to rely on "alleged assertions of the Fifth
28   Amendment privilege against self-incrimination during the SEC's investigation,"

and explaining that "[i]f, at some point, individual defendants invoke the Fifth Amendment *in this action* . . . this Court has discretion to draw a negative inference regarding the defendants' burden of proof," but plaintiffs "may [not] rely on the as yet unproven allegations in an SEC complaint merely because the defendants invoked the Fifth Amendment during the investigation for that case").

Third, an "adverse inference can only be drawn when independent *evidence* exists of the fact to which the party refuses to answer." *Glanzer*, 232 F.3d at 1264 (emphasis added). But pleadings such as the complaint are not evidence. *Glob. Real Est. Invs. v. Anoteros, Inc.*, No. CV131943DSFVBKX, 2013 WL 12205630, at *1 (C.D. Cal. Dec. 30, 2013) ("[T]he Complaint is not evidence."); *see also Teal v. King*, No. 06-CV-2379 W (BLM), 2008 WL 11508594, at *2 (S.D. Cal. Apr. 21, 2008) ("[A]llegations in the complaint are not evidence."). The Government's allegations in the Complaint are not "independent evidence of the fact[s] to which [Ms. Thekkek] refuse[d] to answer." *Glanzer*, 232 F.3d at 1264. This again demonstrates that an adverse inference based on Ms. Thekkek's pre-litigation, investigative deposition simply would not be proper at this stage of the litigation.

The Government's attempted reliance on an adverse inference to compensate for its inability to plead the alleged fraud as required by Federal Rules of Civil Procedure 8(a) and 9(b) should be rejected – and the Court should decline to draw any adverse inference.

### D. The Government's Payment-By-Mistake Claim Should Be Dismissed Because The Complaint Fails to Allege Knowledge And Does Not Link Alleged AKS Violations to Submitted Claims.

The Government's tacked-on third claim for payment by mistake, based on alleged violations of the Anti-Kickback Statute ("AKS"), also is deficient and must be dismissed for many of the same reasons as its FCA claims. To state a claim based on a violation the AKS, the Government must sufficiently plead that a health care provider *knowingly* and willfully offered remuneration to induce referrals for

services reimbursed by a Federal health care program.  42 U.S.C. § 1320a-7b(b)(2)(A).  Just as with its FCA claims, the Government's collective, imputed knowledge theory fails to support its claim for payment by mistake because the Government must (and does not) plead knowledge as to each of the nine Defendants.  *See Scan Health Plan*, 2017 WL 4564722, at *5 (rejecting "collective knowledge" theory).  Moreover, like with the FCA claims, the Government's payment-by-mistake claim fails because the Complaint does not link any allegedly improper referrals to any submitted claims.  *See, e.g., U.S. ex rel. Frazier v. IASIS Healthcare Corp.*, 812 F. Supp. 2d 1008, 1016 (D. Ariz. 2011) (dismissing claim based on violation of AKS where plaintiff stated that doctor referred Medicare patients to hospital and hospital submitted claims for those referred patients, but "plead no facts regarding actual Medicare referrals or the billing and payment services provided to any Medicare patient.").

Accordingly, the Court should dismiss the Government's payment-by-mistake claim.

**E.      The Complaint Should Be Dismissed With Prejudice.**

The Government has had nearly six years to prepare and file its Complaint in intervention.  *Qui tam* plaintiff Bobby Singh filed his under-seal complaint in 2015.  Since then, the Government has investigated Defendants, has received scores of discovery, and has deposed and interviewed numerous individuals.  And yet, the Government's 40-page Complaint fails to provide sufficient factual detail to meet the pleading requirements.  Under these circumstances, it is clear that amendment would be futile; the Court should grant Defendants' Motion to Dismiss with prejudice.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (dismissal with prejudice appropriate if amendment "would be an exercise in futility").

**F.     In the Alternative, The Court Should Strike The Complaint's References to Ms. Thekkek's Invocation of the Fifth Amendment In Her Pre-Litigation Deposition.**

To the extent the Court does not grant Defendants' Motion to Dismiss, or grants it with leave to amend, it should strike references in the Complaint to Ms. Thekkek's invocation of the Fifth Amendment in her 2018 CID deposition.  These references are immaterial in that they have "no essential or important relationship to the [Government's] claim for relief," *Fogerty*, 984 F.2d at 1527, because, for the reasons stated above, no adverse inference at this point would be proper.  The references also are impertinent because Ms. Thekkek's invocation of her Fifth Amendment right in the CID deposition does "not pertain, and are not necessary, to the issues in question", *id.*, i.e., whether Defendants violated the AKS and the FCA.

**V.     CONCLUSION**

The Court should dismiss the Government's Complaint pursuant to Rule 12(b)(6) for failure to comply with Federal Rules of Civil Procedure 9(b) and 8(a), with prejudice.  Alternatively, the Court should strike Paragraphs 70, 72, 77, 99, 100, 101, 103-106, 119, 121, 126-127, 131, 136, 170-172, and footnote 1 of the

1  Complaint referencing Ms. Thekkek's justifiable invocation of her Fifth

2  Amendment rights in her 2018 CID deposition.

3

4  DATED:  September 10, 2021          Benjamin N. Gluck
                                       Nicole R. Van Dyk
5                                      Naomi S. Solomon
                                       Alexis A. Wiseley
6                                      Bird, Marella, Boxer, Wolpert, Nessim,
                                       Drooks, Lincenberg & Rhow, P.C.
7

8

9

10                                 By:    _/s/ Nicole R. Van Dyk_____

11                                          Nicole R. Van Dyk
                                          Attorneys for Attorneys for Defendants
12                                        Prema Thekkek, Paksn, Inc., Kayal, Inc.,
                                          Nadhi, Inc., Oakrheem, Inc., Bayview Care,
13                                        Inc., Thekkek Health Services, Inc.,
                                          Aakash, Inc., and Nasaky, Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28