UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL TRILOCHAN SINGH,<br><br>  Plaintiff,<br><br>v.<br><br>PAKSN, INC. et al.,<br><br>  Defendants. | Case No. 2:15-cv-09064-SB-AGR<br><br>ORDER DENYING RELATOR'S OBJECTION TO PROPOSED SETTLEMENT [DKT. NO. 449] |

     After Relator Trilochan Singh filed this qui tam lawsuit in 2015, the United States conducted a lengthy investigation and ultimately intervened in June 2021. Dkt. No. 72. The United States and Defendants engaged in substantial motions practice spanning nearly two years, including a motion for summary judgment that was pending when the parties reached a settlement on an ability-to-pay basis. That settlement includes a consent judgment for more than $45 million, along with payment schedules and limitations on enforcement against Defendant Prema Thekkek and the three Defendant entities with ongoing operations: Paksn, Inc., Aakash, Inc., and Oakrheem, Inc. Dkt. No. 450-1 (settlement agreement filed under seal). Relator requested a fairness hearing and objects to the settlement, arguing that it is not fair, adequate and reasonable. Dkt. No. 449. *See* 31 U.S.C. § 3730(c)(2)(B) ("The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances.").[1] The Court held a fairness hearing on November 3, 2023, and now concludes that Relator's objection lacks merit.

---

[1] The Court determined that Relator was entitled to a fairness hearing but not to the full discovery he sought. Dkt. No. 445. The Court ordered the government to arrange a meeting at which its financial analyst could explain her analysis to

In qui tam actions under the False Claims Act (FCA), "the government's power to dismiss or settle an action is broad." *U.S. ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1144 (9th Cir. 1998). In the dismissal context, the Supreme Court recently held that the United States retains authority to dismiss an FCA case over the relator's objection even if it initially declined to intervene. *U.S. ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023). This authority reflects the fact that a qui tam lawsuit asserts an injury exclusively to the government:

> [T]he Government's views are entitled to substantial deference. A qui tam suit, as we have explained, is on behalf of and in the name of the Government. The suit alleges injury to the Government alone. And the Government, once it has intervened, assumes primary responsibility for the action. Given all that, a district court should think several times over before denying a motion to dismiss. If the Government offers a reasonable argument for why the burdens of continued litigation outweigh its benefits, the court should grant the motion. And that is so even if the relator presents a credible assessment to the contrary.

*Id*. at 437–38. While *Polansky* involved dismissal under § 3730(c)(2)(A), the same considerations support deference to the government when it seeks to settle a case under the parallel provision in § 3730(c)(2)(B). See *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 754 n.11 (9th Cir. 1993) ("[W]e note that Congress apparently intended that the provision authorizing relators to formally object to any motions to dismiss or proposed settlements between the government and defendant should not pose a significant burden for the government or courts."); *United States v. Ctr. for Diagnostic Imaging, Inc.*, No. 05-CV-0058, 2011 WL 13249405, at *3 (W.D. Wash. Apr. 4, 2011) (noting that the case law interpreting § 3730(c)(2)(B) is "very scant" but "suggests that this Court's role in reviewing the proposed settlement is more limited than its role in reviewing class action settlements between private parties").

---

Relator. The Court also gave Relator another opportunity to produce legal authority to support his request for further discovery, *id*. at 2 n.2, which Relator did not do. To the extent Relator now seeks additional discovery, Dkt. No. 449 at 11–12, his request is DENIED as untimely.

2

Relator's sole argument is that the settlement is not fair, adequate, or reasonable under the circumstances because the actual payments the government expects to receive under the payment plans are too small. Relator does not suggest that the $45 million consent judgment should have been greater, but he notes that the expected recovery is insufficient to cover Relator's attorney's fees, and he argues that the government did not adequately analyze or consider other assets owned by Defendants or that were transferred to others under circumstances Relator finds suspicious.

Relator relies on 28 C.F.R. § 0.160(a)(2), which authorizes the government to "[a]ccept offers in compromise of claims asserted by the United States in all cases in which a qualified financial expert has determined that the offer in compromise is likely the maximum that the offeror has the ability to pay." Focusing only on the final words of the provision, Relator argues that the government has not complied because the settlement amount is not the maximum Defendants have the ability to pay. This argument ignores that § 0.160(a)(2) requires only that "a qualified financial expert has determined" that the offer is likely the maximum that the offeror has the ability to pay, which indisputably happened here.

Karen Sharp, a senior financial analyst for the U.S. Department of Justice (DOJ), Civil Division, spent several months analyzing Defendants' ability to pay and repeatedly requested additional documentation, resulting in seventeen productions of documents by Defendants. Dkt. No. 455-2 ¶¶ 1, 2–3 (Sharp decl.).[2] As part of the process, Defendants submitted a certified financial disclosure form for each Defendant and, at Sharp's request, balance sheets, income statements, bank records, lease agreements, real estate foreclosure notices, IRS tax lien documents, mortgage lender correspondence, property profiles, and other records. *Id*. ¶¶ 5, 8. Although Defendants' records were not audited, Sharp explained that "many entities . . . do not have audited financial statements prepared for many reasons, one of which is the cost of hiring an external auditor," and "where defendants do not have audited financial statements available, it is customary for the Department to request and review unaudited financial statements prepared by the defendant which include the balance sheet and income statement." *Id*. ¶ 6. After reviewing Defendants' documents for more than three months, Sharp

---

[2] At the hearing, the government represented that Sharp spent 200 hours on her financial review in this case—the most time of any of her cases.

produced a memorandum detailing her analysis of Defendants' finances and the maximum amount she determined they had the ability to pay. Id. ¶ 16.

Sharp is a certified public accountant with more than 39 years of financial analysis and auditing experience, including eight years in the Civil Division of the DOJ. Id. ¶ 2. Relator does not challenge her competence or qualifications. Nor does Relator suggest—much less produce evidence—that Sharp or anyone else representing the government has an incentive to understate Defendants' resources or reduce the recovery obtained in this case; to the contrary, since the United States, as the victim, is entitled to recover the lion's share of any funds obtained, it has a strong interest in ensuring that the recovery is not unnecessarily diminished.

Nevertheless, Relator urges the Court to second-guess the government's conclusion that the amounts in the payment plans are the maximum that Defendants are able to pay. Relator relies principally on two provisions contained in a September 2020 DOJ Civil Division memorandum on assessing inability to pay. First, the memo provides that the defendant "should complete the Division's certified Financial Disclosure Form, and provide, as requested, tax returns, audited financial statements, and access to appropriate personnel." Dkt. No. 449-1 at 6 of 57. This provision on its face does not preclude a finding of inability to pay in the absence of audited financial statements, and Sharp has plausibly explained that the DOJ regularly reviews unaudited statements when audited statements are unavailable, as here. Second, the memo directs that whether the defendant "engaged in related party transactions" is one of numerous factors that may be appropriate to consider. Id. at 7 of 57. Relator argues that Sharp did not adequately consider whether the assets of some Defendants were transferred to a related party. In particular, Relator notes that Thekkek leased two healthcare facilities (which are not Defendants in this case) "through Josekutty Jose (who is believed to be a relative of the Thekkeks)." Dkt. No. 449 at 10–11. Relator does not explain the basis for his belief that Jose is related to Defendants, much less produce evidence to support his assertion.[3]

---

[3] Defense counsel states on information and belief that "Ms. Thekkek is not related to Jose Kuttyjose. In fact, Ms. Thekkek recently received a six-figure notice of levy against her from a business owned by Mr. Kuttyjose." Dkt. No. 456-1 ¶ 6. It appears that defense counsel intends to refer to the same individual identified by Relator as Josekutty Jose.

Finally, Relator produces partial public records of various entities—either Defendants or entities in which Thekkek has had an interest—showing millions of dollars in revenue, which Relator contends the United States failed to consider. These excerpts omit the expenses and liabilities of the entities, and Relator acknowledged at the hearing that he does not know the financial condition of any of those entities or have information that they are profitable. The reports also are not documents that are considered as part of an ability to pay determination under the DOJ's protocol and standard practices. Dkt. No. 455-2 ¶ 15. In any event, they do not undermine the conclusions Sharp reached through her more extensive review. Sharp received and reviewed financial disclosure forms from each Defendant, along with the numerous documents produced at her request, which included bank records, tax documents, and other government records not generated by Defendants. Based on this review, Sharp determined that the poor financial condition of the Defendant entities and Defendant Thekkek's debt obligations precluded them from paying more than the amounts reflected in the payment plans and that "there was no net or realizable value in the real estate" owned by Thekkek or her entities because "all properties were either recently foreclosed by the mortgage lender or subject to IRS liens, which have priority status over civil settlements." *Id*. ¶¶ 7–8.

In sum, Relator has neither identified any assets that the government overlooked nor shown that the government's assessment of Defendants' ability to pay was erroneous. His objection essentially amounts to speculation that Defendants have been untruthful and that the government has not done enough to root out assets that Defendants may have hidden. To be sure, as Relator points out, the government has concluded that Defendant Thekkek was untruthful on multiple occasions. But presumably the government has reason to question the truthfulness of most settling defendants in FCA cases, since the essence of such cases is that the defendant made false claims to the government. To guard against this risk, the settlement agreement (1) provides for increased payments if Defendants' revenues exceed certain thresholds in a given calendar year and (2) allows the government to enforce the consent judgment up to the full amount of liability as to any Defendant found to have made a material false statement or nondisclosure in its financial disclosures—even if the Defendant has completed its scheduled payments. Dkt. No. 450-1 at 4–8. Thus, if Relator's suspicions prove to be true, the settlement will permit the government to recover the full amount of the consent judgment (which Relator does not suggest is inadequate). Although the government appears to intend to rely largely on Defendants' self-reporting during the payment plan period, Defendants acknowledged at the hearing that the government can obtain

further information through the ordinary procedures available for enforcement of a judgment, such as judgment debtor exams, if needed.

On the record before the Court, especially given the substantial deference owed to the government, the Court does not find that Relator's concerns about the possibility that Defendants may be lying justify second-guessing the government's determination that it has sufficiently protected its interests or requiring it to proceed with the claims it wishes to settle. The Court finds that the settlement agreement between the United States and Defendants is fair, appropriate, and reasonable under the circumstances. The Court therefore DENIES Relator's objection and APPROVES the settlement agreement.[4]

The parties represented at the hearing that they have nearly finalized their consent judgment and would be prepared to file it within ten days. The United States and Defendants are therefore ORDERED to file their stipulated consent judgment no later than November 13, 2023.

IT IS SO ORDERED.

Date: November 3, 2023

Stanley Blumenfeld, Jr.
United States District Judge

---

[4] The parties' briefing raises additional issues that are premature. The government asserts that Relator overstates his contributions to this case and that his entitlement to recovery may also be diminished under 31 U.S.C. § 3730(d)(3) to the extent he was a planner and initiator of Defendants' alleged fraud. Defendants argue that Relator's anticipated request for attorney's fees should be subject to the same limitations on enforcement of the consent judgments contained in the settlement agreement. Relator has not filed a motion for attorney's fees, and the Court at this time makes no determination regarding any entitlement to recovery Relator or his counsel may have.